## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **LISA ROUSE, JUSTON ROUSE, JENNA DROUIN, AND NICHOLAS DROUIN**, individually and on behalf of all those similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>**H.B. FULLER COMPANY,**<br><br>and<br><br>**H.B. FULLER CONSTRUCTION PRODUCTS, INC.,**<br><br>      Defendants. | :<br>:<br>:<br>:<br>:<br>:   Case No.<br>:<br>:   Judge<br>:<br>:<br>:<br>:<br>:   **CLASS ACTION COMPLAINT**<br>:   **JURY DEMANDED**<br>:<br>:<br>:<br>:<br>: |

## CLASS ACTION COMPLAINT

Now come Lisa Rouse ("Lisa"), Justin Rouse ("Justin" and, collectively with Lisa, the "Rouses"), Jenna Drouin ("Jenna"), and Nicholas Drouin ("Nicholas" and, collectively with Jenna, the "Drouins" and, collectively with the Rouses, the "Plaintiffs") on behalf of themselves and all others similarly situated, for their causes of action against defendants H.B. Fuller Company ("HBF") and H.B. Fuller Construction Products, Inc. ("HBF-CP" and, collectively with HBF, the "Defendants") and allege and state as follows:

### INTRODUCTION

1.     This is an action for breach of express warranty; breach of implied warranty; negligence; negligent misrepresentation; fraud; and violations of various consumer

protection statutes, among other claims, brought against Defendants and arising out of their design, manufacture, advertisement, and sale of TEC Power Grout ® ("Power Grout").

2.     Despite Defendants' repeated and consistent representations that Power Grout is "fast setting and open to traffic in four hours," "never needs sealing," is "crack and shrink resistant," and excellent in "environments such as high traffic and wet conditions," Power Grout in fact does not harden; cracks, crumbles, and falls out of joints when it is dry; and simply disintegrates when it is wet.

3.     Defendants know that Power Grout is defective, and even have products on hand for the purported purpose of curing those defects.  Of course, Defendants do not sell those products to the general public, but instead hold them back until consumers complain about Power Grout's deficiencies.  And even those products are defective, as they do not remedy the defects in Power Grout and often exacerbate the problems caused by the same.

4.     Further, Defendants attempt to limit their liability in a manner that is a violation of federal law, and consistently refuse to even accept the limited scope of responsibility that they have tried to carve out for themselves, leaving consumers all across the country—including the Plaintiffs—with expensive tiling projects rendered faulty and the prospect of paying thousands of dollars each in order to make the necessary repairs.

5.     Defendants' conduct has caused—and will continue to cause—damage to the Plaintiffs as well as the putative classes they seek to represent, and Plaintiffs and the putative classes are entitled to both monetary and injunctive relief.

## THE PARTIES

6.     Plaintiff Lisa Rouse is an individual who is a citizen of Washington.

2

7.    Plaintiff Juston Rouse is an individual who is a citizen of Washington.

8.    Plaintiff Jenna Drouin is an individual who is a citizen of New Hampshire.

9.    Plaintiff Nicholas Drouin in an individual who is a citizen of New Hampshire.

10.    Defendant HBF is a Minnesota corporation with its "World Headquarters" located at 1200 Willow Lake Boulevard, St. Paul, MN 55164-0683.

11.    Defendant HBF-CP, a wholly owned subsidiary of HBF, is also a Minnesota corporation, with its headquarters located at 1105 S Frontenac Street Aurora, IL 60504.

## VENUE AND JURISDICTION

12.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there is diversity among the parties—Defendants are Minnesota corporations and citizens of the state of Minnesota, while the Rouses are residents and citizens of Washington and the Drouins are residents and citizens of New Hampshire; there are more than 100 members of the putative class; and the aggregate amount in controversy exceeds $5 million.

13.    Venue in this district is appropriate pursuant to 28 U.S.C. § 1391 because Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## BACKGROUND

### *The Defendants*

14.     HBF holds itself out as a corporation engaged in the manufacture, processing, marketing, supplying, and sale of industrial adhesives, industrial coatings, industrial sealants, and specialty materials.   Indeed, according to HBF's website, it has been manufacturing, marketing, and selling specialized adhesives and other products for over a century.

15.     HBF further describes itself as a "leading worldwide formulator, manufacturer and marketer of adhesives, sealants and other specialty chemical products" with sales operations that "span 35 countries in North America, Europe, Latin America, the Asia Pacific region, India, the Middle East and Africa."

16.     Upon information and belief, HBF's principal executive office, marketing and advertising department, and central research facilities are all located at the HBF world headquarters in Vadnais Heights, Minnesota—a suburb of St. Paul.

17.     HBF is a multi-billion dollar company that, according to public filings, is managed through several operating segments or business units.

18.     One such operating segment of HBF is organized as the wholly-owned subsidiary, HBF-CP.

19.     HBF-CP manages products used for tile setting (such as adhesives, grouts, mortars, sealers, and levelers); the commercial roofing industry (such as pressure sensitive adhesives, tapes, and sealants); and heating, ventilation, and air conditioning and insulation

applications (such as duct sealants, weather barriers and fungicidal coatings and block fillers).

20.     Like HBF, HBF-CP is a Minnesota corporation.  HBF-CP, however, has manufacturing facilities all across the country, including in California, Florida, Georgia, Illinois, Michigan, New Jersey, Ohio, and Texas.  Further, HBF-CP's principal address is in Aurora, Illinois.

21.     Notably, HBF-CP was formerly known as Specialty Construction Brands, Inc., but changed its name to H.B. Fuller Construction Products, Inc. to make "it easier for [HBF-CP's] customers to understand who [HBF-CP is] by removing a layer of complexity in [HBF-CP's] corporate name."   In other words, HBF-CP changed its name so that consumers could easily draw a straight line between HBF-CP and its parent, HBF, the global company organized and headquartered in Minnesota.

### The TEC Brand

22.     According to HBF's website, HBF offers "a wide range of brands for customers in electronics, disposable hygiene, medical, transportation, clean energy, packaging, construction, woodworking, general industries and other consumer businesses."

23.     One of the brands offered by HBF and listed on HBF's website is TEC®.

24.     TEC® is also among the HBF brands that is managed by HBF-CP.

25.     For example, TEC's website makes clear that "[t]he TEC brand is part of [HBF]," but also indicates that the copyrighted materials on TEC's website are owned by HBF-CP.

5

26.    As HBF explains on its own website, "[f]or over 60 years, TEC has been a leading brand of high quality, technologically advanced products for the installation and surface preparation of tile, stone, carpet, wood and resilient floor coverings."

27.    TEC products are developed and manufactured in the United States and are available through an extensive network of distributors and retailers nationwide.

### TEC Power Grout

28.    Under the TEC brand, the Defendants offer a full line of products for a variety of tile and flooring installation applications, including grouts.

29.    Grout is used in the tile installation process to fill and seal joints between tiles, create a water barrier, and to secure tile.

30.    Consumers use grout during new tile installation in a variety of different kinds of projects, including, *inter alia*, bathrooms, kitchens, flooring, walling, and backsplashes.

31.    Because such projects create integrated systems, and because consumers are often spending thousands of dollars on the non-grout components of those systems (mortar, waterproofing, and tile—not to mention labor), it is imperative that consumers know the grout they are purchasing will harden and will not crack, shrink, stain, or disintegrate.

32.    Likewise, because many of these tile and grout projects are in areas that will be exposed to liquids—whether through ordinary use or in the cleaning process—consumers must know whether the grout they are selecting needs to be sealed. Some grouts, like traditional cement-based grout, need to be sealed annually, or as often as every six months, which makes maintenance of the traditional cement based grout cumbersome.

33.    At some point, Defendants started offering a particular grout product under the TEC brand called Power Grout.

34.    Defendants describe Power Grout as an "advanced performance grout," and claim that "Power Grout has a unique formulation that is stain proof and provides strong, color consistent joints free of efflorescence, that are resistant to shrinking and cracking." Defendants further represent that "Power Grout provides excellent performance in environments such as high traffic and wet conditions, and in residential and commercial applications."

35.    Indeed, Defendants tout online, in stores, in advertisements, and on the product labeling itself that that Power Grout purportedly (1) is "highly stain resistant;" (2) "never needs sealing;" (3) is "fast setting;" (4) is "open to traffic in 4 hours;" (5) is crack and shrink resistant;" and (6) is excellent "in environments with high traffic and wet conditions," among other alleged "key features and benefits."

36.    Defendants consistently market these purported "product features" on their websites, YouTube channel, in-store displays across the country, and even on social media—where HBF claims that it has "95,000+ social media followers."

37.    Defendants sell Power Grout in dozens of colors, ranging from "Optic White" and "Bright White" to "Jet Black" and "Starry Night," but the instructions and representations about the product's features and qualities are consistent regardless of the color option selected.

38.    Defendants also sell Power Grout in a variety of different-sized bags, including options of 7 lbs., 10 lbs., and 25 lbs.

