**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Lisa Rouse, Juston Rouse, Jenna Drouin, and Nicholas Drouin, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>    v.<br><br>H.B. Fuller Company and H.B. Fuller Construction Products Inc.,<br><br>  Defendants. | Case No. 0:22-cv-02173-WMW-ECW<br><br>**MEMORANDUM OF LAW**<br>**IN SUPPORT OF DEFENDANTS'**<br>**MOTION TO DISMISS AND STRIKE** |

## INTRODUCTION

Plaintiff homeowners allege that Defendants' TEC Power Grout, which Plaintiffs used in their home-renovation projects, failed to harden as advertised. On behalf of a nationwide putative class (and alternatively, Washington and New Hampshire putative classes) Plaintiffs assert twenty-five claims against Defendants, including tort and contract claims. For multiple reasons, all of these claims fail except for Plaintiffs' express-warranty claims on behalf of New Hampshire and Washington classes.[1] Most notably:

- Plaintiffs' tort claims fail because Plaintiffs have not plausibly alleged any non-contract-based damages.

- Plaintiffs' product-liability claims fail because Plaintiffs have not plausibly alleged that the products are unreasonably dangerous or that they caused physical harm.

- Plaintiffs' misrepresentation/omission claims fail because Plaintiffs do not meet the requirements of Rule 9(b), nor do they plausibly allege scienter or reliance.

- Plaintiffs' implied-warranty claims fail because Defendants disclaimed the implied warranties.

- Plaintiffs' unjust-enrichment claims fail because the parties have a valid contract.

- Plaintiffs' claims on behalf of a nationwide class fail because Plaintiffs lack standing to bring claims under the laws of states other than New Hampshire and Washington.

---

[1] For the Court's convenience, Defendants will file an appendix that lists the bases for dismissal as to each claim.

- 1 -

Additionally, the Court should strike the class as to claims that have a reliance element. The complaint itself makes clear that such claims involve individualized issues not suitable for class treatment, and no discovery could change that fact.

**FACTUAL ALLEGATIONS**

**I.      DEFENDANTS' GROUT AND HARDENER**

Defendants manufacture and sell TEC Power Grout ("Grout"), which is used "to fill and seal joints between tiles, create a water barrier, and to secure tile." ECF Doc. 24 ("Am. Compl.") ¶¶ 28-29. Defendants market the Grout as being "resistant to shrinking and cracking" and "excellent . . . in environments such as high traffic and wet conditions, and in residential and commercial application." *Id.* ¶ 34. The Grout is offered in numerous colors and bag sizes. *Id.* ¶¶ 37-38.

Defendants also manufacture and distribute TEC Acrylic Grout Hardener ("Hardener"), which is an acrylic liquid that "when applied, creates a shiny plastic veneer and seals the grout." *Id.* ¶¶ 54, 58. Defendants do not market or sell the Hardener, but they provide it to some customers who complain of soft Grout. *Id.* ¶ 57.

Plaintiffs contend that the Grout and Hardener are defective because they do not harden as advertised and that Defendants know about and conceal these defects. *Id.* ¶¶ 56, 61, 66, 68.

**II.     DEFENDANTS' LIMITED LIFETIME WARRANTY**

The Grout comes with a "Limited Lifetime Warranty," which warrants that the Grout "will provide color uniformity," "will be free from substantial manufacturing defects," and "will not break down or deteriorate under normal use, provided that [it] was

- 2 -

properly applied within its applicable shelf life and in accordance with [Defendants']
written guidelines [etc.]." Decl. of Cesar Valdez, Ex. A .[2] The warranty states that it is "in
place of all other warranties, express or implied, including, but not limited to,
noninfringement, merchantability and fitness for a particular purpose." *Id.*

The Warranty creates "exclusive remedies," authorizing Defendants to replace the
Grout or refund the purchase price thereof if the claimant notifies Defendants in writing,
provides proof or purchase, and provides Defendants with "a reasonable opportunity to
review and investigate the alleged defect." *Id.*

### III.   THE ROUSES

Plaintiffs Lisa and Juston Rouse are Washington citizens. Am. Compl. ¶¶ 6-7. Based
on their contractor's recommendation, the Rouses chose four colors of Grout, which the
contractor installed in late 2021 and early 2022 as part of a renovation project. *Id.* ¶¶ 70,
72-75.

In March 2022, the Rouses contacted their contractor and Defendants, expressing
concern that the Grout in their showers was "disintegrating." *Id.* ¶ 79. Defendants sent a
representative, who inspected the grout, purportedly described the problem as "a
'chemical' issue," and provided the Hardener to the Rouses' contractor. *Id.* ¶¶ 81-83. The
Rouses' contractor removed and reinstalled the Grout and applied the Hardener; but the
Hardener purportedly "peeled off" and left the Grout exposed. *Id.* ¶¶ 86, 89.

---

[2] The Warranty is referenced in Plaintiffs' complaint, *see* Am. Compl. ¶ 42, and is thus
appropriately considered at the Rule 12 stage. *E.g.*, *Bachman's v. Florists' Mut. Ins. Co.*,
525 F. Supp. 3d 984, 986 (D. Minn. 2021).

CORE/2006164.0076/178500917.1

The Rouses contacted Defendants, who sent a second representative to their home. *Id.* ¶¶ 91-92. The second representative concluded that the Grout and Hardener were "fine," and expressed concern about the contractor's workmanship. *Id.* ¶ 93. The Rouses have since "removed the residue left from the Hardener," but "the grout problem still persists." *Id.* ¶ 95.

In their original complaint, the Rouses did not allege that the Grout or Hardener had damaged their home. But after Defendants filed their motion to dismiss the original complaint and pointed out this lack of damage, the Rouses amended their complaint to state that "upon information and belief, the defective grout has damaged the Rouses' real property and adversely impacted the value of the same." *Id.* ¶ 97. The Rouses do not explain how their home was damaged, what part of their home was damaged, or why they can only make this allegation "upon information and belief."

## IV.   THE DROUINS

Plaintiffs Jenna and Nicholas Drouin are New Hampshire citizens. *Id.* ¶¶ 8-9. Based on their contractor's recommendation, they chose to use the Grout in a renovation project. *Id.* ¶¶ 98-99. The renovation occurred in March 2022, but the Drouins allege that they only "recently determined that the Grout did not fully harden." *Id.* ¶¶ 106-107.