39.    Notably, in light of Defendants' claims that Power Grout is a superior grout product, Defendants charge a premium over other seemingly comparable products.  For example, whereas a 25 lbs. bag of Power Grout costs approximately $90 (depending on geographic location and retailer), a 25 lbs. bag of a comparable high performance grout costs approximately $30.

### The Power Grout Warranty

40.    In addition to the key features listed on the Power Grout packaging, Defendants also claim—in bright, highlighted text that is easy for consumers to see—that the product comes with a "Limited Lifetime Warranty."

41.    Despite this flashy marketing, neither the terms of that warranty nor the purported limitations on the same can be found anywhere on the Power Grout packaging.

42.    According to HBF-CP's website, Power Grout's "Limited Warranty" is a lifetime guaranty that the product will be free of substantial defects and will not breakdown or deteriorate under use.

43.    Defendants also warrant to the owner of the premises in which Power Grout is applied that Power Grout "will be free from substantial manufacturing defects and will not break down or deteriorate under normal use, provided that the [Power Grout] was properly applied within its applicable shelf life and in accordance with [HBF's] written guidelines."

44.    Yet, Defendants purport to "disclaim[] the implied warranties of merchantability and fitness for a particular purpose and all incidental and consequential damages arising out of the sale, purchase or use of [the] product."

8

45.     Indeed, Defendants attempt to limit the value of the warranty to only the cost of the product itself—even though Defendants know that Power Grout will be installed into an integrated tile system and that the consequences of a product failure would be significantly more expensive than the cost of the grout itself.

### *Power Grout's Consistent Deficiencies*

46.     Notwithstanding Defendants' unambiguous claims about Power Grout's superior qualities—including the assertions that it "never needs sealing," is "open to traffic in 4 hours," and is "crack and shrink resistant"—and despite the assurances provided by Defendants in the warranty, Power Grout in fact fails consistently.

47.     In simplest terms, Power Grout never cures sufficiently to be used as a grout.

48.     When dry, Power Grout cracks and crumbles, shrinks away from the tiles it is supposed to be securing, and falls out of the joints.

49.     Even worse, when wet, Power Grout effectively disintegrates into a sandy mess.

50.     As a result, ordinary cleaning practices and use of the facilities in which the grout was installed (such as showers) result in Power Grout rapidly deteriorating and wearing away, leaving tile joints exposed and entire homes and buildings susceptible to water penetration and damage.

51.     Consumers and contractors alike from all around the country have suffered as a result of Power Grout's failures.  Some images illustrating Power Grout's consistent failures are below.






***Defendants' Knowledge of the Power Grout Deficiencies***

52.    For their parts, Defendants are fully aware of the consistent failures that Power Grout consumers experience.

53.    Upon information and belief, Defendants have established a department to handle warranty claims made by customers around the country.  Defendants' response to such warranty claims, however, typically begins with Defendants sending customers bottles of something Defendants call "TEC Acrylic Grout Hardener" (the "Hardener").

54.     Defendants have the Hardener because they know that Power Grout does ***not*** harden or consistently satisfy the advertised product features.

55.     Indeed, Defendants do not sell the Hardener—it is only made available to consumers who complain about Power Grout's failure.  As such, Defendants provide little to no information on the label about the ingredients of the purported Hardener.  An image of the label for the Hardener as sent to consumers can be seen below:



56.     The Hardener is an acrylic liquid that, when applied, creates a shiny plastic veneer and seals the grout.  In fact, Defendants' representatives have conceded to certain consumers that the Hardener is effectively the same as sealers manufactured by other companies (and Defendants have even provided consumers with bottles of those sealers as alternates to the Hardener in certain occasions).

57.    Upon information and belief, Defendants' description of the product as a "hardener" instead of a "sealer" is an intentional, calculated effort to avoid undermining their repeated representations that Power Grout "never needs sealing."

58.    Further, Defendants represent to consumers who receive the Hardener that the Hardener will solve the defect about which they are complaining.   In essence, Defendants represent to consumers that once they apply the Hardener, the grout will function as advertised.

59.    Of course, Defendants do not warn consumers, before or after purchase, that Power Grout fails to set, disintegrates when wet, and needs to be sealed with the Hardener. Instead, Defendants go to great lengths to conceal the fact that Power Grout is defective and, contrary to Defendants' representations, would not be fast setting, would not be crack and shrink resistant, would likely need to be sealed, and is not excellent in wet conditions.

60.    Moreover, applying the Hardener is a time-intensive and laborious task as it must be painted on just the grout lines with a little paintbrush **twice**.  Care must be taken to avoid getting any of the Hardener on the tile, as it has the potential to stain and ruin the tiles and adversely affect the appearance of the same.

61.    Regardless of how Defendants characterize the Hardener or how long it takes to apply, though, the reality is that the Hardener does not work.

62.    The plastic veneer that the Hardener creates can easily be peeled or scrubbed away, and once the film created by the Hardener is removed the underlying Power Grout continues to disintegrate just as it did prior to the application of the Hardener.

63.     When consumers contact Defendants again to inform Defendants that the Hardener has failed, Defendants consistently deny liability and instead provide myriad excuses including, among other things, that the failure is due to improper preparation/installation and/or that it is due to improper mixing of the dry and/or wet grout—even when the Power Grout was clearly installed in accordance with the only guidelines Defendants provide with the product.

64.     Alternatively, because the Hardener creates an unpleasant plastic sheen over the grout and entirely changes the look of the grout, some consumers complain to Defendants about the fact that the Hardener has adversely affected the aesthetic qualities that of the product they purchased.  Defendants do not warn consumers of such consequences before consumers apply the Hardener, but instead refer persistent consumers to another cleaning product that Defendants contend will remove the shiny veneer.  That cleaning product either does not work at all, or only works insofar as it removes the Hardener altogether and leaves the deficient grout exposed again.

65.     In short, Defendants know that Power Grout has myriad defects—including the fact that it does not sufficiently harden; that it cracks, crumbles, and shrinks; and that it needs to be sealed—but they market Power Grout to the contrary in any event.

66.     And Defendants know that the Hardener is not a permanent fix for the deficient Power Grout, but they hold it out as such to aggrieved consumers any way.

67.     Consequently, consumers all around the country have each incurred—and continue to incur—thousands of dollars in damages comprised of, among other things, the cost of the Power Grout itself; the cost of repairs made necessary by the failure of Power

Grout and, when applied, the Hardener (an expensive and complex process given the nature of the integrated systems in which the grout is installed); and the resulting depreciation in property value caused by the presence of Power Grout and/or the Hardener on the premises.

### The Rouses' Experience With TEC Power Grout

68.     On or about October 21, 2021, the Rouses entered into an agreement with a contractor for a "residential main floor remodel, including a kitchen and 2 bathrooms."

69.     Pursuant to the contract, the Rouses were responsible for paying for materials used in the project, including all grout products.

70.     The Rouses' contractor recommended Power Grout to the Rouses for the project's various grout needs because Defendants claim that Power Grout never needs to be sealed, is fast setting, is crack and shrink resistant, and is excellent in wet conditions.

71.     Relying on those claimed product features, the Rouses accepted their contractor's recommendation, and selected the colors of Power Grout they wanted to use in their home.

72.     The Rouses at all times believed that Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose for which grout was intended, and was safe and proper.

73.     The remodeling process at the Rouses' home began in late 2021 and proceeded over the course of the next several months, with the tile work starting in early 2022.  Ultimately, the Rouses had four colors of Power Grout installed in their home including in two bathrooms on the floors and showers, two backsplashes in a laundry room and a dry bar, and on a fireplace.

74.     Although the Power Grout was stored correctly and installed in accordance with Power Grout's instructions and guidelines, it failed in every location where it was installed.

75.     In the showers, the Power Grout ran out of the joints and onto the tiles when exposed to water.   In other areas, such as the fireplace and backsplash, the Rouses discovered that even gentle cleaning practices such as wiping the grout with a cloth was enough to cause the grout to deteriorate.

76.     On or about March 14, 2022, Lisa reached out to her contractor and H.B. Fuller and explained that the Power Grout in her showers, which had cured for over a month before use, dripped down the walls each time it became wet and could be easily scratched out with a fingernail, and the rest of the grout work was similarly disintegrating.   Lisa also included photographs of the Power Grout failing in the her email:



77.     After noticing these failures and reaching out to Defendants, the Rouses also worked with their contractor to address the issues.   Their contractor, in turn, also contacted Defendants about the obvious product deficiencies.

78.    In response, Defendants flew a representative to the Rouses' home in Washington to inspect the product.  After his inspection, the Defendants' representative reportedly praised the workmanship of the Rouses' contractor and conceded that the problem was a "chemical" issue with the grout.

79.    As requested by Defendants' representative following his visit, the Rouses' contractor sent grout samples to Defendants to test.