Like the Rouses, the Drouins did not allege any damage to their home in their original complaint, but they now allege that, "upon information and belief, the defective grout has damaged the Rouses' real property and adversely impacted the value of the same." *Id.* ¶ 109. Like the Rouses, the Drouins do not explain how their home was

- 4 -

damaged, what part of their home was damaged, or why they can only make this allegation "upon information and belief."

## V.   THIS ACTION

Plaintiffs assert myriad tort- and contract-based claims—all of which are premised on the allegedly defective Grout and some of which are also premised on the allegedly defective Hardener. Am. Compl. ¶¶ 133-273. Plaintiffs seek to represent a nationwide putative class:

> All persons in the United States and its territories who, within the applicable statute of limitations, either (a) purchased Grout or (b) own a structure in which Grout was installed. The proposed class includes[3] all such persons or entities who contacted Defendants about their Grout, were provided the Hardener, and/or denied or partially denied warranty coverage.

*Id.* ¶ 112. Alternatively, Plaintiffs seek to represent similar classes of Washington and New Hampshire consumers. *See id.* ¶¶ 113-14.

## LEGAL STANDARD

On a motion to dismiss, this Court accepts all well-pleaded allegations in the Complaint as true and draws all reasonable inferences in favor of the non-moving parties. *McDonough v. Anoka Cnty*., 799 F.3d 931, 945 (8th Cir. 2015). To survive a motion to dismiss, Plaintiffs must plead enough facts to make out a claim that is "plausible on its face," and they must plead *facts* and not merely "labels and conclusions." *Id.* at 555. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

## ARGUMENT

---

[3] Defendants understand that the class includes but is not limited to the individuals described in this sentence.

## I.     TORT CLAIMS

### A.     *Plaintiffs' tort claims fail due to the economic-loss rule.*

Plaintiffs' tort claims all fail because Plaintiffs have no tort-based damages.

The law generally disfavors converting contract claims into tort claims. Consequently, Minnesota, New Hampshire, and Washington recognize the economic-loss rule, which "hold[s] parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 153 P.3d 864, 867 (Wash. 2007); *accord* Minn. Stat. § 604.101;[4] *Plourde Sand & Gravel v. JGI*, 917 A.2d 1250, 1253 (N.H. 2007). The doctrine precludes recovering in tort where the alleged damage is entirely or largely to the purchased product itself—*i.e.*, where there is no damage to person and any damage to other property is "minimal" or "foreseeable" at the time of purchase. *Ford Motor*, 572 N.W.2d at 324; *Bull*, 153 P.3d at 869; 3 Anderson U.C.C. § 2-314:130 (3d ed.).

Plaintiffs do not plausibly allege any damage to person or property; they only allege damage to the Grout and Hardener themselves. As to the Hardener, Plaintiffs do not allege that the Hardener damaged persons or property at all. And as to the Grout, Plaintiffs make only a conclusory allegation (which was notably omitted from their original complaint):

---

[4] Washington and New Hampshire law do not recognize a fraud exception to the economic-loss doctrine where, as here, the alleged misrepresentations "concern the quality or characteristics of the subject matter of the contract or relate to the offending party's expected performance of the contract." *Elcon Const., Inc. v. E. Washington Univ.*, 151 Wash. App. 1062 (2009); *accord Hall v. Gascard*, No. 16-cv-418, 2017 WL 2543901, at *4 (D.N.H. June 12, 2017). Minnesota law does, Minn. Stat. § 604.101, subd. 4, but as explained in Section III.B., Plaintiffs have no standing to bring claims under Minnesota law.

CORE/2006164.0076/178500917.1

"upon information and belief, the defective grout has damaged [Plaintiffs'] real property and adversely impacted the value of the same." *Id.* ¶¶ 97, 109.

This conclusory allegation is insufficient to support Plaintiffs' tort claims. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to survive a Rule 12 motion]." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). As a result, courts routinely dismiss claims where the plaintiff alleges damage but does not explain ***how*** he/she/it was damaged. *E.g. Prouty v. DHS*, No. 21-cv-01349, 2021 WL 3051982, at *3 (D. Minn. July 20, 2021); *Bramshill Invs., LLC v. Pullen*, No. 19-cv-18288, 2020 WL 4581827, at *5 (D.N.J. Aug. 10, 2020); *Raines v. Flascher*, No. 18-cv-3012, 2019 WL 3220032, at *3 (D. Minn. July 17, 2019); *Taylor v. Hoven*, No. 4:18-cv-00610, 2018 WL 2120903, at *4 (E.D. Mo. May 8, 2018), *aff'd,* No. 18-2113, 2018 WL 6131329 (8th Cir. Oct. 23, 2018); *Carpenter v. Extendicare Health Servs.*, No. 15-cv-120, 2015 WL 7729406, at *6 (D. Minn. Oct. 26, 2015), *R. &. R. adopted,* No. 15-cv-120, 2015 WL 7720477 (D. Minn. Nov. 30, 2015); *Elkhart Metal, Fabricating v. Martin*, No. 14-cv-00705, 2015 WL 1604852, at *3 (E.D. Mo. Apr. 9, 2015). Here, Plaintiffs do not allege what part of their property was damaged, in what way it was damaged, how they know that the Grout caused such damage, or why they believe their homes have declined in value. Notably, Plaintiffs allege (falsely, as explained in footnote 5) that the Grout's defects "leav[e] tile joints exposed and entire homes and buildings susceptible to water penetration and damage," Am. Compl. ¶ 50, yet they do not allege that the Grout actually caused water damage. Plaintiffs do nothing more

- 7 -

than recite the element they need to prove their tort claims. This conclusory allegation is insufficient to survive a motion to dismiss.

This conclusory allegation is doubly insufficient because it is made "upon information and belief." "[P]leading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader or 'presumptively' within his knowledge, unless he rebuts that presumption." 5 Fed. Prac. & Proc. Civ. § 1224 (4th ed.); *see also, e.g.*, *Starkey v. JPMorgan Chase Bank, NA*, 573 F. App'x 444, 447–48 (6th Cir. 2014) (holding that it was inappropriate to plead on information and belief that certain statements were made during a phone call to which plaintiff was a party and holding that claim was not plausibly pled); *Perkins v. Wexford Health Sources, Inc.*, No. 15-cv-6188, 2019 WL 918501, at *3 (N.D. Ill. Feb. 25, 2019) (same as to allegations of what happened during the plaintiff's medical appointments). Here, Plaintiffs have full access to their bathrooms and have had many months to determine whether the Grout has damaged their property. They provide no explanation for why they cannot allege such damage with certainty.[5] Thus, even if Plaintiffs' allegation of damage was not conclusory, it would still

---

[5] Notably, Plaintiffs are sparing with the phrase "upon information and belief." Their 434-paragraph Amended Complaint uses the phrase just five times: twice as quoted above, once as to the location of one of Defendant's headquarters, once as to Defendant's allegedly sinister motives for calling the Hardener a "hardener," and once as to whether Defendant has a claims department. Am. Compl. ¶¶ 16, 54, 59, 97, 109. Plaintiffs do not use this qualifier in any other instance, including when alleging that Defendants knew about the alleged defect, that Defendants actively concealed the alleged defect, that Defendants make uniform oral representations to all consumers when describing the Hardener, or that consumers around the country have experienced damage. Yet they do apply this qualifier when describing the alleged damage to their own homes.