80.    Defendants then provided the Rouses' contractor with the Hardener.

81.    Defendants represented to the Rouses that the Hardener would remedy the Power Grout defects.

82.    Specifically, in response to follow up questions posed by the Rouses, Defendants' representative explained that once the Hardener was applied, the showers would be "back in service" within 24 hours.

83.    The Rouses' contractor removed and reinstalled the Power Grout in the bathrooms and applied the Hardener to all installed Power Grout.

84.    The reapplication of Power Grout, although purportedly the same color, did not match in color the original installation of Power Grout.

85.    Notwithstanding Defendants' representations, the second installation of Power Grout failed and the Hardener also failed in all locations.

86.    Indeed, after installation, the Hardener simply peeled off and left the crumbling, cracking, disintegrating Power Grout below exposed once again.

87.    The Hardener did not cure any of the defects in the Power Grout, nor did it render the areas where the Power Grout had been installed in the Rouses' home any more usable than they had been before the Hardener was applied.

88.    The Rouses sent pictures of the failing Hardener to Defendants asking for recommendations.

89.    Thus, on June 29, 2022, Defendants sent a second representative to the Rouses' home.

90.    During the second visit, however, the Defendants' representative took a completely different approach than the first representative had taken in the initial visit. Indeed, Defendants' representative criticized the previously-praised workmanship and argued that the obviously failing Power Grout and Hardener were fine.

91.    When the Rouses and their contractor were able to refute those criticisms, Defendants' representative simply refused to accept responsibility for the product's failure or to take any further action.  Instead, he stated they should try to remove the Hardener.

92.    The Rouses have indeed removed the residue left from the Hardener that Defendants provided, and while that cleaning has improved the look of the tiles, the grout problem still persists.

93.    To date, Defendants have done nothing to correct the issues caused by the defective Power Grout and Hardener.

94.    The Rouses have spent countless hours addressing the problems caused by the Power Grout and the Hardener; they have been—and continue to be—subjected to

unnecessary stress and anxiety; and it will likely cost them tens of thousands of dollars to correct the grout deficiencies that now plague their newly-renovated home.

### *The Drouins' Experience With TEC Power Grout*

95.    In or around October 2021, the Drouins contacted a contractor to discuss a shower renovation in the master bathroom of the Drouins' home.

96.    That contractor recommended that the Drouins use Power Grout for the shower floor, because the Defendants represent that Power Grout does not need to be sealed, is crack and shrink resistant, hardens fast, and is an excellent grout option for high traffic and wet conditions.

97.    The Drouins confirmed that Defendants made such representations by reviewing the "key features" listed for Power Grout.

98.    Based on Defendants' representations regarding the qualities and features of Power Grout, the Drouins accepted the contractor's recommendation that Power Grout be used in their shower renovation.

99.    The Drouins then selected the color of Power Grout that they wished to use, and the contractor prepared a quote.

100.    Pursuant to the contractor's quote, the Drouins were responsible for the cost of the Power Grout.

101.    The Drouins at all times believed that Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose for which grout was intended, and was safe and proper.

102.    The contractor performed the shower renovation work in March 2022, and installed Power Grout in the Drouins' home at that time.

103.    The Drouins have recently determined that the Power Grout did not fully harden.

104.    Rather, the Power Grout used on their shower floor can be scratched away with a finger nail when wet.

105.    The Drouins relied upon Defendants' representations regarding Power Grout, and have been damaged because those representations have proven to be false and because the Power Grout in their home failed to harden sufficiently.

## CLASS ACTION ALLEGATIONS

106.    Plaintiffs bring this lawsuit individually and as a class action on behalf of all others similarly situated pursuant to Rules 23(a), 23(b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure.

107.    This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

108.    Plaintiffs bring this suit on behalf of themselves and a nationwide class (the "Nationwide Class") defined as follows:

> All persons in the United States and its territories who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed. The proposed class includes all such persons or entities who contacted Defendants about their Power Grout, were provided the Hardener, and/or denied or partially denied warranty coverage.

109.   Alternatively to the Nationwide Class, Plaintiffs Lisa and Juston Rouse bring this suit on behalf of themselves and a Washington-statewide class (the "Washington Class") defined as follows:

> All persons in the state of Washington who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed.  The proposed class includes all such persons or entities who contacted Defendants about their Power Grout, were provided the Hardener, and/or denied or partially denied warranty coverage.

110.   Alternatively to the Nationwide Class, Plaintiffs Jenna and Nicholas Drouin bring this suit on behalf of themselves and a New Hampshire-statewide class (the "New Hampshire Class") defined as follows:

> All persons in the state of New Hampshire who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed.  The proposed class includes all such persons or entities who contacted Defendants about their Power Grout, were provided the Hardener,  and/or denied or partially denied warranty coverage.

111.   Plaintiffs specifically exclude Defendants, their employees, agents, officers, directors, legal representatives, successors, subsidiaries, parent entities, or predecessors; class counsel and its employees; and the judicial officers and its associated court staff assigned to this case from the proposed Classes.

112.   The definitions of the Classes are unambiguous, and Plaintiffs are members of the Classes they individually seek to represent.

113.   Plaintiffs reserve the right to amend or modify the Class definitions to create greater specificity, further division into subclasses, or limitation to particular issues as this case progresses.

114.   The Nationwide Class is so numerous and geographically dispersed that joining all Class members would be impracticable. The exact number of Class members is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe the Nationwide Class consists of at least several thousand of members.

115.   The  Washington Class is so numerous and geographically dispersed in Washington that joining all the members would be impracticable. The exact number of members in the Washington Class is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe the Washington Class consists of at least 100 potential class members.

116.   The New Hampshire Class is so numerous and geographically dispersed in New Hampshire that joining all the members would be impracticable. The exact number of members in the New Hampshire Class is unknown by Plaintiffs at this time and can only be ascertained through appropriate discovery. Plaintiffs believe the New Hampshire Class consists of at least 100 potential class members.

117.   Defendants' actions and omissions are generally applicable to Plaintiffs and the Classes.  There are questions of law and fact common to the Classes, which predominate over any questions affecting only Plaintiffs or individual members of the Classes.  These common questions of law and fact include, but are not limited to:

     a.   whether Defendants' conduct with respect to Power Grout and/or the Hardener violates the Minnesota Consumer Fraud Act;

21

b.  whether Defendants' conduct with respect to Power Grout and/or the Hardener violates the Minnesota Uniform Deceptive Trade Practices Act;

c.  whether Defendants' conduct with respect to Power Grout violates the Minnesota False Statement in Advertising Act;

d.  whether Defendants' conduct with respect to Power Grout and/or the Hardener violates the Minnesota Unlawful Trade Practices Act;

e.  whether Defendants' conduct with respect to Power Grout and/or the Hardener violates the Washington Consumer Protection Act;

f.   whether Defendants' conduct with respect to Power Grout and/or the Hardener violates the New Hampshire Consumer Protection Act;

g.  whether Defendants breached the express warranty made with the sale of each bag of Power Grout;

h.  whether Power Grout was free of substantial manufacturing defects, does not break down or deteriorate under normal use, never needs sealing, and is crack and shrink resistant;

i.  whether Defendants breached the implied warranty of merchantability made with the sale of each bag of Power Grout;

j.  whether Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose of grout, and/or conformed to the representations on the package;

k.  whether Defendants' conduct violates the Magnuson-Moss Warranty Act by purporting to limit or disclaim liability pursuant to implied warranties despite offering an express warranty;

l.  whether Defendants acted willfully, recklessly, and/or negligently with respect to Power Grout;

m.  whether Defendants acted willfully, recklessly, and/or negligently with respect to the Hardener;

n.  whether Power Grout contains a design, manufacturing, or other defect;

o.  whether the Hardener contains a design, manufacturing, or other defect;

p.  whether Defendants omitted, failed to disclose, failed to warn, or otherwise failed to notify consumers of the defect in Power Grout;

q.  whether Defendants omitted, failed to disclose, failed to warn, or otherwise failed to notify consumers of the defect in the Hardener;

r.  whether Defendants have been unjustly enriched;

s.  whether Defendants' actions and representations with respect to Power Grout and/or the Hardener constitute fraud; and

t.  in other ways to be supplemented as a result of discovery.

118.  Plaintiffs' claims and/or defenses are typical of the claims and/or defenses of the Classes and arise from the same events and/or are based on the same legal theories as those of the Classes.

119.   Plaintiffs are members of the Classes, will fairly and adequately protect the interests of the members of the Classes, intend to prosecute this action vigorously, and have retained counsel competent and experienced in class action litigation.

120.   A class action is the superior method for the fair and efficient adjudication of this controversy because individualized litigation creates a potential for inconsistent judgments and increases the delay and expense to all parties and the judiciary and it would be impracticable for Plaintiffs and Classes to individually seek redress for Defendants' wrongful conduct as their damages are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants.

121.   Defendants' actions and/or omissions are generally applicable to the Classes, and the issues and relief common to the Classes make injunctive relief appropriate.