CORE/2006164.0076/178500917.1

be insufficient to support Plaintiffs' claims. Thus, the economic-loss doctrine precludes recovering in tort. Accordingly, Counts I-IV, VIII-IX, XI-XII, XV-XVI, XVIII-XIX, and XXII-XXIII, and XXV fail.

### B. Plaintiffs' product-liability claims fail because the Grout and Hardener are not unreasonably dangerous, nor did they cause physical harm.

Plaintiffs' product-liability claims fail because Plaintiffs have not plausibly alleged that the Grout or Hardener were unreasonably dangerous or that they caused physical harm.

To state a product-liability claim (whether based on strict liability or negligence), Plaintiffs must plead (among other things) that: (1) the Grout or Hardener were "unreasonably dangerous for [their] intended use;" and (2) the unreasonably dangerous condition caused physical harm. *O'Laughlin v. Minnesota Nat. Gas*, 253 N.W.2d 826, 829 (Minn. 1977) (citing the Restatement on Torts § 402A); *Royer v. Cath. Med. Ctr.*, 741 A.2d 74, 76 (N.H. 1999) (same); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498 (Wash. 2008) (same). Plaintiffs have not plausibly pled either element. Courts have concluded that "improper sealing" does not make a product "unreasonably dangerous." *E.g.*, *In re Stucco*

---

No doubt, Plaintiffs do not allege any damage with specificity or confidence because no such damage occurred. Indeed, no water damage *could* occur because bathroom grout is merely aesthetic. *See* https://www.finehomebuilding.com/project-guides/tiling/waterproofing-tile-showers ("*Tile and grout are water-permeable, so to create a waterproof shower, a substrate system must be completely waterproof."* (emphasis original)); https://www.schluter.com/schluter-us/en_US/Waterproof-Shower ("Contrary to popular thinking, tile and grout are not waterproof. While tile provides the 'wow factor', the key to any successful shower installation lies in what's underneath your tile: your waterproofing system."). A waterproof membrane lines the back of bathroom tile to prevent water leakage, mortar holds the tile together, and grout covers the ugly mortar. Grout is not intended as a water barrier, nor is it advertised as such. *See* https://www.tecspecialty.com/products/grouts/power-grout/; https://www.tecspecialty.com/hbfuller-media/4446/pds_tec-550_powergrout_r1022.pdf; Valdez Decl. Ex. A.

- 9 -

*Litig.*, 364 F. Supp.2d 539, 546 (E.D.N.C. 2005) (granting motion for judgment on the pleadings on this basis). Here, Plaintiffs do not allege that the Grout or the Hardener caused them to get rashes on their hands, broke nearby tile, or fell on their heads in large and heavy chunks.  In short, they do not allege that the Grout or the Hardener was unsafe; they merely allege that it did not work. For this reason alone, Plaintiffs' strict-liability and negligence claims must be dismissed.

Additionally, Plaintiffs do not plausibly allege any physical harm, as explained in Section I.A.. For this reason, too, Plaintiffs' strict-liability and negligence claims fail.

For both these reasons, Counts VIII-IX, XV-XVI, and XXII-XXIII fail.

### C.      *Plaintiffs' misrepresentation/omission-based claims fail.*

#### 1.      **Plaintiffs cannot assert claims under Minnesota statutes.**

Plaintiffs' claims based on Minnesota consumer-protection statutes fail because those statutes do not apply extraterritorially.

Absent statutory language to the contrary, Minnesota law applies "only to conduct that occurred in Minnesota." *Johannessohn v. Polaris*, 450 F. Supp.3d 931, 962 (D. Minn. 2020). Courts have thus concluded that Minnesota's consumer-protection statutes—including the four statutes invoked here—do not apply extraterritorially. *See id.* (CFA); *Ferrari v. Best Buy*, No. 14-cv-2956, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) (UTPA, CFA, and DTPA); *Jones v. Medtronic*, No. 27-cv-16-17488, 2017 WL 4220912, at *6 (Minn. Dist. Ct. May 22, 2017) (FSAA and UTPA), *rev'd in part on other grounds*.

Plaintiffs are not Minnesota residents, and they do not allege that they purchased or used the Grout or suffered any injury in Minnesota. Accordingly, Counts I-IV fail.

- 10 -

CORE/2006164.0076/178500917.1

### 2.   Plaintiffs' claims do not satisfy Rule 9(b).

Plaintiffs' misrepresentation/omission-based claims do not satisfy Rule 9(b).

Rule 9(b) requires that these claims plead "the 'who, what, where, when, and how' of the alleged fraud." *Ambassador Press v. Durst Image Tech. U.S.*, 949 F.3d 417, 421 (8th Cir. 2020); *see OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017) (explaining that Rule 9(b) applies to all claims "grounded in fraud," regardless of how they are labeled.); *Rrooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("[A]ny allegation of misrepresentation . . . must be pled with particularity.").

Rule 9(b) is not satisfied where the plaintiff alleges myriad alleged misrepresentations made on several broad platforms. As Judge Kyle explained:

> Plaintiffs allege a slew of purportedly false statements by [Defendant] . . . . Plaintiffs' allegations concerning where and when these statements were made are fatally vague: they generically aver [Defendant] made these statements "on its website," "in print," and in "its promotional materials . . . repeatedly and continuously over the course of many years." Courts have rejected similarly imprecise allegations.

*Kiefer v. Simonton Bldg. Prod.*, No. 16-cv-3540, 2017 WL 1380497, at *5 (D. Minn. Apr. 17, 2017); *see Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982) (concluding that alleging that false statements were made in a "pamphlet" and "promotional material" did not satisfy Rule 9(b)).