122.   Plaintiffs are not aware of any difficulties that are likely to be encountered in management of this controversy as a class action.

## PRE-SUIT NOTICE

123.   As set forth above, the Rouses have repeatedly notified Defendants of the defect in Power Grout installed in their home.

124.   Although the Defendants responded by sending representatives to the Rouses' home and providing the Hardener, they have failed to take appropriate steps to remedy the product defects or address the Rouses' damages.

125.   In addition to the Rouses' previous case-specific notices, Plaintiffs sent Defendants written notice on August 12, 2022 of the claims they intended to file on behalf

24

of themselves and a putative class in light of the defects with, and various representations about, Power Grout and the Hardener.

126.   Defendants' counsel responded on August 15, 2022 and requested an extension of time to respond until September 2, 2022.

127.   On behalf of Defendants, Defendants' counsel replied on August 31, 2022 and took the position that Plaintiffs' claims and the claims of the Classes were purportedly without merit.  In light of that self-serving assessment, Defendants declined to entertain pre-suit negotiations with Plaintiffs on behalf of the Classes.

## CAUSES OF ACTION

### COUNT I - Violation of Minnesota Uniform Deceptive Trade Practices Act
### Minn. Stat. § 325D.44 - On behalf of Plaintiffs and the Nationwide Class

128.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

129.    Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

130.   Defendants, Minnesota corporations, designed, developed, tested, manufactured, distributed, supplied, marketed, and sold Power Grout in Minnesota and across the nation and, therefore, engaged in business directly and indirectly affecting the people of Minnesota and the public at large.

131.   Minn. Stat. § 325D.44, Subdivision 1 provides, in part, as follows:

Subdivision 1. A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person: …

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have…;
…

(7) represents that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . .; or
…

(13) engages in any other conduct which similarly creates likelihood of confusion or of misunderstanding.

132.   Defendants engaged in deceptive trade practices when, in the course of their business, Defendants represented that Power Grout had characteristics, uses, benefits or qualities that it did not possess including that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

133.   Defendants further engaged in deceptive practices when, in the course of their business, Defendants represented that the Hardener had characteristics, uses, benefits or qualities that it did not possess including that it would harden or fix the defect in Power Grout.

134.   Defendants further engaged in deceptive trade practices when, in the course of their business, Defendants represented that Power Grout was of a quality or grade that it did not possess including that that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

135.    Defendants further engaged in deceptive trade practices when, in the course of their business, Defendants engaged in conduct pertaining to Power Grout and the Hardener that created a likelihood of confusion or misunderstanding including representing that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions, and representing that the Hardener was a suitable fix for the defective grout.

136.    Defendants' deceptive trade practices caused substantial injury to Plaintiffs and the Nationwide Class and provided no benefit to consumers.

137.    Defendants intended to mislead Plaintiffs and the Nationwide Class, and to induce Plaintiffs to rely on their misrepresentations.

138.    Defendants would not have sold the volume of Power Grout that they sold, nor would Defendants have been able to justify the price differentiation and premium price charged to consumers if they had disclosed that Power Grout was not fast setting, susceptible to cracks and shrinking, disintegrated when wet, needed sealing, and was not suitable in wet conditions.

139.    Defendants' deceptive trade practices in relation to Power Grout and the Hardener affected the purchasing decisions of Plaintiffs and the Nationwide Class.

140.    Defendants' deceptive trade practices in relation to Power Grout and the Hardener had the tendency or capacity to deceive or mislead Plaintiffs, the Nationwide Class, and a substantial segment of the public.

141.   As a direct and proximate result of Defendants' deceptive trade practices, Plaintiffs and the Nationwide Class have suffered and will continue to suffer damages.

142.   Defendants' continued violations of § 325D.44 present a continuing risk to the general public.

143.   Plaintiffs seek an order, on behalf of themselves and others similarly situated, enjoining Defendants from (1) continuing to represent Power Grout as advanced performance grout that is fast setting and open to traffic in four hours, crack and shrink resistant, never needs sealing, is suitable for high traffic and wet conditions and (2) continuing to represent the Hardener as a suitable fix or hardener of Power Grout.

144.   Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT II - Violation of Minnesota Consumer Fraud Act
**Minn. Stat. § 325F.69 - On behalf of Plaintiffs and the Nationwide Class**

145.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

146.    Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

147.   Minn. Stat. § 325F.69, Subdivision 1 provides:

The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in Section 325F.70.

148.   Defendants, Minnesota corporations, designed, developed, tested, manufactured, distributed, supplied, marketed, and sold Power Grout in Minnesota and

across the nation and, therefore, engaged in business directly and indirectly affecting the people of Minnesota and the public at large.

149.   Defendants represented on the product, in advertising online and social media, and on in-store sales materials that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions.

150.   As set forth above, Defendants' representations about Power Grout were false, deceptive, and misleading because Power Grout did not set, was not open to traffic in four hours, was not crack and shrink resistant, needed sealing, and was not suitable for high traffic and wet conditions.

151.   Defendants had special knowledge of, concealed, and failed to disclose the issues occurring with Power Grout including that Power Grout did not set, would need sealing, and was not suitable for wet conditions, among other things.

152.   When confronted with the myriad issues with Power Grout, Defendants provide the Hardener to consumers, which Defendants do not sell the Hardener or otherwise disclose to the general public.

153.   Defendants represented the Hardener was a suitable fix and would harden the failing Power Grout.

154.   As set forth above, the Hardener does not fix or otherwise harden Power Grout.

155.   Defendants' representations and omissions about Power Grout and the Hardener contain material assertions, representations, and statements of fact which are

untrue, deceptive, or misleading that affected the purchasing decisions of Plaintiffs and the Nationwide Class.

156.    Defendants' representations and omissions about Power Grout and the Hardener had the tendency or capacity to deceive or mislead Plaintiffs, the Nationwide Class, and a substantial segment of the public.

157.    Defendants' acts, practices, representations, and omissions, including false representations pertaining to Power Grout and the Hardener, concealment of the defects in Power Grout and the Hardener, and continued advertisement and sale of Power Grout constitute fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices.

158.    Defendants intended that Plaintiffs and the Nationwide Class rely on its false, misleading, and deceptive acts, practices, representations, and omissions in connection with the purchase and use of Power Grout and use of the Hardener.

159.    As a direct and proximate result of Defendants' false, misleading, and deceptive acts, practices, representations, and omissions, Plaintiff and the Nationwide Class have suffered and will continue to suffer monetary damages in an amount to be determined at trial.

160.    Defendants' continued violations of § 325F.69 present a continuing risk to the general public.

161.    Plaintiffs and the Nationwide Class are entitled to restitution and/or actual damages and/or equitable and injunctive relief, costs, and reasonable attorneys' fees.

162.    In accordance with Minn. Stat. § 325F.69, and as authorized by Minn. Stat. § 8.31, Plaintiffs seek an order, on behalf of themselves and others similarly situated, enjoining Defendants from continuing its false, misleading, and deceptive acts, practices, representations, and omissions in connection with the purchase and use of Power Grout and use of the Hardener and awarding Plaintiffs and the Nationwide Class damages and costs, including reasonable attorneys' fees.

163.    Plaintiffs incorporate the prayer for relief as though set forth herein.

### COUNT III - Violation of Minnesota False Statement in Advertising Act
### Minn. Stat. § 325F.67 - On behalf of Plaintiffs and the Nationwide Class

164.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

165.    Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

166.    Minn. Stat. § 325F.67 provides:

Any person, firm, corporation, or association who, with intent to sell or in anywise dispose of merchandise . . . directly or indirectly, to the public, for sale or distribution, or with intent to increase consumption thereof, . . . makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, or in any other way, an advertisement of any sort regarding merchandise, . . . or anything so offered to the public, for use, consumption, purchase, or sale, which advertisement contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading . . . shall, whether or not pecuniary or other specific damage to any person occurs as a direct result thereof, be guilty of a misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

167.    Defendants, with the intent to sell Power Grout, marketed and advertised Power Grout including on the product package, in advertising online and social media, and on in-store sales materials in Minnesota and across the nation.

168.    Defendants' advertisements for Power Grout contain material assertions, representations, and statements of fact which are untrue, deceptive, or misleading including that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

169.    Defendants' marketing and advertising had the tendency or capacity to deceive or mislead Plaintiffs, the Nationwide Class, and a substantial segment of the public.

170.    By marketing and advertising Power Grout in a false and deceptive way, Defendants have violated—and continue to violate—the Minnesota False Statement in Advertising Act.

171.    Plaintiffs and the Nationwide Class were induced by Defendants' material and false statements in advertising and marketing to purchase Power Grout that they would not otherwise have purchased, and they have suffered and will continue to suffer monetary damages.

172.    Defendants' continued violations of § 325F.67 present a continuing risk to the general public.

173.    In accordance with Minn. Stat. § 325F.67, and as authorized by Minn. Stat. § 8.31, Plaintiffs seek an order, on behalf of themselves and others similarly situated, enjoining Defendants from continuing its false, misleading, and deceptive acts, practices,

representations, and omissions in connection with the marketing and advertising of Power Grout and awarding Plaintiffs and the Nationwide Class damages and costs, including reasonable attorneys' fees.