Plaintiffs' allegations here are similarly devoid of details of the who, what, where, when, and how of the alleged misrepresentations:

- Plaintiffs allege that Defendants generally made false representations "online, in stores, in advertisements, and on the product labeling." Am. Compl. ¶¶ 34-36.

- 11 -

CORE/2006164.0076/178500917.1

- Plaintiffs allege that Defendants misrepresented certain Grout and Hardener features, *see id.* ¶¶ 137-40, 278-80, 357-61, but fail to allege who made such misrepresentations, who heard or relied on them, or when they were made.

- Plaintiffs allege that Defendants represented to consumers that "the Hardener will solve the defect about which they are complaining," *id.* ¶ 60, but do not allege who made this or similar representations, to whom they were made, when they were made, how they were made (i.e., by letter, e-mail, telephone, or in person), or the specific words used.

- Plaintiffs allege that Defendants have "go[ne] to great lengths to conceal the fact that Grout is defective," *id.* ¶ 61, but they do not identify any such concealment efforts.

These allegations, like the allegations in *Kiefer*, are "fatally vague." Thus, Counts I-IV, VIII, XI-XII, XV, XVIII-XIX, XXII, and XXV fail.

### 3. Plaintiffs have not plausibly alleged scienter.

Plaintiffs' fraud- and New-Hampshire statutory-fraud claims fail because Plaintiffs do not plausibly allege scienter.

The claims require a showing that the defendant *knew* that the alleged misrepresentation/omission was false or did not know whether it was true or false. *Valspar Refinish v. Gaylord's*, 764 N.W.2d 359, 368 (Minn. 2009) (fraud); *Snierson v. Scruton*, 761 A.2d 1046, 1049 (N.H. 2000) (fraud); *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996) (fraud); *Kelton v. Hollis Ranch*, 927 A.2d 1243, 1246 (N.H. 2007) (New Hampshire CPA). A fact has not been plausibly alleged if "there are lawful, obvious alternative explanations for the alleged conduct." *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) (cleaned up); *see Knudsen v. Sprint Commc'ns Co.*, No. 13-cv-04476, 2016 WL 4548924, at *12 (N.D. Cal. Sept. 1, 2016) (holding that plaintiff did not plausibly allege

- 12 -

scienter because there were obvious alternative explanations for the facts that purportedly supported a finding of scienter). And "rank speculation, unsupported by any facts" — including allegations on information and belief, without explanation for that belief—is "inconsistent with the pleading requirements of *Iqbal*." *City Ctr. Realty Partners v. Macy's Retail*, No. 17-cv-528, 2017 WL 4081896, at *7 (D. Minn. Sept. 13, 2017); *see In re SuperValu, Inc.*, 870 F.3d 763, 770 (8th Cir. 2017) (dismissing claims in part because they were based on allegations "upon information and belief" that were "speculative"); *Kaiser v. ABN AMRO Mortg. Grp., Inc.*, No. 13-cv-2611, 2014 WL 1400724, at *2 (D. Minn. Apr. 10, 2014) (same).

Here, Plaintiffs' sole basis for alleging that Defendants know the Grout and Hardener are defective are as follows:

1.  "Upon information and belief, Defendants' description of the product as a 'hardener' instead of a 'sealer' is an intentional, calculated effort to avoid undermining their repeated representations that Grout 'never needs sealing.'" *Id.* ¶ 59.

2.  "Upon information and belief, Defendants have established a department to handle warranty claims made by customers around the country." *Id.* ¶ 54.

3.  "Defendants have the Hardener because they know that Grout does not harden or consistently satisfy the advertised products' features." *Id.* ¶ 56.

Nothing about these allegations plausibly demonstrates scienter.

The first and second allegations are rank speculation. Plaintiffs provide no support for their "upon information and belief" allegations.

CORE/2006164.0076/178500917.1

Furthermore, the first allegation—that Defendants have a sinister motive for calling the Hardener a  hardener rather than a sealer—is inconsistent with Plaintiffs' own allegations that the purpose of the Hardener is to harden (not seal) defective Grout. *See id.* ¶ 57.

The second allegation also has an obvious alternative explanation: Defendants have a department to handle warranty claims because they offer warranties and contractors sometimes make mistakes in the storage and installation of the Grout. Thus, this fact does not plausibly demonstrate that Defendants knew the Grout was defective.

The third allegation likewise has an obvious alternative explanation: the Hardener can fix soft Grout that results from contractor error or improper maintenance rather than a defective product. The express warranty, the complaint, and the installation instruction materials all make clear that contractor and owner error can cause the Grout not to harden properly:

- The express warranty disclaims liability for grout problems caused by (among other things) improper maintenance or cleaning; failure to follow installation instructions; installation errors related to ambient temperature, expansion space (e.g. the space between tiles); and modification of the Grout. Valdez Decl. Ex. A.

- The complaint acknowledges that Grout must be properly stored, Am. Compl. ¶ 77, and that Defendants claim that soft grout can result from installation error, including "improper mixing" (*e.g.,* adding to much or two little water to the powdered Grout or improperly mixing the Grout in its dry or wet states). *Id.* ¶ 65.

- 14 -

- The instructional video online[6] states that the Grout must be mixed with a low-speed mixing drill (*i.e.,* special equipment); and it warns that overwatering the powdered Grout can cause the end product to be weak and powdery. https://www.tecspecialty.com/products/grouts/power-grout/.

- The written instructions online state (among other things) that the Grout must be stored in cool, dry locations in closed containers; has a shelf life of only 18 months; should be installed when temperatures are between 50 degrees and 80 degrees; should be used in volumes that depend on tile size and joint width; should be used in grout joints of a specific size; and must be used in full rather than partial bags. It goes on to provide detailed instructions for mixing (including precise amounts of water to be used and a warning not to overwater), installation, clean up, and limitations on the immediate use of the Grout. https://www.tecspecialty.com/hbfuller-media/3395/pds_tec-550_ powergrout_r0221.pdf.

In short, storage, installation, and immediate maintenance of the Grout is a complicated process, and Defendants foresee many ways in which it could go wrong. It is therefore unsurprising that Defendants carry a Hardener that can correct installation and user errors. Given this obvious alternative explanation for the Hardener, the existence of the Hardener does not plausibly suggest scienter.

---

[6] The Complaint references the installation instructions. E.g. Compl. ¶¶ 37, 77. Thus, they are properly considered on a motion to dismiss. The Court may also take judicial notice of these publicly-available documents.