174.    Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT IV - Violation of Minnesota Unlawful Trade Practices Act
## Minn. Stat. § 325D.13 - On behalf of Plaintiffs and the Nationwide Class

175.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

176.    Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

177.    Minn. Stat. § 325D.13 provides, in part, as follows: No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise.

178.    Defendants knowingly misrepresented and concealed the true quality of their Power Grout in connection with the sale of that merchandise.

179.    Defendants knowingly concealed from and failed to disclose to Plaintiffs and the Nationwide Class, in connection with the sale of Power Grout, material information, including the defective nature of the Power Grout.

180.    Defendants further knowingly misrepresented and concealed the true quality of the Hardener in connection with the sale of Power Grout.

181.    Defendants knowingly concealed from and failed to disclose to Plaintiffs and the Nationwide Class, in connection with the sale of Power Grout, material information,

including that the Hardener would not harden the defective Power Grout and that it would materially alter the appearance of the Power Grout.

182.    Defendants' omissions and misrepresentations had the tendency or capacity to deceive or mislead Plaintiffs, the Nationwide Class, and a substantial segment of the public.

183.    Defendants' representations and omissions about Power Grout and the Hardener contain material assertions, representations, and statements of fact which are untrue, deceptive, or misleading that affected the decisions of Plaintiffs, the Nationwide Class, and the consuming public in relation to the purchase and use of Power Grout and/or the Hardener.

184.    Defendants' continued violations of § 325D.13 present a continuing risk to the general public.

185.    In accordance with Minn. Stat. § 325D.13, and as authorized by Minn. Stat. § 8.31, Plaintiffs seek an order, on behalf of themselves and others similarly situated, enjoining Defendants from continuing its false, misleading, and deceptive acts, practices, representations, and omissions in connection with the sale of Power Grout and awarding Plaintiffs and the Nationwide Class damages and costs, including reasonable attorneys' fees.

186.    Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT V - Breach of Implied Warranties of Fitness and Merchantability
### On behalf of Plaintiffs and the Nationwide Class

187.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

188.   Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

189.   Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, and sale of Power Grout.

190.   Defendants represented and warranted on Power Grout packaging, on Defendants' websites, and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, that it was crack and shrink resistant, and excellent in wet conditions.

191.   The Power Grout sold by Defendants is subject to the implied warranties of fitness and merchantability, pursuant to which Defendants warranted that Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose for which grout was intended, would pass without objection in the trade, and conformed to the representations and specifications made on the package including that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

192.   As set forth above, Power Grout is defective, not fit for use as grout, is not of merchantable quality, would not pass without objection in the trade, and does not conform to the representations on the packaging of Power Grout.

193.    Defendants breached these implied warranties by failing to provide defect-free Power Grout, that was fit for use as grout and of merchantable quality, that would pass without objection in the trade, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

194.    Defendants' attempts to disclaim these implied warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by Plaintiffs and the Nationwide Class.

195.    As a direct and proximate result of Defendants' breaches of these implied warranties, Plaintiffs and the Nationwide Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout.   These damages and others are expected to increase over time as the defective grout continues to fail.

196.    Plaintiffs provided Defendants with notice before the filing of this lawsuit.

197.    Plaintiffs incorporate the prayer for relief as though set forth herein.

### COUNT VI - Breach of Express Warranties
**On behalf of Plaintiffs and the Nationwide Class**

198.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

36

199.    Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

200.    Defendants represented and warranted on Power Grout packaging, on Defendants' websites, and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

201.    Defendants further represented and warranted under the Limited Lifetime Warranty that Power Grout was free from substantial manufacturing defects and will not break down or deteriorate under normal use.

202.    These representations constitute express warranties as to Power Grout's qualities, nature and performance and were part of the basis of the bargain when Plaintiff and the Nationwide Class purchased Power Grout.

203.    As set forth above, Defendants knew and concealed material facts including that Power Grout is not free of substantial manufacturing defects, breaks down and deteriorates under normal use, and does not conform to the representations on the packaging of Power Grout.

204.    Defendants breached the express warranties by failing to provide Power Grout that was free of substantial manufacturing defects, did not break down or deteriorate under normal use, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

205.     Defendants' attempts to disclaim these express warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by Plaintiffs and the Nationwide Class.

206.     As a direct and proximate result of Defendants' breaches of these express warranties, Plaintiffs and the Nationwide Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout. These damages and others are expected to increase over time as the defective grout continues to fail.

207.     Plaintiffs provided Defendants with notice before the filing of this lawsuit.

208.     Plaintiffs incorporate the prayer for relief as though set forth herein.

### COUNT VII – Violation of Magnuson-Moss Warranty Act
**On behalf of Plaintiffs and the Nationwide Class**

209.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

210.     Plaintiffs and the Nationwide Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

211.     Power Grout is a consumer product as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

212.     Plaintiff and the Nationwide Class are consumers as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

213.     Defendants are suppliers and warrantors as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) and (5).

214.     15 U.S.C. § 2310(d) is satisfied because Plaintiff properly invokes the jurisdiction of this Court under CAFA.

215.     Pursuant to the Magnuson-Moss Warranty Act, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under 15 USCS §§ 2301 et seq., or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.

216.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308(a), "[n]o supplier may disclaim or modify … any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer Product…"

217.      Defendants provided Plaintiffs and the Nationwide Class "written warranties" for Power Grout as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6), including that Power Grout was free of substantial manufacturing defects, did not break down or deteriorate under normal use, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

218.     As set forth above, Power Grout did not conform to the warranties provided by Defendants for the product.

219.     Defendants were given ample opportunity to correct the defects, but declined to cure the defects within a reasonable time or a reasonable number of attempts.

220.     Defendants also purported to disclaim implied warranties, including the implied warranties of merchantability and fitness.

221.     Defendants' disclaimer of the implied warranties of merchantability and fitness is not enforceable and constitutes a violation of the Magnuson-Moss Warranty Act.

222.     As a direct and proximate result of Defendants' violation of the Magnuson-Moss Warranty Act, Plaintiffs and the Nationwide Class have been damaged in an amount to be proven at trial.

223.     In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the Nationwide Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Nationwide Class in connection with the commencement and prosecution of this action.

224.     Plaintiffs incorporate the prayer for relief as though set forth herein.

### COUNT VIII - Negligence, including Negligent Misrepresentation
### On behalf of Plaintiffs and the Nationwide Class

225.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

226.     Defendants had a duty to exercise ordinary care in the manufacturing, assembly, inspection, and packaging of Power Grout and the Hardener to avoid reasonably foreseeable harm to Plaintiffs and the Nationwide Class.

227.     Defendants breached their duties to Plaintiffs and the Nationwide Class by designing, manufacturing, processing, distributing, delivering, supplying, inspecting,

marketing and/or selling Power Grout and/or the Hardener that are defective and not suitable for their intended use.

228.   Defendants knew or should have foreseen with reasonable certainty that Plaintiffs and/or the Nationwide Class would suffer injury and/or monetary damages by using and/or installing Power Grout and/or the Hardener in their homes and buildings.

229.   Despite the fact that Defendants knew or should have known that Power Grout and the Hardener were defective, Defendants continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Power Grout and the Hardener to Plaintiffs, the Nationwide Class, and/or the consuming public.

230.   Defendants' actions in relation to the design, manufacturing, processing, distribution, delivery, supply, marketing and/or sale of Power Grout and the Hardener to Plaintiffs, the Nationwide Class, and/or the consuming public were intentional and reckless.

231.   As a direct and proximate result of the Defendants' breaches of their duties of care and of their ongoing negligence, Plaintiffs and the Nationwide Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

232.   Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT IX - Strict Products Liability
### On behalf of Plaintiffs and the Nationwide Class

233.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

234.    Defendants developed, designed, manufactured, supplied, distributed, marketed, sold, and/or warranted Power Grout and the Hardener.

235.    As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

236.    In light of the numerous defects in Power Grout and the Hardener, they were unreasonably dangerous for their intended uses.

237.    In light of the numerous defects in Power Grout and the Hardener, Defendants did not act reasonably in designing Power Grout and the Hardener.

238.    The defects in Power Grout and the Hardener existed when the product left Defendants' control.

239.    Defendants knew and/or should have known and expected that Power Grout and the Hardener would be installed in the same defective condition in which they were originally designed, manufactured, and/or sold and would pose a substantial risk to Plaintiffs, the Nationwide Class, and their property.

240.    Plaintiffs and the Nationwide Class were unaware of the defects in Power Grout and the Hardener.

241.    Defendants could have and failed to adequately and properly warn Plaintiffs and the Nationwide Class that Power Grout and/or the Hardener would pose a substantial risk to Plaintiffs, the Nationwide Class, and their property.