- 15 -

Plaintiffs' allegations are insufficient to demonstrate that Defendants knew the Grout or Hardener were defective. Counts XI, XVIII, XIX, and XXV therefore fail.

### 4.     Plaintiffs have not plausibly alleged reliance.

Plaintiffs' fraud and negligent-misrepresentation claims fail because Plaintiffs do not plausibly allege that they relied upon Defendants' alleged misrepresentations/omissions.

These claims require a showing that Plaintiffs relied on the alleged misrepresentations/omissions. *Ross v. Kirner*, 172 P.3d 701, 704 (Wash. 2007) (negligent misrepresentation); *Wyle v. Lees*, 33 A.3d 1187, 1193 (N.H. 2011) (same); *Smith v. Woodwind Homes*, 605 N.W.2d 418, 424 (Minn. App. 2000) (same); *Snierson*, 145 N.H. at 77 (fraud); *Stiley*, 130 Wn.2d at 505 (fraud); *Hoyt Props. v. Prod. Res. Grp.*, 736 N.W.2d 313, 318 (Minn. 2007) (fraud).

Here, Plaintiffs allege that they relied on their contractors' statements (allegedly relayed by Defendants) that the "Grout does not need to be sealed, is crack and shrink resistant, hardens fast, and is an excellent grout option for high traffic and wet conditions." Am. Compl. ¶¶ 72-73, 99-101. In other words, Plaintiffs relied on representations that (1) the Grout would not require regular re-sealing and (2) the Grout would work the way grout should work. These allegations do not satisfy the reliance requirement:

- Plaintiffs' reliance on the representation that Grout would not require regular re-sealing is irrelevant to their misrepresentation/omission claims because Plaintiffs do not allege that this representation was false. Plaintiffs allege that the Grout failed

CORE/2006164.0076/178500917.1

immediately because it did not harden, it cracked and disintegrated, etc.—not that they had to re-seal the Grout as part of regular maintenance.

- Plaintiffs' alleged reliance on the "it-works" representations is not plausible; indeed, it is comical. Surely, Defendants' competitors did not advertise that their grout was riddled with defects and of poor quality. *E.g.,* https://www.custombuildingproducts.com/products/fusion-pro-single-component-grout (making "it-works" representations similar to that of the Grout). It is simply not plausible that Plaintiffs relied on Defendants' "it works" representations when choosing between various types of grout.

- Plaintiffs do not allege that they relied on any representations regarding the Hardener except to state in conclusory terms that "[Plaintiffs/the Rouses] and the [Nationwide/Washington] Class relied on Defendants' false representations and omissions about Power Grout and/or the Hardener." Am. Compl. ¶¶ 271, 350.

- Plaintiffs do not allege that they relied on any omissions.

Counts VIII, XI, XV, XVIII, XXII, and XXV therefore fail.

## II.   CONTRACT AND QUASI-CONTRACT CLAIMS

Plaintiffs make claims for breach of express warranty, breach of implied warranties, and unjust enrichment. They also bring a claim under the Magnuson-Moss Warranty Act

- 17 -

("MMWA") based on these same breaches of express and implied warranties.[7] All of these claims fail, except for the Rouses' express-warranty claim.

### A.    Plaintiffs' unjust-enrichment claims fail because the parties have a valid contract.

Plaintiffs' unjust-enrichment claim fails because the parties have a valid contract. "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *Loftness v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014) (applying MN law); *Clapp v. Goffstown Sch. Dist.*, 977 A.2d 1021, 1025 (N.H. 2009); *Firey v. Orozco*, No. 33232-2-III, 2015 WL 5893664, at *8 (Wash. Ct. App. Oct. 1, 2015). This is true regardless of whether the plaintiff can succeed on a breach-of-contract claim. *Twiestmeyer*, 742 F.3d at 854-55 (affirming Rule 12 dismissal of unjust-enrichment claim); *Clapp*, 977 A.2d at 1025; *Firey*, 2015 WL 5893664 at *8. Here, the parties have a valid contract: the Limited Lifetime Warranty.[8] Thus, Counts X, XVII, and XXIV fail.

---

[7] Such claims "stand or fall with [Plaintiffs'] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

If Plaintiffs made a claim for violation of the MMWA separate from breach of warranty (which they do not appear to do), that claim would fail because Plaintiffs have not alleged any damages caused by the alleged MMWA violation apart from the breach of warranties.

[8] Plaintiffs concede that the Limited Lifetime Warranty (minus the disclaimer of implied warranties) is valid; indeed, they seek to recover for breach of that warranty. *E.g.*, Am. Compl. ¶¶ 203-213.

- 18 -

**B.**      ***Plaintiffs' implied-warranty claims fail, either because the express warranty disclaims them or because the implied-warranty provisions of the UCC are preempted.***

Plaintiffs' implied-warranty claims fail either because the express warranty disclaims all relevant implied warranties or because the provisions of the UCC that create such warranties are preempted by the MMWA.

The UCC is the sole source of all implied warranties relevant to this case.[9] It creates implied warranties except where modified or disclaimed:

> ***Unless excluded or modified*** [citation omitted], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
>
> . . .
>
> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is ***unless excluded or modified*** under the next section an implied warranty that the goods shall be fit for such purpose.

Minn. Stat. § 336.2-314(1) and 315; Wash. Rev. Code § 62A.2-314(1) and 315; NH Rev Stat § 382-A:2-314 and 315 (emphasis added to all).

Defendants' Limited Lifetime Warranty contains a disclaimer of implied warranties. Valdez Decl. Ex. A. (stating that the express warranty is "in place of all other warranties,

---

[9] Minnesota, New Hampshire, and Washington do not recognize any relevant common-law implied warranties apart from the implied warranties in the UCC. *Spectro Alloys v. Fire Brick Engineers*, 52 F. Supp. 3d 918, 926 (D. Minn. 2014) (explaining that Minnesota has no common-law implied warranty of merchantability, and Minnesota's common-law implied warranty of fitness only applies in circumstances not present here); *Brescia v. Great Rd. Realty Tr.*, 373 A.2d 1310, 1312 (N.H. 1977); *Esborg v. Bailey Drug Co.*, 378 P.2d 298, 301 (Wash. 1963).

- 19 -

express or implied, including, but not limited to, noninfringement, merchantability and fitness for a particular purpose"). Thus, if the disclaimer is valid (and it is), Plaintiffs' implied-warranty claims fail as a matter of law.