242.     Had Defendants adequately and properly warned about the defects in Power Grout and/or the Hardener, Plaintiffs and the Nationwide Class would not have purchased and/or installed Power Grout or the Hardener.

243.     The risk of harm to Plaintiffs and the Nationwide Class was sufficiently great to justify the burden of providing a warning.

244.     As a direct and proximate result of Defendants' failure to warn and defective design and manufacture, Plaintiffs and the Nationwide Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

245.     The injuries suffered by Plaintiffs and the Nationwide Class are not caused by any voluntary, unusual or abnormal handling by Plaintiffs or the Nationwide Class.

246.     Plaintiffs provided Defendants with notice before the filing of this lawsuit.

247.     Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT X - Unjust Enrichment
### On behalf of Plaintiffs and the Nationwide Class

248.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

249.     Plaintiffs and the Nationwide Class have conferred substantial benefits on Defendants by Plaintiffs by purchasing Power Grout.

250.     Defendants have knowingly and willingly accepted and enjoyed the benefits conferred on them by Plaintiffs and the Nationwide Class.

251.     Defendants either knew or should have known that the payments rendered by Plaintiffs and the Nationwide Class were given and received with the expectation that Power Grout would perform as represented and warranted.

252.     Power Gout did not perform as represented and warranted.

253.     It would be inequitable for Defendants to retain the benefit of the payments made by Plaintiffs and the Nationwide Class under these circumstances.

254.     Defendants have been unjustly enriched at the expense of Plaintiffs and the Nationwide Class.

255.     As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and the Nationwide Class have incurred damages, and will continue to incur damages in an amount to be determined at trial.

256.     Plaintiffs incorporate the prayer for relief as though set forth herein.

## COUNT XI - Fraud
### On behalf of Plaintiffs and the Nationwide Class

257.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

258.     Defendants designed, developed, tested, manufactured, distributed, supplied, marketed, and/or sold Power Grout and the Hardener.

259.     Defendants fraudulently represented on the product, in advertising online and social media, and on in-store sales materials that Power Grout was advanced performance

grout that was fast setting and open to traffic in four hours, crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions.

260.   Defendants further fraudulently represented that the Hardener was a suitable fix and would harden defective Power Grout.

261.   As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

262.   Defendants knew that the representations they made about Power Grout and the Hardener were false.

263.   Defendants had special knowledge of the defects in Power Grout and did not disclose that Power Grout did not set, would need application and/or sealing with the Hardener, and was not suitable for wet conditions, among other things.

264.   Defendants had special knowledge of the defects in the Hardener and did not disclose that the Hardener would not fix and/or harden the defective Power Grout.

265.   Defendants' acts, practices, representations, and omissions were made with the intent that Plaintiffs and the Nationwide Class would rely thereon in connection with the purchase and use of Power Grout and use of the Hardener.

266.   Plaintiffs and the Nationwide Class relied on Defendants' false representations about Power Grout and/or the Hardener.

267.   As a direct and proximate result of Defendants' fraudulent actions, Plaintiffs and the Nationwide Class have suffered and will continue to suffer monetary damages in an amount to be determined at trial.

268.   Plaintiffs incorporate the prayer for relief as though set forth herein.

**COUNT XII – Violation of Washington Consumer Protection Act**
**Wash. Rev. Code § 19.86.020 - On behalf of the Rouses and the Washington Class**

269.    The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

270.    The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

271.    Defendants distributed, supplied, advertised, marketed, and sold Power Grout in Washington and across the nation and, therefore, engaged in business directly and indirectly affecting the people of Washington and the public at large.

272.    Wash. Rev. Code § 19.86.020 provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

273.    Defendants engaged in deceptive acts or practices when, in the course of their business, Defendants advertised, marketed, and represented that Power Grout had characteristics, uses, benefits or qualities that it did not possess including that that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

274.    Defendants further engaged in deceptive acts and practices when, in the course of their business, Defendants represented that the Hardener had characteristics, qualities, uses, benefits or qualities that it did not possess including that it would harden or fix the defect in Power Grout.

275.    Defendants' deceptive acts and practices caused substantial injury to the Rouses and the Washington Class and their property

276.    Defendants intended to mislead the Rouses and the Washington Class, and to induce the Rouses and the Washington Class to rely on their misrepresentations and omissions.

277.    Defendants would not have sold the volume of Power Grout that they sold, nor would Defendants have been able to justify the price differentiation and premium price charged to consumers if they had disclosed that Power Grout was not fast setting, susceptible to cracks and shrinking, disintegrated when wet, needed sealing, and was not suitable in wet conditions.

278.    Defendants' deceptive trade practices in relation to Power Grout and the Hardener affected the purchasing decisions of Plaintiffs and the Class.

279.    Defendants' deceptive trade practices in relation to Power Grout and the Hardener had the tendency or capacity to deceive or mislead Plaintiffs, the Washington Class, and a substantial segment of the public.

280.    As a direct and proximate result of Defendants' deceptive trade practices, the Rouses and the Washington Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses

associated with the defective Power Grout.  These damages and others are expected to increase over time as the defective grout continues to fail.

281.    Defendants' continued violations of § 19.86.020 present a continuing risk to the general public.

282.    The Rouses incorporate the prayer for relief as though set forth herein.

**COUNT XIII – Breach of Implied Warranties of Merchantability and Fitness
On behalf of the Rouses and the Washington Class**

283.    The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

284.    The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

285.    Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, and sale of Power Grout.

286.    Defendants represented and warranted on Power Grout packaging, on Defendants' websites, and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

287.    The Power Grout sold by Defendants is subject to the implied warranties of fitness and merchantability, pursuant to which Defendants warranted that Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose for which grout was intended, would pass without objection in the trade, and conformed to the representations and specifications made on the package including

that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

288.  As set forth above, Power Grout is defective, not fit for use as grout, is not of merchantable quality, would not pass without objection in the trade, and does not conform to the representations on the packaging of Power Grout.

289.  Defendants breached these implied warranties by failing to provide defect-free Power Grout that was fit for use as grout and of merchantable quality, that would pass without objection in the trade, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

290.  Defendants' attempts to disclaim these implied warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by the Rouses and the Washington Class.

291.  As a direct and proximate result of Defendants' breaches of these implied warranties, the Rouses and the Washington Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout.  These damages and others are expected to increase over time as the defective grout continues to fail. The Rouses incorporate the prayer for relief as though set forth herein.

49

## COUNT XIV – Breach of Express Warranties
### On behalf of the Rouses and the Washington Class

292.    The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

293.    The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

294.    Defendants represented and warranted on Power Grout packaging, on Defendants' websites and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

295.    Defendants further expressly represented and warranted under the Limited Lifetime Warranty that Power Grout was free from substantial manufacturing defects and will not break down or deteriorate under normal use.

296.    These representations constitute express warranties as to Power Grout's qualities, nature and performance and were part of the basis of the bargain when Plaintiff and Class members purchased Power Grout.

297.    As set forth above, Defendants knew and concealed materials facts including that Power Grout is not free of substantial manufacturing defects, breaks down and deteriorates under normal use, and does not conform to the representations on the packaging of Power Grout.

298.    Defendants breached the express warranties by failing to provide Power Grout that was free of substantial manufacturing defects, did not break down or deteriorate

under normal use, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

299.   The Rouses and the Washington Class would not have purchased Power Grout or paid a premium in price for Power Grout but for Defendants representations and warranties about Power Grout's specifications, qualities, and performance.

300.   Defendants' attempts to disclaim these express warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by the Rouses and the Washington Class.

301.   As a direct and proximate result of Defendants' breaches of these express warranties, the Rouses and the Washington Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout.   These damages and others are expected to increase over time as the defective grout continues to fail.

302.   The Rouses provided Defendants with notice before the filing of this lawsuit.

303.   The Rouses incorporate the prayer for relief as though set forth herein.

## COUNT XV - Negligence, including Negligent Misrepresentation
## On behalf of the Rouses and the Washington Class

304.    The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

305.    The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

306.    Defendants had a duty to exercise ordinary care in the manufacturing, assembly, inspection, and packaging of Power Grout and the Hardener to avoid reasonably foreseeable harm to the Rouses and the Washington Class.

307.    Defendants breached their duties to the Rouses and the Washington Class by designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Power Grout and/or the Hardener that are defective and not suitable for their intended use.

308.    Defendants knew or should have foreseen with reasonable certainty that the Rouses and the Washington Class would suffer injury and/or monetary damages by using and/or installing Power Grout and/or the Hardener in their homes and buildings.

309.    Despite the fact that Defendants knew or should have known that Power Grout and the Hardener were defective, Defendants continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Power Grout and the Hardener to the Rouses, the Washington Class, and/or the consuming public.

310.   Defendants' actions in relation to the design, manufacturing, processing, distribution, delivery, supply, marketing and/or sale of Power Grout and the Hardener the Rouses, the Washington Class, and/or the consuming public were intentional and reckless.