## A. The disclaimer is not unconscionable.

Plaintiffs erroneously argue that this disclaimer is unconscionable. Am. Compl. ¶¶ 199, 295, 375. To avoid a warranty's terms, a plaintiff must demonstrate both substantive and procedural unconscionability. *Kiefer*, 2017 WL 1380497, at *3; *Stone v. Mid Am. Bank*, No. 2:18-cv-87, 2018 WL 4701843, at *6 (E.D. Wash. Aug. 31, 2018); *Bourne v. Stewart Title Guar.*, No. 09-cv-00270, 2011 WL 635304, at *6 (D.N.H. Feb. 16, 2011). A warranty is procedurally unconscionable only if plaintiffs "had no meaningful choice but to deal with the [defendant] and to accept the contract as offered; and it is substantively unconscionable only if "its terms are 'unreasonably favorable' to one party." *Kiefer*, 2017 WL 1380497, at *3; *accord Stone*, 2018 WL 4701843, at *6; *Bourne*, 2011 WL 635304, at *6.

Plaintiffs do not plausibly show procedural unconscionability because they allege no facts suggesting that they lacked a "meaningful choice" of which Grout to use. *See Far E. Aluminium Works v. Viracon*, 520 F. Supp.3d 1106, 1113 (D. Minn. 2021) (concluding that unconscionability allegations failed where plaintiff did not "allege that it tried to find other vendors to manufacture the [product]"); *In re Takata Airbag Prods. Liab. Litig.*, MDL No. 2599, 2016 WL 11662171, at *11 (S.D. Fla. Sept. 30, 2016) (similar); *Berenblat v. Apple*, Case Nos. 08-cv-4969, 09-cv-1649, 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010) (similar). Nor do they plausibly show substantive unconscionability because they do

- 20 -

CORE/2006164.0076/178500917.1

not allege that the disclaimer is unreasonable to one party. And with good reason: the UCC expressly permits such disclaimers.

Instead, Plaintiffs allege that the disclaimer[10] is "unconscionable due to Defendants' concealment of material facts about Power Grout and the amount of damages incurred by Plaintiffs and the [putative class]." Am. Compl. ¶¶ 199, 295, 375. These points are irrelevant to whether the terms of the warranty are unreasonably favorable to one party. *See Beaty v. Ford Motor*, No. 17-cv-5201, 2018 WL 3320854, at *4 (W.D. Wash. Jan. 16, 2018) (concluding that defendants' alleged "knowledge of the defect . . . alone does not amount to unconscionability"). Moreover, as explained in Section I.D.3., Plaintiffs plead no plausible facts to support their conclusory allegation of fraudulent concealment. Thus, Plaintiffs have not plausibly alleged that the disclaimer is unconscionable.

**B.      If the Magnuson-Moss Warranty Act ("MMWA") preempts the UCC provision permitting the disclaimer, it also preempts the UCC provision creating the implied warranties.**

Plaintiffs will likely argue that the MMWA preempts the portion of the UCC that permits the disclaimer of implied warranties. *See* Am. Compl. ¶¶ 221-22, 226 Indeed, in the narrow circumstances in which the MMWA applies and the parties have a "written warranty" within the meaning of the MMWA, disclaimers of implied warranties "shall be ineffective for purposes of this chapter and State law." 15 U.S.C. § 2308(a) and (c).

---

[10] Plaintiffs allege that the *limitation of remedies* in the warranty is unconscionable for other reasons. Am. Compl. ¶ 45. Plaintiffs' argument on that point fails as well, but it is unrelated to whether the *disclaimer of implied warranties* is unconscionable.

- 21 -

But that does not end the inquiry. If 15 U.S.C. § 2308 applies,[11] the UCC clauses that *permit disclaimers* of implied warranties are not severable from the clauses that *create* such warranties. The invalidity of a "provision or clause" or "application" of the UCC "does not affect **other provisions** or applications of this title **which can be given effect without the invalid provision** or application, and to this end the provisions of this title are severable." Wash. Rev. Code § 62A.1-105 (emphasis added); N.H. Rev. Stat. § 382-A:1-105 (emphasis added). In other words, a statutory provision of the UCC is only severable (1) from **another** provision of the UCC (2) **if** it can be given effect without the invalid provision.

Here, the creation and limitation on implied warranties are not in separate provisions: indeed, they appear in the same sentences. *E.g.*, *Cole v. Sea Ray Boats*, 32 Cal. Rptr. 2d 431, 437 (Cal. Ct. App. 1994) (holding that two parts of the same statutory sentence were not severable, particularly because severing the two provisions would change the outcome of the sentence); *Daigh v. Schaffer*, 73 P.2d 927, 933 (Cal. Ct. App. 1937) (similar). Moreover, the creation of implied warranties is conditioned upon the seller's ability to disclaim those warranties. The statutory scheme created by the UCC therefore cannot be given effect without both portions of these sentences.

What the UCC giveth, it can taketh away. Therefore, if the MMWA preempts what the UCC taketh, it also preempts what the UCC giveth. Thus, the implied warranties created

---

[11] The applicability of 15 U.S.C. § 2308 depends on fact questions that Defendants will address at a later date.

by the UCC are preempted by federal law in the narrow circumstances in which 15 U.S.C. § 2308 applies.[12]

\*\*\*

Counts V, Count VII (as to implied warranties), XIII, and XX fail.

### C.     Plaintiffs' implied-warranty claims fail as to fitness for a particular purpose.

Plaintiffs cannot sustain a claim for breach of the implied warranty of fitness for a particular purpose. That warranty is limited to situations in which "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Minn. Stat. § 336.2-315; NH Rev Stat § 382-A:2-315; Wash. Rev. Code § 62A.2-315. Plaintiffs do not allege that they had any negotiations with Defendants at all, much less that they communicated a "particular purpose" to Defendants. Thus, Counts V, XIII, VII, and XX fail as to the implied warranty of fitness.

### D.     Plaintiffs' MMWA claim fails because it does not meet jurisdictional requirements.

Plaintiffs' MMWA claim fails because it does not meet MMWA's jurisdictional requirements.

The MMWA allows a consumer to bring a damages action in "any court of competent jurisdiction in any State or the District of Columbia," or "an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1). But "[n]o claim shall be cognizable in

---

[12] The undersigned has found no case law addressing whether, when, and/or to what extent the MMWA preempts the implied-warranty provisions of the UCC.