311.   As a direct and proximate result of the Defendants' breaches of their duties of care and of their ongoing negligence, the Rouses and the Washington Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

312.   The Rouses incorporate the prayer for relief as though set forth herein.

### COUNT XVI - Strict Products Liability
**On behalf of the Rouses and the Washington Class**

313.   The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

314.   The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

315.   Defendants developed, designed, manufactured, supplied, distributed, marketed, sold, and/or warranted Power Grout and the Hardener.

316.   As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

317.   In light of the numerous defects in Power Grout and the Hardener, they were unreasonably dangerous for their intended uses.

318.   In light of the numerous defects in Power Grout and the Hardener, Defendants did not act reasonably in designing Power Grout and the Hardener.

319.   The defect in Power Grout and the Hardener existed when the products left Defendants' control.

320.   Defendants owed a duty of reasonable care to the Rouses and the Washington Class in the design, development, and manufacture of Power Grout.

321.   Defendants knew and/or should have known and expected that Power Grout and the Hardener would be installed in the same defective condition in which they were originally designed, manufactured, and/or sold and would pose a substantial risk to the Rouses, the Washington Class, and their property.

322.   The Rouses and the Washington Class were unaware of the defects in Power Grout and the Hardener.

323.   Defendants could have and failed to adequately and properly warn the Rouses and the Washington Class that Power Grout and/or the Hardener would pose a substantial risk to the Rouses, the Washington Class, and their property.

324.   Had Defendants adequately and properly warned about the defects in Power Grout and the need to use the Hardener, the Rouses and the Washington Class would not have purchased Power Grout.

325.   The risk of harm to the Rouses and the Washington Class was sufficiently great to justify the burden of providing a warning.

326.    As a direct and proximate result of Defendants' failure to warn and defective design and manufacture, the Rouses and the Washington Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

327.    The injuries suffered by the Rouses and the Washington Class are not caused by any voluntary, unusual or abnormal handling by the Rouses and the Washington Class.

328.    The Rouses incorporate the prayer for relief as though set forth herein.

### COUNT XVII - Unjust Enrichment
### On behalf of the Rouses and the Washington Class

329.    The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

330.    The Rouses and the Washington Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

331.    The Rouses and the Washington Class have conferred substantial benefits on Defendants by purchasing Power Grout, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

332.   Defendants either knew or should have known that the payments rendered by the Rouses and the Washington Class were given and received with the expectation that Power Grout would perform as represented and warranted.

333.   Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefit without payment of the value to the Rouses and the Washington Class.  By their wrongful acts and omissions, including manufacturing and selling the defective Power Grout, Defendants were unjustly enriched at the expense of the Rouses and the Washington Class.

334.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, the Rouses and the Washington Class have incurred damages, and will continue to incur damages in an amount to be determined at trial.

335.   The Rouses incorporate the prayer for relief as though set forth herein.

### COUNT XVIII - Fraud
### On behalf of the Rouses and the Washington Class

336.   The Rouses re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

337.   Defendants designed, developed, tested, manufactured, distributed, supplied, marketed, and/or sold Power Grout and the Hardener.

338.   Defendants fraudulently represented on the product, in advertising online and social media, and on in-store sales materials that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions.

339.   Defendants further fraudulently represented that the Hardener was a suitable fix and would harden defective Power Grout.

340.   As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

341.   Defendants knew that the representations they made about Power Grout and the Hardener were false.

342.   Defendants had special knowledge of the defects in Power Grout and did not disclose that Power Grout did not set, would need application and/or sealing with the Hardener, and was not suitable for wet conditions, among other things.

343.   Defendants had special knowledge of the defects in the Hardener and did not disclose that the Hardener would not fix and/or harden the defective Power Grout.

344.   Defendants' acts, practices, representations, and omissions were made with the intent that the Rouses and the Washington Class would rely thereon in connection with the purchase and use of Power Grout and use of the Hardener.

345.   The Rouses and the Washington Class relied on Defendants' false representations about Power Grout and/or the Hardener.

346.   As a direct and proximate result of Defendants' fraudulent actions, the Rouses and the Washington Class have suffered and will continue to suffer monetary damages in an amount to be determined at trial.

347.   The Rouses incorporate the prayer for relief as though set forth herein.

**COUNT XIX - Violation of New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. § 358-A:2 - On behalf of the Drouins and the New Hampshire Class**

348.    The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

349.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

350.    Defendants designed, developed, tested, manufactured, distributed, supplied, marketed, and sold Power Grout in New Hampshire and across the nation and, therefore, engaged in business directly and indirectly affecting the people of New Hampshire and the public at large.

351.    N.H. Rev. Stat. § 358-A:2 provides, in part, as follows:

It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following: …

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have…; or

…

(7) representing that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another . . . .

352.    Defendants engaged in deceptive acts and practices when, in the course of their business, Defendants represented that Power Grout had characteristics, uses, benefits

or qualities that it did not possess including that that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

353.   Defendants further engaged in deceptive acts and practices when, in the course of their business, Defendants represented that the Hardener had characteristics, uses, benefits or qualities that it did not possess including that it would harden or fix the defect in Power Grout.

354.   Defendants further engaged in deceptive acts and practices when, in the course of their business, Defendants represented that Power Grout was of a quality or grade that it did not possess including that that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, and was suitable for high traffic and wet conditions.

355.   Defendants further engaged in deceptive trade practices when, in the course of their business, Defendants engaged in conduct pertaining to Power Grout and the Hardener that created a likelihood of confusion or misunderstanding including representing that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, was crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions, and representing that the Hardener was a suitable fix for the defective grout.

356.   Defendants' deceptive conduct caused substantial injury to the Drouins and the New Hampshire Class and provided no benefit to consumers.

357.   Defendants intended to mislead the Drouins and the New Hampshire Class and induce them to rely on its misrepresentations.

358.   Defendants would not have sold the volume of Power Grout that they sold, nor would Defendants have been able to justify the price differentiation and premium price charged to consumers if they had disclosed that Power Grout was not fast setting, susceptible to cracks and shrinking, disintegrated when wet, needed sealing, and was not suitable in wet conditions.

359.   Defendants' deceptive trade practices in relation to Power Grout and the Hardener affected the purchasing decisions of the Drouins and the New Hampshire Class.

360.   Defendants' deceptive trade practices in relation to Power Grout and the Hardener had the tendency or capacity to deceive or mislead the Drouins, the New Hampshire Class, and a substantial segment of the public.

361.   As a direct and proximate result of Defendants' deceptive trade practices, the Drouins and the Washington Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout.  These damages and others are expected to increase over time as the defective grout continues to fail.

362.   Defendants' continued violations of § 358-A:2 present a continuing risk to the general public.

60

363.    The Drouins incorporate the prayer for relief as though set forth herein.

## COUNT XX - Breach of Implied Warranties of Merchantability and Fitness
### On behalf of the Drouins and the New Hampshire Class

364.    The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

365.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

366.    Defendants were engaged in and are responsible for the design, development, testing, manufacture, distribution, supply, marketing, and sale of Power Grout.

367.    Defendants represented and warranted on Power Grout packaging, on Defendants' websites, and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

368.    The Power Grout sold by Defendants is subject to the implied warranties of fitness and merchantability, pursuant to which Defendants warranted that Power Grout was free of defective materials, was of merchantable quality, was suitable and fit for the ordinary purpose for which grout was intended, would pass without objection in the trade, and conformed to the representations and specifications made on the package including that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

369.   As set forth above, Power Grout is defective, is not fit for use as grout, is not of merchantable quality, would not pass without objection in the trade, and does not conform to the representations on the packaging of Power Grout.

370.   Defendants breached these implied warranties by failing to provide defect-free Power Grout that was fit for use as grout and of merchantable quality, that would pass without objection in the trade, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

371.   Defendants' attempts to disclaim these implied warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by the Drouins and the New Hampshire Class.

372.   As a direct and proximate result of Defendants' breaches of these implied warranties, the Drouins and the New Hampshire Class have incurred damages, and will continue to incur damages, in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout.   These damages and others are expected to increase over time as the defective grout continues to fail.

373.   The Drouins provided Defendants with notice before the filing of this lawsuit.

374.   The Drouins incorporate the prayer for relief as though set forth herein.

62

## COUNT XXI - Breach of Express Warranties
### On behalf of the Drouins and the New Hampshire Class

375.    The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

376.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

377.    Defendants represented and warranted on Power Grout packaging, on Defendants' websites and on point-of-sale materials that Power Grout was fast setting and open to traffic in four hours, that it would never need sealing, and that it was crack and shrink resistant.

378.    Defendants further expressly represented and warranted under the Limited Lifetime Warranty that Power Grout was free from substantial manufacturing defects and will not break down or deteriorate under normal use.

379.    These representations constitute express warranties as to Power Grout's qualities, nature and performance and were part of the basis of the bargain when the Drouins and the New Hampshire Class members purchased Power Grout.