- 23 -

a suit brought [in "an appropriate district court of the United States"] if . . . the action is brought as a class action, and the number of *named plaintiffs* is less than one hundred." *Id.*, subd. (d)(3)(C) (emphasis added). Thus, an MMWA claim brought in federal court should be dismissed if it is brought as a class action by fewer than 100 named plaintiffs. *E.g.*, *Ware v. Best Buy*, 6 F.4th 726, 732 (7th Cir. 2021); *Johnston v. Kashi Sales*, No. 21-cv-441, 2022 WL 4103973, at *10 (S.D. Ill. Sept. 8, 2022); *Jackson v. Anheuser-Busch*, No. 20-cv-23392, 2021 WL 3666312, at *19 (S.D. Fla. Aug. 18, 2021); *Ebin v. Kangadis*, No. 13-cv-2311, 2013 WL 3936193, at *1 (S.D.N.Y. July 26, 2013). Because there are only four named plaintiffs here, the MMWA claim fails.

The Class Action Fairness Act ("CAFA") does not change this requirement. CAFA was enacted thirty years after the MMWA, but its text "does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements" and the two statutes are "capable of co-existing." *Floyd v. Am. Honda Motor*, 966 F.3d 1027, 1035 (9th Cir. 2020); *accord White v. Gen. Motors*, No. 21-cv-410, 2022 WL 3597161, at *7-8 (D. Colo. July 7, 2022); *Monopoli v. Mercedes-Benz*, No. 1:21-cv-1353, 2022 WL 409484, at *6 (N.D. Ga. Feb. 10, 2022); *Stevens v. Ford Motor*, No. 2:18-cv-456, 2020 WL 12573279, at *13 (S.D. Tex. Nov. 2, 2020). Thus, CAFA does not impliedly revoke the requirements of the MMWA.

Although one court in this District concluded otherwise, *see Barclay v. ICON Health & Fitness*, No. 0:19-cv-2970, 2020 WL 6083704 at *7 (D. Minn. Oct. 15, 2020), that decision is neither binding nor persuasive. In *Barclay*, the court held that a federal court is both a "court of competent jurisdiction in any State," **and** a "district court of the

- 24 -

United States;" thus, the 100-named-plaintiff restriction (which only applies to the latter) is a nullity because the named plaintiff could proceed in a federal court on the basis that it is a "court of competent jurisdiction in any State." *Id.* The *Barclay* court acknowledged that "reading the phrase 'any court of competent jurisdiction in any State' to include federal district courts reads out the provision authorizing suit in 'an appropriate district court of the United States'"—but it did nothing to resolve this problem. *Id.*

Instead, it simply concluded that CAFA could provide an alternative basis for jurisdiction, notwithstanding the restriction in the MMWA. The court provided no explanation for its implicit conclusion that CAFA impliedly revoked this ***affirmative restriction***—not merely a limited grant of jurisdiction—in the MMWA. *Barclay*'s construction "ha[s] the effect of overriding a part of the MMWA" despite the absence of a "'clear and manifest' showing of Congress's intent to do so." *Powell v. Subaru of Am.*, 502 F. Supp.3d 856, 885 (D.N.J. 2020) (rejecting the reasoning in *Barclay* on this basis and because it renders a clause of the MMWA superfluous); *see also Lewis v. Mercedes-Benz*, 530 F. Supp.3d 1183, 1206-07 (S.D. Fla. 2021) (similar). This Court should not follow *Barclay*.

For this reason, Count VII fails.

## III.   CLAIMS ON BEHALF OF A NATIONWIDE CLASS

Plaintiffs seek to represent a nationwide class. In doing so, Plaintiffs are effectively asserting claims under 50 states' laws. But Plaintiffs lack standing to assert claims arising

- 25 -

under the laws of states other than New Hampshire and Washington. Thus, pursuant to Rule 12(b)(1), the Court should dismiss Counts I-XI.[13]

### A. Plaintiffs assert claims under 50 states' laws.

A plaintiff seeking to represent a nationwide putative class and who asserts state-law claims is asserting "one of each claim for each state." *Rivers of Life Int. Ministries v. GuideOne Ins.*, No. 1:22-cv-1114, 2022 WL 172619845, at \*4 (W.D, Tenn. Nov. 18, 2022); *Carpenter v. PetSmart*, 441 F. Supp.3d 1028, 1038-39 (S.D. Cal. 2020); *accord Rapp v. Green Tree Servicing*, 302 F.R.D. 505, 509 (D. Minn. 2014) (regarding breach-of-contract claim). Similarly, a plaintiff seeking to represent a nationwide putative class asserting an MMWA claim effectively asserts that claim under 50 different states' laws because "[t]he MMWA grants the holder of a limited warranty a federal cause of action for a breach of warranty **under the applicable state law**." *Sipe v. Workhorse Custom Chassis*, 572 F.3d 525, 530 (8th Cir. 2009) (emphasis added). Thus, Plaintiffs' claims on behalf of a nationwide class effectively assert claims under 50 states' laws.

### B. Plaintiffs lack standing to assert claims under the laws of states other than New Hampshire and Washington.

Plaintiffs lack standing to bring claims under the laws of states other than New Hampshire and Washington. "It is well-settled that a named plaintiff in a class action lawsuit is required to establish Article III standing." *Insulate SB, v. Advanced Finishing Sys.*, No. 13-cv-2664, 2014 WL 943224, at \*10 (D. Minn. Mar. 11, 2014). The named

---

[13] Dismissal of these Counts would effectively only dismiss claims brought under the laws of states other than Washington and New Hampshire since Plaintiffs make those same claims under Washington and New-Hampshire law in Counts XII-XXV.

- 26 -

plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

"Named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Ferrari*, 2015 WL 2242128, at *9 (holding that a Massachusetts resident who purchased a product and relied on alleged misrepresentations in Massachusetts could not bring a claim under Minnesota law on behalf of a nationwide class); *accord Szep v. Gen. Motors*, 491 F. Supp.3d 280, 291 (N.D. Ohio 2020); 1 *McLaughlin on Class Actions* § 4:28 (18th ed.).[14] This is true for both common-law and statutory claims. *Sigler v. Ecolab*, No. 20-cv-1389, 2022 WL 4000390, at *11 (D. Minn. Sept. 1, 2022) (concluding that Minnesota products-liability law could not apply to a plaintiff who resided, used the product, and was injured in Oregon); *Gruenwald v. Toro*, Nos. 19-cv-2294, 19-cv-2345, 2019 WL 6524894, at *3 (D. Minn. Dec. 4, 2019) (concluding that Minnesota's implied-warranty, negligence, and strict-liability law could not apply to plaintiff who purchased the product, used the product, and was injured in North Carolina).