380.    As set forth above, Defendants knew and concealed materials facts including that Power Grout is not free of substantial manufacturing defects, breaks down and deteriorates under normal use, and does not conform to the representations on the packaging of Power Grout.

381.    Defendants breached the express warranties by failing to provide Power Grout that was free of substantial manufacturing defects, did not break down or deteriorate

under normal use, and that conformed to the representations on the packaging that Power Grout was fast setting and open to traffic in four hours, that would never need sealing, and that was crack and shrink resistant.

382.   Defendants' attempts to disclaim these express warranties is unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by the Drouins and the New Hampshire Class.

383.   As a direct and proximate result of Defendants' breaches of these express warranties, the Drouins and the New Hampshire Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and installation of a defective product, resultant damage to and loss of value of the homes or buildings in which Power Grout was installed, the costs of maintenance, repair and/or replacement of Power Grout, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout. These damages and others are expected to increase over time as the defective grout continues to fail.

384.   The Drouins provided Defendants with notice before the filing of this lawsuit.

385.   The Drouins incorporate the prayer for relief as though set forth herein.

### **COUNT XXII - Negligence, including Negligent Misrepresentation**
**On behalf of the Drouins and the New Hampshire Class**

386.   The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

387.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

388.    Defendants had a duty to exercise ordinary care in the manufacturing, assembly, inspection, and packaging of Power Grout and the Hardener to avoid reasonably foreseeable harm to the Drouins and the New Hampshire Class.

389.    Defendants breached their duties to the Drouins and the New Hampshire Class by designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Power Grout and/or the Hardener that are defective and not suitable for their intended use.

390.    Defendants knew or should have foreseen with reasonable certainty that the Drouins and the New Hampshire Class would suffer injury and/or monetary damages by using and/or installing Power Grout and/or the Hardener in their homes and buildings.

391.    Despite the fact that Defendants knew or should have known that Power Grout and the Hardener were defective, Defendants continued to design, manufacture, process, distribute, deliver, supply, market and/or sell Power Grout and the Hardener to the Drouins, the New Hampshire Class, and/or the consuming public.

392.    Defendants' actions in relation to the design, manufacturing, processing distribution, delivery, supply, marketing and/or sale of Power Grout and the Hardener to the Drouins, the New Hampshire Class, and/or the consuming public were intentional and reckless.

393.    As a direct and proximate result of the Defendants' breaches of their duties of care and of their ongoing negligence, the Drouins and the New Hampshire Class have

incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

394.    The Drouins incorporate the prayer for relief as though set forth herein.

## COUNT XXIII - Strict Products Liability
### On behalf of the Drouins and the New Hampshire Class

395.    The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

396.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

397.    Defendants developed, designed, manufactured, supplied, distributed, marketed, sold, and/or warranted Power Grout and the Hardener.

398.    As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

399.    In light of the numerous defects in Power Grout and the Hardener, they were unreasonably dangerous for their intended uses.

400.    In light of the numerous defects in Power Grout and the Hardener, Defendants did not act reasonably in designing Power Grout and the Hardener.

401.    The defect in Power Grout existed when the product left Defendants' control.

402.    Defendants knew and/or should have known and expected that Power Grout and the Hardener would be installed in the same defective condition in which they were originally designed, manufactured, and/or sold and would pose a substantial risk to the Drouins, the New Hampshire Class, and their property.

403.    The Drouins and the New Hampshire Class were unaware of the defects in Power Grout and the Hardener.

404.    Defendants could have and failed to adequately and properly warn the Drouins and the New Hampshire Class that Power Grout and/or the Hardener would pose a substantial risk to the Drouins, the New Hampshire Class, and their property.

405.    Had Defendants adequately and properly warned about the defects in Power Grout and/or the Hardener, the Drouins and the New Hampshire Class would not have purchased and/or installed Power Grout or the Hardener.

406.    The risk of harm to the Drouins and the New Hampshire Class was sufficiently great to justify the burden of providing a warning.

407.    As a direct and proximate result of Defendants' failure to warn and defective design and manufacture, the Drouins and the New Hampshire Class have incurred damages, and will continue to incur damages in an amount to be determined at trial, including, but not limited to the purchase and/or installation of defective products, resultant damage to and loss of value of the homes or buildings in which Power Grout and/or the Hardener was installed, the costs of maintenance, repair and/or replacement of Power Grout and/or the Hardener, and all reasonable fees, costs, interest, and/or expenses associated with the defective Power Grout and Hardener.

408.    The injuries suffered by the Drouins and the New Hampshire Class are not caused by any voluntary, unusual or abnormal handling by the Drouins or the New Hampshire Class.

409.    The Drouins provided Defendants with notice before the filing of this lawsuit.

410.    The Drouins incorporate the prayer for relief as though set forth herein.

### COUNT XXIV - Unjust Enrichment
**On behalf of the Drouins and the New Hampshire Class**

411.    The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

412.    The Drouins and the New Hampshire Class bring this count as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

413.    The Drouins and the New Hampshire Class have conferred substantial benefits on Defendants by purchasing Power Grout.

414.    Defendants have knowingly and willingly accepted and enjoyed the benefits conferred on them by the Drouins and the New Hampshire Class

415.    Defendants either knew or should have known that the payments rendered by the Drouins and the New Hampshire Class were given and received with the expectation that Power Grout would perform as represented and warranted.

416.    Power Gout did not perform as represented and warranted.

417.    It would be inequitable for Defendants to retain the benefit of the payments made by the Drouins and the New Hampshire Class under these circumstances.

418.   Defendants have been unjustly enriched at the expense of the Drouins and the New Hampshire Class.

419.   As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, the Drouins and the New Hampshire Class have incurred damages, and will continue to incur damages in an amount to be determined at trial.

420.   The Drouins incorporate the prayer for relief as though set forth herein.

## COUNT XXV - Fraud
### On behalf of the Drouins and the New Hampshire Class

421.   The Drouins re-allege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

422.   Defendants designed, developed, tested, manufactured, distributed, supplied, marketed, and/or sold Power Grout and the Hardener.

423.   Defendants fraudulently represented on the product, in advertising online and social media, and on in-store sales materials that Power Grout was advanced performance grout that was fast setting and open to traffic in four hours, crack and shrink resistant, never needed sealing, was suitable for high traffic and wet conditions.

424.   Defendants further fraudulently represented that the Hardener was a suitable fix and would harden defective Power Grout.

425.   As set forth above, Power Grout and the Hardener are defective and not suitable for use for their intended purposes.

426.   Defendants knew that the representations they made about Power Grout and the Hardener were false.

427. Defendants had special knowledge of the defects in Power Grout and did not disclose that Power Grout did not set, would need application and/or sealing with the Hardener, and was not suitable for wet conditions, among other things.

428. Defendants had special knowledge of the defects in the Hardener and did not disclose that the Hardener would not fix and/or harden the defective Power Grout.

429. Defendants' acts, practices, representations, and omissions were made with the intent that the Drouins and the New Hampshire Class would rely thereon in connection with the purchase and use of Power Grout and use of the Hardener.

430. The Drouins and the New Hampshire Class relied on Defendants' false representations about Power Grout and/or the Hardener.

431. As a direct and proximate result of Defendants' fraudulent actions, the Drouins and the New Hampshire Class have suffered and will continue to suffer monetary damages in an amount to be determined at trial.

432. Plaintiffs incorporate the prayer for relief as though set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in favor of themselves and the Classes and against Defendants in the following manners:

A. An order determining that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs are proper class representatives, and that the best practicable notice of this action be given to members of the Classes represented by Plaintiffs;

B.      A judgment be entered against Defendants and in favor of Plaintiffs and the Classes on the Causes of Action in this Complaint;

C.      Plaintiffs and the Classes be awarded compensatory damages;

D.      Plaintiffs and the Classes be awarded statutory damages;

E.      Plaintiffs and the Classes be awarded punitive damages;

F.      Plaintiffs and the Classes be awarded their costs and reasonable attorney's fees;

G.      Plaintiffs and the Classes be awarded pre-judgment interest;

H.      Plaintiffs and the Classes be awarded post-judgment interest;

I.      Plaintiffs and the Classes be awarded injunctive relief appropriately tailored to remedy Defendants' conduct and the harm caused by the same; and

J.      For all other and further relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: September 7, 2022

Respectfully submitted,

*/s/ David W. Asp*
David W. Asp (MN #344850)
R. David Hahn (MN #401262)
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Email: dwasp@locklaw.com
   rdhahn@locklaw.com

Eric W. Richardson (to be admitted pro hac vice)
David F. Hine (to be admitted pro hac vice)
Emily E. St. Cyr (to be admitted pro hac vice)
Petra G. Bergman (to be admitted pro hac vice)
**Vorys, Sater, Seymour and Pease LLP**
The Great American Tower
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: (513) 723-4019
Fax: (513) 852-7885
Email: ewrichardson@vorys.com
   dfhine@vorys.com
   eestcyr@vorys.com
   pgbergman@vorys.com

*Attorneys for Plaintiffs*