---

[14] *See also Brown v. Auto-Owners Ins.*, No. 1:21-cv-2597, 2022 WL 2442548, at *2 (N.D. Ill. June 1, 2022); *Withrow v. FCA*, No. 19-cv-13214, 2021 WL 2529847, at *9 (E.D. Mich. June 21, 2021); *Knapp v. Zoetis*, No. 3:20-cv-191, 2021 WL 1225970, at *9 (E.D. Va. Mar. 31, 2021); *Carpenter*, 441 F. Supp.3d 1028, 1040 n.4, 1041; *Zaycer v. Sturm Foods*, 896 F. Supp.2d 399, 409 (D. Md. 2012); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-md-2042, 2012 WL 2917365, at *7 (E.D. Mich. July 17, 2012); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).

CORE/2006164.0076/178500917.1

Plaintiffs live, used the Grout, and allegedly were injured in New Hampshire and Washington. They therefore lack standing to bring claims under the laws of other states. This is not an issue of whether the class is manageable or whether putative class members have standing; instead, it is a question of whether the named Plaintiffs have standing. Because they do not, Rule 12(b)(1) mandates dismissal of Plaintiffs' claims on behalf of a nationwide class. *See e.g. Flores v. FCA*, No. 20-cv-10972, 2021 WL 1122216, at \*25 (E.D. Mich. Mar. 24, 2021) (holding that plaintiffs lacked standing to sue on behalf of a nationwide class because plaintiffs "d[id] not plead viable warranty or unjust enrichment claims under the laws of each of the fifty states"); *Rivers of Life*, 2022 WL 172619845, at \*10 (similar); *Insulate SB*, 2014 WL 943224, at \*10-11 (similar); *Brown* 2022 WL 2442548, at \*3 (similar).

Moreover, dismissal at the Rule 12 rather than at the class-certification stage is pragmatic. As one court in this district explained:

> Were a named plaintiff not required to establish Article III standing for each class action [claim] presented, named plaintiffs . . . with no injuries in relation to the laws of certain states referenced in their complaint[] would be allowed to embark on lengthy class discovery with respect to injuries in potentially every state in the Union.

*Insulate SB*, 2014 WL 943224, at \*11 (cleaned up). "Postponing the threshold standing question until after discovery would accomplish nothing" because discovery "cannot fix the fact that Plaintiffs[] have no injury under [non-New Hampshire and non-Washington] law." *Brown* 2022 WL 2442548, at \*3.

Thus, Counts I-XI should be dismissed.

## IV.   STRIKING SOME CLASS ALLEGATIONS

- 28 -

Striking class allegations at the pleading stage is generally disfavored. *Donelson v. Ameriprise Fin. Servs.*, 999 F.3d 1080, 1092 (8th Cir. 2021). But it is appropriate when class certification is "a clear impossibility," *id.*, or "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met," *Legacy Gymnastics v. Arch Ins.*, No. 2:20-cv-04214, 2021 WL 2371503, at *2 (W.D. Mo. June 9, 2021).

None of Plaintiffs' claims are appropriate for class certification.[15] But Defendants are mindful that early motions to strike are disfavored and therefore seek to strike the class allegations as applied to the common-law fraud and negligent misrepresentation because these claims: (1) cannot, consistent with the allegations in the complaint, meet the requirements for class certification, regardless of what might be revealed during discovery; (2) are very similar to class allegations that courts in the Eighth Circuit have stricken at the pleading stage; and (3) have a significant impact on the scope of discovery.

Plaintiffs' class allegations should be stricken as applied to their claims for common-law fraud and negligent misrepresentation because class certification is a clear impossibility. These claims all require a showing that the plaintiff relied upon an alleged misrepresentation/omission. *See* Section I.D.4., *supra*. But reliance is an inherently individualized inquiry, and will inevitably result in "multiple mini-trials within the class

---

[15] Myriad individual issues will predominate, including: whether the Grout has manifested the alleged defect; whether the Grout exhibited a defect due to faulty installation, mixing, storage, etc.; what formulation of Grout was used; what batch of Grout was used; whether the class member complied with the conditions in the express warranty; whether the class member heard or read the alleged misrepresentations/omissions; and what damage (if any) the class member suffered.

- 29 -

action." *Johannessohn v. Polaris Indus.,* 9 F.4th 981, 985 (8th Cir. 2021). Consequently, it

is appropriate to strike the class allegations as applied to these claims:

> Because reliance on the negligent misrepresentation (in addition to the negligent misrepresentation itself) is a critical and necessary element of this claim, individual issues would predominate over the common questions of fact. For this reason, the Court exercises its discretionary authority under Rule 12(f) to strike Plaintiff's putative class allegations as to a claim for negligent misrepresentation.

*Drew v. Lance Camper Mfg. Corp.*, No. 3:21-cv-05066, 2021 WL 5441512, at *7 (W.D.

Mo. Nov. 19, 2021) (citations omitted); *see also Wilcox v. State Farm Fire & Cas.,* No.

14-cv-2798, 2016 WL 6908111, at *4 (D. Minn. Sept. 7, 2016) (striking class allegations

at the pleading stage because binding precedent demonstrated the core issue required

individualized inquiry "such that the predominance requirement cannot be met"), *R. & R.*

*adopted*, No. 14-cv-2798, 2016 WL 7200303 (D. Minn. Nov. 1, 2016).

Striking these class allegations will streamline discovery. Otherwise, the parties will

be forced to take discovery into the decision-making process of thousands of consumers

and their contractors. Such discovery cannot possibly result in class certification but will

simply demonstrate why class certification is inappropriate.

Defendants therefore request that the court strike the class allegations as to

Plaintiffs' claims for common-law fraud and negligent misrepresentation. This would

effectively result in dismissal of Counts IX, XVIII, and XXV (fraud) and Counts VIII, XV,

and XXII (negligence) insofar as they rest on negligent misrepresentation—except as to

the named Plaintiffs.

- 30 -

## CONCLUSION

For these reasons, Defendants respectfully request that this Court dismiss all claims except Count XIV and XXI (Breach of Express Warranties – Washington and New Hampshire classes) and grant their motion to strike certain class allegations.

Dated: December 14, 2022

/s/ Sharon R. Markowitz
Sharon R. Markowitz (#0392043)
Andrew P. Leiendecker (#0399107)
STINSON LLP
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
sharon.markowitz@stinson.com
andrew.leiendecker@stinson.com

*Attorneys for Defendants*

- 31 -