## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **LISA ROUSE, et al.**,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>**H.B. FULLER COMPANY, et al.**,<br><br>　　　Defendants. | Case No. 0:22-cv-02173-WMW-ECW |
| **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE** | |

## Table of Contents

Page

Table of Authorities ........................................................................................................ iii

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  RESTATEMENT OF FACTUAL ALLEGATIONS ............................................ 3

III. LAW AND ARGUMENT ..................................................................................... 5

    A.   Defendants' Standing And Choice Of Law Arguments Are Premature ....... 5

        1.   Defendants have not identified a conflict of law .............................. 6

        2.   The choice of substantive law is premature at the pleading stage ..... 7

            i.   Plaintiffs have alleged sufficient facts to establish the constitutionality of applying Minnesota law .......................... 8

            ii.  Minnesota statutory law can be applied extraterritorially ....... 9

        3.   Class certification is logically antecedent to standing .................... 11

    B.   The Economic-Loss Rule Does Not Bar Plaintiffs' Claims ....................... 13

        1.   The economic-loss rule does not bar claims based on damage to real property ..................................................................................... 13

        2.   Minnesota's economic-loss rule does not bar statutory claims ........ 15

        3.   Minnesota law does not recognize the economic-loss rule as a bar to claims based on intentional or reckless misrepresentations ... 15

    C.   Plaintiffs' Product Liability Claims Are Properly Pleaded ....................... 16

    D.   Plaintiffs' Fraud And Deception Claims Are Properly Pleaded ................ 18

        1.   Plaintiffs' adequately allege fraud-by-omission ............................. 18

        2.   Plaintiffs' fraud-by-representation allegations satisfy the particularity requirements of Rule 9(b) ............................................ 19

        3.   Plaintiffs plausibly allege scienter .................................................. 22

        4.   Plaintiffs plausibly allege reliance ................................................. 24

E.      Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed...............25

F.      Plaintiffs' Implied Warranty Claims Should Not Be Dismissed ...............27

      1.     Plaintiffs allege Defendants' disclaimers are unconscionable.........27

      2.     Plaintiffs allege Defendants breached the implied warranty of fitness for a particular purpose ............................................................31

      3.     The MMWA does not destroy Plaintiffs' state law claims for breach of implied warranty ...............................................................32

           i.     The MMWA and UCC do not conflict ..................................32

           ii.     Defendants' position would impermissibly abrogate state remedies, in violation of the MMWA ..................................33

           iii.    The UCC's disclaimer provision is severable.......................35

G.      The Court Has Jurisdiction To Hear Plaintiffs' MMWA Claim................36

H.      Defendants' Motion To Strike Is Premature ................................................39

IV.     CONCLUSION .........................................................................................................41

**Table of Authorities**

Page(s)

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689
(1997) ............................................................................................................. 11

*Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775 (7th Cir. 2011) ................................ 34

*ARP Wave, LLC v. Salpeter*, No. 18-CV-2046 (PJS/ECW), 2020 WL 881980 (D.
Minn. Feb. 24, 2020) ...................................................................................... 23

*Barclay v. ICON Health & Fitness, Inc.*, No. 19-CV-2970 (ECT/DTS), 2020 WL
6083704 (D. Minn. Oct. 15, 2020) ................................................... 37, 38, 39

*Barker v. FSC Sec. Corp.*, 133 F.R.D. 548 (W.D. Ark. 1989) ......................................... 40

*Barnes v. West, Inc.*, 249 F. Supp. 2d 737 (E.D. Va. 2003) .............................................. 38

*Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462 (S.D. Ohio 2021) ....................... 38

*Bennett v. Berg*, 685 F.2d 1053 (8th Cir. 1982) ............................................................... 21

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007) ............................ 39

*Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880 (D. Minn. 2011) ............................... 25

*Bloor v. Fritz*, 143 Wash. App. 718, 180 P.3d 805 (2008) ............................................... 13

*Bourne v. Stewart Title Guar. Co.*, No. 09-CV-00270-PB, 2011 WL 635304
(D.N.H. Feb. 16, 2011) ................................................................................... 30

*Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d 841 (7th Cir. 2014) .................... 37

*Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C 2005) ..................... 34

*Buttrick v. Arthur Lessard & Sons*, 110 N.H. 36, 260 A.2d 111 (1969) .......................... 16

*Cantonis v. Stryker Corp.*, No. CIV. 09-3509 JRT/JJK, 2011 WL 1084971 (D.
Minn. Mar. 21, 2011) ........................................................................................ 7

*Chapman v. General Motors, LLC*, 531 F. Supp. 3d 1257 (E.D. Mich. 2021) ................ 39

*Chavis v. Fidelity Warranty Services, Inc.*, 415 F. Supp. 2d 620 (D.S.C. 2006) ............. 38

*Chen v. Target Corp.*, No. CV 21-1247 (DWF/DTS), 2022 WL 1597417 (D. Minn. May 19, 2022) ..............................................................................passim

*Chrysler Corp. v. Texas Motor Vehicle Com.*, 755 F.2d 1192 (5th Cir. 1985) ................34

*City Ctr. Realty Partner, LLC v. Macy's Retail Holdings, Inc.*, No. 17-CV-528 (SRN/TNL), 2017 WL 4081896 (D. Minn. Sept. 13, 2017) .........................................24

*City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347 (D. Minn. 2012) ..........................................................................................40

*Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660 (D. Minn. 2021) ......................passim

*Cole v. Sea Ray Boats, Inc.*, 32 Cal. Rptr. 2d 431 (Ct. App. 1994) ..................................35

*Coleman v. Ford Motor Co.*, No. 11-CV-359-JL, 2011 WL 3665514 (D.N.H. Aug. 19, 2011) ............................................................................................................................16

*Dack v. Volkswagen Group of Am.*, 565 F. Supp. 3d 1135 (W.D.Mo. 2021) .............37, 39

*Daigh v. Shaffer*, 23 Cal. App. 2d 449 (Cal. Ct. App. 1937) ...........................................35

*Daigle v. Ford Motor Co.,* 713 F.Supp.2d 822 (D. Minn. 2010) .....................................13

*Dayan v. Swiss-American Prods.*, No. 15CIV6895DLIVMS, 2017 WL 9485702 (E.D.N.Y. Jan. 3, 2017) ...............................................................................................38

*Drager v. Aluminum Indus. Corp.*, 495 N.W.2d 879 (Minn. Ct. App. 1993) ..................16

*Drobnak v. Andersen Corp.*, 561 F.3d 778 (8th Cir. 2009)..............................................20

*Ducharme v. A & S RV Ctr., Inc.*, 321 F. Supp. 2d 843 (E.D. Mich. 2004) ....................32

*Far E. Aluminium Works v. Viracon*, 520 F. Supp.3d 1106 (D. Minn. 2021)....................30

*Ferrari v. Best Buy Co.*, No. CIV. 14-2956 MJD/FLN, 2015 WL 2242128 (D. Minn. May 12, 2015) ...............................................................................................................5

*Floyd v. Am. Honda Motors*, 966 F.3d 1027 (9th Cir. 2020 .......................................38, 39

*Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*, 352 F. Supp. 3d 901 (D. Minn. 2018) ..........................................................................................................26

*Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880 (D. Minn. 2021) .........passim

*Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021)................................................................16

*Grovatt v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116 (8th Cir. 2005) ................................................................................................................. 8

*Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001) ..................... 10

*Hagen v. McAlpine & Co.*, No. 14-1095, 2015 WL 321428 (D. Minn. Jan. 26, 2015) ................................................................................................................. 28

*Hartwig Farms v. Pac. Gamble Robinson Co.*, 28 Wash. App. 539, 625 P.2d 171 (1981) ................................................................................................................. 30

*Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 1515233 (D. Minn. Mar. 30, 2020) ............. 8

*In re Dollar Gen. Corp.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292 (W.D. Mo. Mar. 21, 2019) ................................................................................................. 41

*In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 568 F. Supp. 3d 837 (E.D. Mich. 2021) ................................................................................. 37

*In re Lutheran Bhd. Variable Ins. Prods. Co.*, No. 99-MD-1309(PAM/JGL), 2004 WL 909741 (D. Minn. Apr. 28, 2004) ................................................................. 10

*In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874 (D. Minn. Aug. 8, 2022) ............................................................... 7

*In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*, 364 F. Supp. 3d 976 (D. Minn. 2019) ................................................................................................. 21

*In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753 (D. Minn. 2020) ................................... 11

*In re Stucco Litig.*, 364 F. Supp.3d 539 (E.D.N.C. 2005) ................................................. 17

*In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) ........................................................ 24

*In re Syngenta Litig.*, No. 27-CV-15-3785, 2016 Minn. Dist. LEXIS 6 (4th Jud. Dist. Ct., Minn. Apr. 7, 2016) ............................................................................ 10

*In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015) ............................................................................................................. 8, 9, 12

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224 (D. Minn. Mar. 11, 2014) ............................................................................................. 5, 12

*Insulate SB, Inc., v. Advanced Finishing Sys., Inc.*, 797 F.3d 538 (8th Cir. 2015) ........... 12

*Jim Lupient Co. v. Nissan N. Am., Inc.*, No. 18-CV-3474 (MJD/TNL), 2019 WL
   3465135 (D. Minn. June 28, 2019) ................................................................. 39

*Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981 (8th Cir. 2021) .................................... 11

*Johannessohn v. Polaris Indus.*, No. 16-CV-3348 (PJS/LIB), 2017 WL 2787609
   (D. Minn. June 27, 2017) ............................................................................. 11

*Johannessohn v. Polaris*, 450 F. Supp.3d 931 (D. Minn. 2020) ........................................ 11

*Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130 (D. Minn. 2016) (Tunheim, J.) ......... passim

*Kaiser v. ABN AMRO Mortg. Grp., Inc.*, No. CIV. 13-2611 DSD/FLN, 2014 WL
   1400724 (D. Minn. Apr. 10, 2014) ................................................................. 24

*Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155 (8th Cir. 1975) .......................... 18

*Keegan v. Am. Honda Motor Co.*, 888 F. Supp. 2d 929 (C.D. Cal. 2012) ........................ 38

*Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, A.2d 477 (2005) .............. 13, 17

*Kelton v. Hollis Ranch, LLC*, 155 N.H. 666, 927 A.2d 1243 (2007) ................................ 24

*Kessler v. Samsung Elec. Am. Inc.*, No. 17-C-0082, 2018 WL 7502913 (E.D. Wis.
   Feb. 16, 2018) ............................................................................................ 38

*Kiefer v. Simonton Bldg. Prod., LLC*, No. CV 16-3540 (RHK/SER), 2017 WL
   1380497 (D. Minn. Apr. 17, 2017) ................................................................. 30

*Knudsen v. Sprint Communs. Co.*, No. C13-04476 CRB, 2016 WL 4548924 (N.D.
   Cal. Sept. 1, 2016) ....................................................................................... 24

*Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281 (D. Minn. 2021) ......................... 14, 20

*Kuns v. Ford Motor Co.*, 543 Fed. Appx. 572 (6th Cir. 2013) .......................................... 36

*Laughlin v. Target Corp.*, No. CIV. 12-489 JNE/JSM, 2012 WL 3065551 (D.
   Minn. July 27, 2012) ...................................................................................... 6

*LeFlar v. HP, Inc.*, No. 4:22-CV-00690-BRW, 2022 WL 5028362 (E.D. Ark. Oct.
   4, 2022) .................................................................................................. 37, 39

*LeFlar v. Target Corp.*, No. 22-3468, 2023 WL 127501 (8th Cir. Jan. 9, 2023) ............ 37

*Legacy Gymnastics, LLC v. Arch Ins. Co.*, No. 2:20-CV-04214-NKL, 2021 WL
   2371503 (W.D. Mo. June 9, 2021) ............................................................. 40, 41

*Lewis v. Casey*, 518 U.S. 343 (1996) ................................................................ 5

*Libke v. Craig*, 35 Wash. 2d 870, 216 P.2d 189 (1950) .................................... 31

*Maher v. Sempris, LLC*, No. CIV. 13-2202 ADM/JJK, 2014 WL 4749186 (D. Minn. Sept. 24, 2014) ....................................................................... 7

*McCalley v. Samsung Elecs. Am., Inc.,* No. CIV.A. 07-2141 (JAG), 2008 WL 878402 (D.N.J. Mar. 31, 2008) ...................................................... 38

*McQueen v. Yamaha Motor Corp.*, U.S.A., 488 F. Supp. 3d 848 (D. Minn. 2020) ......... 29

*Mitchell v. Franklin Bank, S.S.B.*, No. 05-1320 (PAM/REL), 2006 WL 1132408 (D. Minn. Mar. 15, 2006) ......................................................... 40

*Mono Adver. v. Vera Bradley Designs*, 285 F. Supp. 3d 1087 (D. Minn. 2018) ............. 26

*Moodie v. Remington Arms Co., LLC.*, No. C13-0172-JCC, 2013 WL 12191352 (W.D. Wash. Aug. 2, 2013) ........................................................... 17

*Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531 (D. Minn. 2007) .................... 8

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999) ............................................................................................ 11

*Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001 (D. Minn. 2017) ........... 19, 25, 26

*Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920 (8th Cir. 2007) .............................. 6

*Rein v. Thrifty Payless, Inc.*, No. 2:19-CV-00522-BJR, 2021 WL 1401569 (W.D. Wash. Apr. 14, 2021) ......................................................... 17

*Ridings v. Stryker Sales Corp.*, No. CIV. 10-2590 MJD/FLN, 2010 WL 4963064 (D. Minn. Dec. 1, 2010) ............................................................. 7

*Rottinghaus v. Howell*, 35 Wash. App. 99, 104, 666 P.2d 899 (1983) ........................... 30

*Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-CV-2373 (MJD/ECW), 2021 WL 856919 (D. Minn. Mar. 8, 2021) .............................................. 25

*Shoner v. Carrier Corp.*, 30 F.4th 1144 (9th Cir. 2022) .................................................. 39

*Snierson v. Scruton*, 145 N.H. 73, 761 A.2d 1046 (2000) .............................................. 24

*Solvay Pharm., Inc. v. Glob. Pharm.*, 298 F. Supp. 2d 880 (D. Minn. 2004) .................. 22

*State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490 (Minn. 1996) ........................ 9

*Stiley v. Block*, 130 Wash. 2d 486, 925 P.2d 194 (1996) .................................... 24

*Stone v. Mid Am. Bank & Tr. Co.*, No. 2:18-CV-87-RMP, 2018 WL 4701843
  (E.D. Wash. Aug. 31, 2018) ........................................................................ 30

*Suber v. Chrysler Corp.*, 104 F.3d 578 (3d Cir. 1997)........................................ 37

*Taylor v. Walter Kidde Portable Equip., Inc.*, No. 1:21CV839, 2022 WL 4450271
  (M.D.N.C. Sept. 23, 2022)........................................................................... 38

*Trail v. 3M Co.*, No. CV 20-1153 (JRT/KMM), 2020 WL 4193868 (D. Minn. July
  21, 2020) ...................................................................................................... 16

*Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917 (8th Cir. 2004)......................... 16

*Valspar Refinish v. Gaylord's*, 764 N.W.2d 359 (Minn. 2009) .......................... 24

*Van Zeeland v. McNally*, 532 F. Supp. 3d 557 (N.D. Ill. 2021)......................... 38

*Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1 (D.
  Minn. 1975) .................................................................................................. 39

*Walsh v. Ford Motor Co.*, 627 F. Supp. 1519 (D.D.C. 1986) ............................ 32

*Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986) ............................... 34

*Wilcox v. State Farm Fire & Cas.,* No. 14-cv-2798, 2016 WL 6908111 (D. Minn.
  Sept. 7, 2016) ............................................................................................... 41

*Wilson v. Ark Dep't of Human Servs.*, 850 F.3d 368 (8th Cir. 2017)................ 23

**STATUTES**

15 U.S.C. § 2308(a) ............................................................................................. 33

15 U.S.C. § 2310(d) ............................................................................................. 36

15 U.S.C. § 2310(d)(1) ........................................................................................ 36

15 U.S.C. § 2310(d)(3)(C) ................................................................................... 36

15 U.S.C. § 2311(b)(1) ........................................................................................ 34

Minn. Stat. § 325D.13 ........................................................................................... 9

Minn. Stat. § 325D.15 ......................................................................................... 10

Minn. Stat. § 325F.67 ................................................................................... 9

Minn. Stat. § 325F.69 ................................................................................... 9

Minn. Stat. § 336.2-315 ............................................................................... 31

Minn. Stat. § 604.101 ............................................................................. 13, 15

Minn. Stat. § 604.101-1(e) .......................................................................... 15

Minn. Stat. § 8.31 ................................................................................... 9, 10

NH Rev Stat § 382-A:2-315 ........................................................................ 31

U.C.C. § 1-105 ............................................................................................ 35

Wash. Rev. Code § 62A.1-105 .................................................................... 35

Wash. Rev. Code § 62A.2315 ..................................................................... 31

Wash. Rev. Code § 7.72.030 ...................................................................... 16

## RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ................................................................................ 5

Fed. R. Civ. P. 12(f) ............................................................................... 5, 39

Fed. R. Civ. P. 23 ....................................................................................... 40

Fed. R. Civ. P. 9(b) ............................................................................. passim

## OTHER AUTHORITIES

59 A.L.R. Fed. 461 (1982) .......................................................................... 32

## I.      PRELIMINARY STATEMENT

In response to the First Amended Complaint ("FAC") filed by plaintiffs Lisa Rouse, Juston Rouse, Jenna Drouin, and Nick Drouin (collectively, "Plaintiffs"), defendants H.B. Fuller Company ("HBF") and H.B. Fuller Construction Products, Inc. ("HBF-CP" and, together with HBF, "Defendants") have moved to dismiss twenty-three of Plaintiffs' twenty-five claims, and to strike certain of Plaintiffs' class allegations.  In reaching for these extraordinary remedies, Defendants ignore countless allegations found within the FAC, improperly dispute other allegations that undermine Defendants' tortured pleas for relief, almost completely disregard the pleading standards, attempt to accelerate arguments that are not appropriately addressed in a motion to dismiss, and generally misstate the law throughout their brief.

For example, Defendants repeatedly challenge Plaintiffs' "standing" to assert claims under Minnesota law—an imprecise effort to prompt a choice-of-law analysis.  Yet, Defendants (1) do not identify any conflict between Minnesota law and the law of any other state; (2) fail to explain why the Court should engage in such fact intensive analysis before discovery when Plaintiffs have alleged facts that would render the application of Minnesota law constitutional, and when no bar on such application exists; and (3) fail to grapple with the overwhelming body of law establishing that the standing of an out-of-state class representative to bring claims under the law of a particular state is more appropriately addressed at class certification.

Defendants also attempt to dispose of myriad claims pursuant to the economic-loss rule, even though that doctrine has no application in this case in light of Plaintiffs' well-pleaded allegations of damage to real property, and even though Minnesota law precludes the doctrine's application when claims are predicated on reckless or intentional conduct (as the FAC establishes Plaintiffs' claims are in this case).  Likewise, Defendants invoke Rule 9(b) in broad fashion, but utterly fail to address Plaintiffs' fraud-by-omission theory, ignore the precise allegations contained in Plaintiffs' complaint that more than satisfy the burden to plead with particularity, and offer legally unsound explanations for why the Court should ignore Plaintiffs' allegations of scienter and reliance.

Defendants attempt to dispose of Plaintiffs' product liability claims, but do not even address Plaintiffs' failure to warn theory, and attempt to undermine the design defect theory by manufacturing an obligation to allege physical harm to humans that simply does not exist.  Defendants attempt to dispose of Plaintiffs' unjust enrichment claims, but wholly ignore Plaintiffs' specific allegations that the contract Defendants contend precludes such claims fails to offer adequate remedies.  Defendants attempt to dispose of Plaintiffs' implied warranty claims, but disregard Plaintiffs' allegations that Defendants' disclaimers were unconscionable, and engage in extreme intellectual gymnastics to argue that the Magnuson-Moss Warranty Act ("MMWA") precludes such claims when it clearly does not.  And Defendants attempt to dispose of Plaintiffs' MMWA claim by arguing that the Court lacks jurisdiction, even though courts all around the country—including the District of Minnesota and every other district court in the Eighth Circuit to address this question— has rejected Defendants' precise argument.

Finally, Defendants predicate their motion to strike certain class allegations on the incorrect belief that it is ***impossible*** to certify classes for fraud and misrepresentation claims. This assertion flies in the face of countless examples of such certifications and well-established contrary authority, and Defendants' efforts to prompt the Court to address class allegations at this stage is premature.

For these reasons, and as set forth in more detail below, Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety.

## II.    RESTATEMENT OF FACTUAL ALLEGATIONS

Defendants' motion to dismiss portrays Plaintiffs' FAC as a recitation of conclusory and speculative accusations, unsupported by any allegations of fact. Defendants achieve this misleading end by misstating, selectively quoting, and at times completely ignoring the ***actual*** contents of Plaintiffs' pleading. Indeed, despite Defendants' assertions to the contrary, the 434 paragraphs in Plaintiffs' FAC (ECF No. 24) comprehensively allege sufficient facts to establish jurisdiction, standing, and the elements for each of Plaintiffs' twenty-five claims,[1] including, *inter alia*:

- That Defendants are Minnesota companies with "World Headquarters" in Minnesota, and Defendants' "principal executive office, marketing and advertising department, and central research facilities are all located at the HBF world headquarters in Vadnais Heights, Minnesota." (FAC ¶¶ 10-26).

- That Defendants make specific representations about the quality of TEC Power Grout ("Power Grout"), including that: (1) it is an "advanced performance grout;" (2) it has "a unique formulation that is stain proof and

---

[1]    Plaintiffs' FAC sets out the alleged facts in great detail, and Plaintiffs hereby incorporate the FAC by reference. For the sake of efficiency, however, Plaintiffs have summarized the allegations in the FAC herein.

provides strong, color consistent joints free of efflorescence, that are resistant to shrinking and cracking;" (3) it "***never needs sealing***;" (4) it is "fast setting;" (5) it is "open to traffic in 4 hours;" (6) it is "crack and shrink resistant;" and (7) it is excellent "in environments with high traffic and wet conditions," among other alleged "key features and benefits." (*Id.* ¶¶ 34-35).

- That Defendants charge a premium for Power Grout because of its purported features. (*Id.* ¶ 39).

- That—notwithstanding these express representations by Defendants and the premium charged for the product—***Power Grout does not work***. Power Grout never cures sufficiently to be used as a grout; it cracks and crumbles; it shrinks away from the tiles it is supposed to be securing, and falls out of the joints; and when wet, Power Grout effectively disintegrates into a sandy mess. (*Id.* ¶¶ 47-49).

- That Defendants are fully aware of the consistent failures of Power Grout and the falsity of their representations. (*Id.* ¶¶ 53-69). Defendants, in fact, respond to claims from customers about Power Grout's failures by sending something that Defendants do not actually sell, but which they call the "TEC Acrylic Grout Hardener" (the "Hardener"). (*Id.* ¶¶ 53-56).

- That, like the Power Grout, the Hardener does not work. (*Id.* ¶¶ 53-64).

- That Defendants know of and fail to disclose the defects with ***both*** the Power Grout and the Hardener. (*Id.* ¶¶ 67-68).

- That consumers from all over the country—including the Rouses and the Drouins whose damages and specific experiences with the Power Grout and Hardener are detailed in the FAC (*id.* ¶¶ 70-109)—relied on Defendants' representations and have now incurred, and continue to incur, thousands of dollars in damages comprised of, among other things, the cost of the Power Grout itself; physical damage to their real property; the cost of repairs made necessary by the failure of Power Grout and, when applied, the Hardener (an expensive and complex process given the nature of the integrated systems in which the grout is installed); and the resulting depreciation in property value caused by the presence of Power Grout and/or the Hardener on the premises. (*Id.* ¶ 69).

4

Notwithstanding (and, at times, in utter disregard for) these allegations, Defendants filed a motion to dismiss twenty-three of Plaintiffs' claims and to strike certain of Plaintiffs' class allegations. For the reasons set forth below, Defendants' motion should be denied.

## III.   LAW AND ARGUMENT[2]

### A.   Defendants' Standing And Choice Of Law Arguments Are Premature.

Throughout their motion, Defendants make a number of arguments targeting Plaintiffs' ability to assert causes of action under Minnesota law. Although Defendants contend they are addressing Plaintiffs' "standing," Defendants do not—because they cannot—contend that Plaintiffs in fact lack Article III standing in this case.[3] Instead, Defendants' arguments are simply incomplete attempts to prompt a choice-of-law analysis that should not take place at this stage. Each of these arguments fails.

To begin with, Defendants do not identify any conflict between Minnesota and any other state's law, which is reason enough for the Court to decline Defendants' invitation to

---

[2]   Much like the allegations in the FAC, Defendants also ignore the legal standards applicable to their motion (of which the Court is no doubt aware). *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(f). Defendants likely ignore these standards because they cannot meet them.

[3]   As Defendants acknowledge in their motion, to establish Article III standing a plaintiff "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Plaintiffs have **clearly** established as much in this case, as the FAC details their own experiences with Defendants and Defendants' products, and the resulting injuries from the same. (*See* FAC ¶¶ 70-109). Defendants' reliance on *Ferrari v. Best Buy Co.*, No. CIV. 14-2956 MJD/FLN, 2015 WL 2242128, at *9 (D. Minn. May 12, 2015) is misplaced, as *Ferrari* is predicated on *Insulate* and the heightened standing requirement set forth in anti-trust cases. (*See infra*, Section III(A)(3)).

engage in the choice-of-law analysis. Further, the Court has no obligation to determine the choice of substantive law before discovery, particularly where—as here—Plaintiffs have alleged sufficient facts to establish the constitutionality of applying Minnesota law, and where there is no express bar on the extraterritorial application of the same. Finally, questions of a class representative's standing to assert claims on behalf of class members in other states is logically antecedent to class certification, so adopting Defendants' arguments at this early stage would be entirely premature.

### 1.   *Defendants have not identified a conflict of law.*

"A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Id.* Where there is no conflict, the law of the forum is applied and the court need not engage in any choice-of-law analysis. *See Laughlin v. Target Corp.*, No. CIV. 12-489 JNE/JSM, 2012 WL 3065551, at *6 (D. Minn. July 27, 2012) (because there was no conflict of law or assertion that choice of one state's law would govern, the "Court decline[d] to engage in a choice-of-law analysis at [that] time.").

Defendants do not identify any conflicts between Minnesota law and the law of any other state or jurisdiction. In fact, Defendants' motion consistently treats the substantive laws of Minnesota, New Hampshire, and Washington as interchangeable. The Court may, therefore, defer any consideration of the appropriate choice of law at this time. *See Laughlin*, 2012 WL 3065551 at *6.

6

2.      *The choice of substantive law is premature at the pleading stage.*

Even if Defendants had properly identified a conflict of law (they did not), courts in this district "have declined to engage in a choice of law analysis absent discovery." *See, e.g.*, *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at *5 (D. Minn. Aug. 8, 2022) (deferring decision on applicable law "until the parties create the factual record that the Court will need to perform the necessary choice-of-law analysis."); *Maher v. Sempris, LLC*, No. CIV. 13-2202 ADM/JJK, 2014 WL 4749186, at *6 (D. Minn. Sept. 24, 2014) (declining to dismiss Minnesota statutory claims because choice-of-law issues "will be resolved with preliminary discovery and through the class certification process."); *Cantonis v. Stryker Corp.*, No. CIV. 09-3509 JRT/JJK, 2011 WL 1084971, at *3 (D. Minn. Mar. 21, 2011) (declining to address choice of law analysis at the motion to dismiss stage); *Ridings v. Stryker Sales Corp.*, No. CIV. 10-2590 MJD/FLN, 2010 WL 4963064, at *2 (D. Minn. Dec. 1, 2010) (declining to address choice of law analysis at the motion to dismiss stage).

In May 2022, the District of Minnesota rejected the precise arguments Defendants make here in *Chen v. Target Corp.*, No. CV 21-1247 (DWF/DTS), 2022 WL 1597417, at *7 (D. Minn. May 19, 2022) (Frank, J.).[4] When faced with a motion to dismiss "nationwide claims for unjust enrichment, negligent misrepresentation, fraud by omission, breach of contract, and breach of implied contract and negligence for lack of standing," the court denied the motion because it found that "discovery may show that application of Minnesota

---

[4]      Defendants do not even acknowledge *Chen* despite its hand-in-glove application to this case.

law is constitutionally appropriate" through choice-of-law analysis. *Id.* Because Plaintiffs have alleged sufficient facts to establish Minnesota law would be constitutional, and because there is no bar to the extraterritorial application of Minnesota consumer protection statutes, this Court should do the same.

> ### i.  *Plaintiffs have alleged sufficient facts to establish the constitutionality of applying Minnesota law.*

"For a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Grovatt v. St. Jude Med. Inc. (In re St. Jude Med., Inc.)*, 425 F.3d 1116, 1120 (8th Cir. 2005). Courts in this district routinely apply Minnesota law to out-of-state class members' claims against Minnesota companies under facts similar to this action. *See Hudock v. LG Elecs. U.S.A., Inc.*, 2020 WL 1515233, at *8 (D. Minn. Mar. 30, 2020), rev'd on other grounds, 12 F.4th 773 (8th Cir. 2021) (Minnesota law applied where "[v]irtually all the corporate acts implicated by each claim occurred in Minnesota."); *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015) (applying Minnesota law to out-of-state class member's claims where defendant was "headquartered in Minnesota; its computer servers [were] located in Minnesota; the decisions regarding what steps to take or not take to thwart malware were made in large part in Minnesota"); *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 537 (D. Minn. 2007) (Minnesota law applied where defendant was incorporated and headquartered in Minnesota and fraudulent conduct emanated from Minnesota).

Plaintiffs allege that: (1) defendant HBF is a Minnesota corporation with its "World Headquarters" in Minnesota; (2) defendant HBF-CP, a wholly owned subsidiary of HBF, is a Minnesota corporation whose name was changed so that consumers would directly associate the subsidiary with the Minnesota-based parent; (3) HBF's principal executive office, marketing and advertising department, and central research facilities are all located at the HBF world headquarters in Vadnais Heights, Minnesota; (4) the TEC brand is part of HBF's portfolio; and (5) Power Grout is marketed on HBF's website.  (FAC ¶¶ 10- 26).

If Plaintiffs' allegations are borne out in discovery, applying Minnesota law to all claims will be constitutional.  *In re Target Corp.*, 309 F.R.D. at 486.  Accordingly, dismissing Plaintiffs' Minnesota claims on choice-of-law grounds before the parties conduct discovery would be premature.  *Chen,* 2022 WL 1597417, at *16 n.17 (discovery is necessary before any choice of law analysis where plaintiffs alleged defendant "is incorporated, headquartered, and operates its principal place of business" in Minnesota).

### ii.    *Minnesota statutory law can be applied extraterritorially.*

Defendants wrongly contend that "Minnesota's consumer protection statutes do not apply extraterritorially."  (ECF No. 31 at 11).  Statutory standing to bring claims under Minnesota's consumer protection statutes is provided by the Private Attorney General statute, Minn. Stat. § 8.31.  "[I]t is Minn. Stat. § 8.31, subd. 3a, that authorizes private actions for violation of [Minnesota Statutes §§ 325F.67, 325F.69, subdivision 1, and 325D.13]." *Id.* "The only statute not listed in subdivision 1 . . . is the Uniform Deceptive Trade Practices statute."  *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 496 (Minn. 1996).  "This statute, however, contains its own legislative grant of standing and,

thus, requires no reference to Minn. Stat. § 8.31." *Id.*  A party suing under Minn. Stat. § 325D.15, thus, has "has two options." *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016) (Tunheim, J.).  A party may sue under the statute directly or they "may also seek relief under the Private AG Statute." *Id.*  (citing § 8.31, subdivs. 1, 3a.).

"In describing who may bring an action, subdivision 3a does so in the broadest terms, stating that '*any person* injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages.'" *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 7 (Minn. 2001) (on certified question from United States District Court) (emphasis in original).  Thus, "there is precedent that Minnesota's consumer protection laws have extraterritorial application." *In re Syngenta Litig.*, No. 27-CV-15-3785, 2016 Minn. Dist. LEXIS 6 (4th Jud. Dist. Ct., Minn. Apr. 7, 2016).  Indeed, Minnesota courts and the Minnesota Attorney General have applied standing under the statutes broadly "to apply both to the conduct of foreign corporations that injures Minnesota residents and to the conduct of Minnesota companies that injures non-residents."  *See In re Lutheran Bhd. Variable Ins. Prods. Co.*, No. 99-MD-1309(PAM/JGL), 2004 WL 909741, at *6 (D. Minn. Apr. 28, 2004) (citing amicus brief filed by State of Minnesota Attorney General);[5] *In re Syngenta*, 2016 Minn. Dist. LEXIS,

---

[5]    The amicus brief is a matter of public record of which the Court may take judicial notice.  Due to the Court's archiving practices, Plaintiffs do not yet have a certified copy, but will provide the Court with a copy when they do so.  The effective thesis statement of the brief is that "Minnesota state courts … have routinely applied state consumer protection laws against entities directing conduct from Minnesota, *regardless of the residency of the victim*." *In re Lutheran*, No. 99-MD-1309 (PAM/JGL), Doc. 327 (filed 5/9/2003, entered 5/15/2003) (emphasis added).

10

at *58 ("the [MCFA] is intended to apply both to the conduct of foreign corporations that injures Minnesota residents **and to the conduct of Minnesota companies that injures non-residents**.") (emphasis added).[6]

As there is no blanket prohibition against the extraterritorial application of Minnesota statutory claims, there is no reason to deny Plaintiffs the opportunity to establish the constitutionality of the same through discovery.

### 3.    *Class certification is logically antecedent to standing.*

In addition to the fact that discovery should be afforded before engaging in the choice-of-law analysis, generally, "questions of standing in a class-action case may be postponed until after the class has been certified when class certification is 'logically antecedent' to standing." *Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 886 (D. Minn. 2021) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715 (1999)); *see In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 776 (D. Minn. 2020) (citing *Amchem*, 521 U.S. at 612, and *Ortiz*, 527 U.S. at 831 ("[I]n the class

---

[6]     Defendants' reliance on *Johannessohn v. Polaris*, 450 F. Supp.3d 931, 962 (D. Minn. 2020) for the proposition that Minnesota statutes should not be applied extraterritorially is misguided.  The cited decision was issued at the class certification and summary judgment stage; none of the Minnesota claims were disposed of at the pleading stage even though there were no Minnesota-based plaintiffs. *Johannessohn v. Polaris Indus.,* No. 16-CV-3348 (PJS/LIB), 2017 WL 2787609, at *6 (D. Minn. June 27, 2017).  Further, in affirming the district court's conclusion, the Eighth Circuit did not adopt the district court's assessment of the extraterritorial application of Minnesota law.  *See Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984 (8th Cir. 2021).

action context, the Court may defer the standing question until class certification is 'logically antecedent' to standing.'")).

Indeed, courts in this district have found that the question of standing under state-law claims for states in which no named plaintiff reside are appropriately addressed ***after*** class certification.  *See Chen*, 2022 WL 1597417 at *4 (finding "that class certification logically precedes an Article III standing analysis" and "defer[ring] consideration until after the class-certification stage."); *In re Target*, 66 F. Supp. 3d at 1160 (denying motion to dismiss nationwide claims for lack of standing because "Article III standing analysis is best left to after the class-certification stage").

Defendants' reliance on *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 2014 WL 943224 (D. Minn. Mar. 11, 2014) for the contrary is unavailing.  "*Insulate* and the other cases holding that standing should be determined before class certification are antitrust cases, in which 'the constitutional and prudential requirements of standing take on particular significance.'"  *In re Target*, 66 F. Supp. 3d at 1160; *see also Insulate SB, Inc.*, *v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015) (antitrust standing is more rigorous than Article III standing).  Unlike *Insulate*, this case does not implicate the heightened standing analysis of antitrust claims.[7]  Defendants' standing arguments are, thus, more appropriately dealt with after class certification.

---

[7]      Further, the court in *Insulate* found that plaintiff had "not identified any specific state in which wrongful conduct occurred that may be causally connected to Insulate's injury," thus it could not bring claims under other state laws.  *Insulate,* 2014 WL 943224 at *34.  By contrast, Plaintiffs have alleged that Defendants' wrongful conduct emanated from Minnesota.  (FAC ¶¶ 14-21).

### B.   The Economic-Loss Rule Does Not Bar Plaintiffs' Claims.

In support of Defendants' sweeping argument that the economic-loss rule bars the majority of Plaintiffs' claims, they offer almost no analysis whatsoever, rely only upon broad statements of general legal tenets, and imprecisely characterize virtually every non-contract claim as a tort claim.  Neither the law nor the allegations in the FAC support the application of the economic-loss doctrine as a bar to any of Plaintiffs' claims, because Plaintiffs seek to recover, among other things, damages caused to real property.  Further, Minnesota's economic-loss rule does not prohibit statutory claims, and is also inapplicable to claims based on intentional or reckless misrepresentations—as Plaintiffs' claims are.

### 1.   *The economic-loss rule does not bar claims based on damage to real property.*

The economic-loss rule does not bar tort claims where a plaintiff seeks to recover for damage to property.  *See Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 829 (D. Minn. 2010)  ("[A] buyer may not bring a product defect tort claim for compensatory damages unless the defect 'caused harm to the buyer's tangible personal property other than the goods or the buyer's real property.'") (quoting Minn. Stat. § 604.101, subdiv. 3)); *see also Bloor v. Fritz*, 143 Wash. App. 718, 738, 180 P.3d 805, 817 (2008) ("economic loss rule does not bar recovery for personal injury or damage to property other than the defective property"); *Kelleher v. Marvin Lumber & Cedar Co.*, 152 N.H. 813, 835, 891 A.2d 477, 495 (2005) (same).

When a plaintiff alleges damages to property other than the defective product, courts in this district have declined to apply the economic-loss rule as grounds for dismissing tort

claims.  *See Kruger v. Lely N. Am., Inc.*, 518 F. Supp. 3d 1281, 1292 (D. Minn. 2021) (because plaintiff sought to recover for damage to property other than defective product, the Court could not limit damages recoverable for tort claims on a motion to dismiss); *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 672 (D. Minn. 2021) (rejecting application of economic-loss rule where plaintiff alleged defective product also "caused water to leak from her dishwasher onto the floor and damage the tile grout.").

Plaintiffs specifically allege that Defendants' conduct left "joint tiles exposed and entire homes and buildings susceptible to water penetration and damage," and that "[c]onsumers from all around the country have suffered … physical damage to their real property and diminution of value of the same."  (FAC ¶¶ 50, 52;[8] *see also id.* ¶¶ 97, 109 (alleging "the defective grout has damaged the [Plaintiffs'] real property and adversely impacted the value of the same.")).  Because the Court must accept "the factual allegations in the complaint as true and draw[] all reasonable inferences in [P]laintiff's favor," *Cleveland*, 550 F. Supp. 3d at 668, the economic-loss rule simply cannot be applied here.

Even without the express claims of damage to real property, Plaintiffs provide the Court with sufficient allegations to reasonably infer that such damages exist.  Specifically, Plaintiffs allege that grout is part of an integrated tile system and it cannot be removed as simply as replacing a faulty part.  (FAC ¶¶ 29, 47-49).  Plaintiffs also allege that the removal of grout often damages other property in the tile installation, such that the

---

[8]    Although Defendants repeatedly contend that these allegations were only added in response to Defendants' first motion to dismiss, they were in fact present in Plaintiffs' initial complaint.  (ECF No. 31 at 7).

consequences of grout failure are often "significantly more expensive than the cost of grout itself." (*Id.* ¶ 31, 45). Plaintiffs clearly seek compensation for damages Defendants' conduct caused to Plaintiffs' real property. The economic-loss rule, therefore, simply does not apply.

### 2. *Minnesota's economic-loss rule does not bar statutory claims.*

Even if the economic-loss rule were applicable (it is not), it would not bar Plaintiffs' Minnesota statutory claims. Under Minnesota law, the economic-loss rule "applies only to common-law tort or misrepresentation claims." *Gisairo,* 516 F. Supp. 3d at 885. To the extent the economic-loss rule applies at all, it only bars "product defect tort claims," which Minnesota expressly defines to exclude ***statutory claims***. Minn. Stat. § 604.101-1(e). Accordingly, the economic-loss rule cannot apply to Counts I-IV.

### 3. *Minnesota law does not recognize the economic-loss rule as a bar to claims based on intentional or reckless misrepresentations.*

Under Minnesota law, a buyer is also prohibited from bringing "a common law misrepresentation claim against a seller relating to the goods sold ... ***unless the misrepresentation was made intentionally or recklessly***." Minn. Stat. § 604.101, subdiv. 4 (emphasis added). In this case, Plaintiffs allege Defendants recklessly misrepresented the qualities of the Power Grout it sold, and informed consumers like Plaintiffs that Power Grout had qualities Defendants knew it did not have. (FAC ¶¶ 46-52). Defendants would therefore be precluded from invoking the economic-loss rule as a bar to Counts I-IV and VIII-XI even if it applied (which, again, it does not).

15

### C.   Plaintiffs' Product Liability Claims Are Properly Pleaded.

The FAC articulates two distinct theories for product liability claims: (1) a design defect, and (2) a failure to warn. To state a claim for products liability for a design defect, a plaintiff must allege: "(1) the product was in a defective condition unreasonably dangerous to the user, (2) the defect existed when it left the manufacturer's control, and (3) the defect was the proximate cause of the injury sustained." *Drager v. Aluminum Indus. Corp.*, 495 N.W.2d 879, 882 (Minn. Ct. App. 1993); *Buttrick v. Arthur Lessard & Sons*, 110 N.H. 36, 36, 260 A.2d 111, 111 (1969) ("One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property"); Wash. Rev. Code § 7.72.030 ("A product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided.").

To assert a product liability claim based on a failure to warn, a plaintiff must allege "(1) the defendants had reason to know of the dangers of using the product; (2) 'the warnings fell short of those reasonably required,' breaching the duty of care; and (3) the lack of an adequate warning caused the plaintiff's injuries." *Trail v. 3M Co.*, No. CV 20-1153 (JRT/KMM), 2020 WL 4193868, at *4 (D. Minn. July 21, 2020), aff'd sub nom. *Graves v. 3M Co.*, 17 F.4th 764 (8th Cir. 2021) (c*iting Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004) ("In Minnesota, failure-to-warn claims are distinct from design-defect claims."); *see also Coleman v. Ford Motor Co.*, No. 11-CV-359-JL, 2011

16

WL 3665514, at *2 (D.N.H. Aug. 19, 2011) ("under New Hampshire law, 'design defect and failure to warn claims are separate ways of establishing strict liability in a manufacture for a defect in a product.'") (citation omitted); *Rein v. Thrifty Payless, Inc.*, No. 2:19-CV-00522-BJR, 2021 WL 1401569, at *4 (W.D. Wash. Apr. 14, 2021), reconsideration denied, No. 2:19-CV-00522-BJR, 2021 WL 2769653 (W.D. Wash. May 3, 2021) (discussing distinction between failure to warn and design defect claims).

Plaintiffs' complaint includes particularized factual allegations satisfying each of the elements of both theories. (*See* Section II, *supra*). Defendants' motion to dismiss, however, does **not even mention the failure-to-warn theory**. For this reason alone, the Court should deny Defendants' motion to dismiss Plaintiffs' product liability claims.

Further, Defendants' argument that Plaintiffs' design defect theory fails because Power Grout is not unreasonably dangerous is unavailing. Despite Defendants' assertion that a plaintiff must "allege that the products harm humans" (ECF No. 31 at 8),[9] no such obligation exists. *See Cleveland*, 550 F. Supp. 3d at 673 (product liability claim plausibly alleged without personal injury); *see also Kelleher*, 891 A.2d at 492–93 (allegations that window preservative "caused substantial damage to property other than [] windows and doors, including…other structural and nonstructural components and structures into which [the] products were incorporated" satisfied the unreasonably dangerous element); *Moodie*

---

[9]     Defendants based this assertion on *In re Stucco Litig.*, 364 F. Supp.3d 539, 546 (E.D.N.C. 2005). That case was decided at the summary judgment phase, and it applied ***Illinois*** law, which has a peculiar requirement that tort claims arising out of purchased goods must not only show damage to person or property, but also a "sudden, dangerous, or calamitous event." *Id.* No such requirement exists under Minnesota, Washington, or New Hampshire law.

*v. Remington Arms Co., LLC.*, No. C13-0172-JCC, 2013 WL 12191352, at *6–7 (W.D. Wash. Aug. 2, 2013) (personal injury not required to state claim under the WPLA).

Instead, a product is considered unreasonably dangerous "when it is 'dangerous to an extent beyond that contemplated by the ordinary consumer who purchases it.'" *Karjala v. Johns-Manville Prods. Corp.*, 523 F.2d 155, 158 (8th Cir. 1975). Applying that standard, this Court determined that a plaintiff plausibly alleged a product liability claim when it alleged that "a leaking dishwasher is in a defective condition and unreasonably dangerous for the dishwasher's intended use." *Cleveland,* 550 F. Supp. 3d at 673. Similarly, here, Plaintiffs allege that "[g]rout is used in the tile installation process to fill and seal joints between tiles, create a water barrier, and to secure tile," but Power Grout "never cures sufficiently to be used as a grout." (FAC ¶¶ 29, 47-49). Plaintiffs have properly pleaded their product liability claims.

### D.      Plaintiffs' Fraud And Deception Claims Are Properly Pleaded.

Defendants also attempt to dispose of several claims at once by generally invoking Rule 9(b) and arguing that Plaintiffs failed to articulate certain claims with particularity. In doing so, Defendants' completely ignore Plaintiffs' fraud-by-omission theory, and only challenge the fraud-by-representation theory by misstating (or even inappropriately *disputing*) Plaintiffs' allegations. The complaint makes clear that Plaintiffs *have* satisfied Rule 9(b), and have plausibly alleged scienter and reliance.

### 1.      *Plaintiffs' adequately allege fraud-by-omission.*

At the heart of each of Plaintiffs' fraud-based claims is the allegation that Defendants had knowledge of the defects in Power Grout and the Hardener; that

18

Defendants, thus, had a duty to disclose the defects therein or otherwise warn consumers; and that Defendants completely failed to do so.  (FAC ¶¶ 53-69).  Courts in this district have repeatedly found such allegations are sufficient to plead fraud by omission.  *See Chen,* 2022 WL 1597417, at *9 (denying motion to dismiss on Rule 9(b) grounds finding plaintiffs "sufficiently alleged that Defendant knew or should have known known that the Gift Cards in its stores were subject to third-party tampering" but continued to allow consumers to "unknowingly purchase worthless Gift Cards without taking steps to prevent the tampering or warn its customers."); *Cleveland,* 550 F. Supp. 3d at 675 (plaintiff adequately alleged fraud by omission where he pleaded defendant "had actual knowledge of the alleged defect that [defendant] and the other putative class members did not have."); *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1011 (D. Minn. 2017) (plaintiff "satisfied that [9(b)] pleading requirement by alleging [defendant] had actual knowledge of its fraudulent conduct."); *Bobcat Co.*, 175 F. Supp. 3d  at 1146  (complaint included sufficient allegations to plead a duty to disclose where defendant "had superior knowledge of material facts to which [plaintiff] did not have access").

Based on these allegations alone, none of which are addressed in Defendants' motion to dismiss, Defendants' Rule 9(b) arguments fail.

> ### 2.    *Plaintiffs' fraud-by-representation allegations satisfy the particularity requirements of Rule 9(b).*

The "critical inquiry under Rule 9(b)" is whether Defendants have "enough information to adequately respond and prepare a defense."  *Bobcat Co.*, 175 F. Supp. 3d at 1145–46.  To that end, the Eighth Circuit requires a complaint to "plead the 'who, what,

where, when, and how' of the alleged fraud.'" *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).  Plaintiffs have satisfied this standard.

Plaintiffs identify Defendants as the parties who made misrepresentations about Power Grout and the Hardener.  (FAC ¶¶ 17-19).  This satisfies the "who" requirement. *See Cleveland,* 550 F. Supp. 3d at 674   (alleging corporate defendant made the misrepresentations sufficient to satisfy the "who" factor); *Kruger,* 518 F. Supp. 3d at 1293 ("who" factor satisfied where defendants were "members of the same corporate family, [were] wholly owned subsidiaries, and share[d] counsel").

Plaintiffs also identify Defendants' particular misrepresentations and where and how they were made.  For example, Defendants represented that:

- Power Grout is "advanced performance grout" that "has a unique formulation that is stain proof and provides strong, color consistent joints free of efflorescence, that are resistant to shrinking and cracking." (FAC ¶ 34);

- "Power Grout provides excellent performance in environments such as high traffic and wet conditions, and in residential and commercial applications." (*Id.*); and

- Power Grout "(1) is highly stain resistant; (2) ***never needs sealing***; (3) is fast setting; (4) is open to traffic in 4 hours; (5) is crack and shrink resistant; and (6) is excellent in environments with high traffic and wet conditions." (FAC ¶ 35).

Defendants consistently market these Power Grout "product features" on their websites, YouTube channel, in-store displays across the country, and on social media—where HBF claims that it has "95,000+ social media followers."  (*Id.* ¶ 36).  Defendants further represent to all consumers who receive the Hardener that the Hardener will solve the defects with Power Grout and, particularly, that the Hardener will harden the defective

grout.  (*Id.* ¶ 60).  These representations are even made directly on the Hardener bottle. (*Id.* ¶¶ 55-57).

Each of these allegations satisfy the "what," "where," and "how" factors of the Rule 9(b) analysis.  *Cleveland*, 550 F. Supp. 3d at 675   (allegations that plaintiffs viewed misrepresentations on "website, in marketing materials, in warranties, in user manuals, on the labeling of the packaging of the Dishwashers, through employees, and through authorized retailers" sufficient to satisfy the "where" factor); *In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*, 364 F. Supp. 3d 976, 988 (D. Minn. 2019) (allegations that plaintiffs viewed defendant's "promotional materials, website, and commercials" sufficient to satisfy the "where" factor; *Bobcat Co.*, 175 F. Supp. 3d at 1145–46 (Rule 9(b) satisfied where plaintiff identified misrepresentations from defendant's website).[10]

As for the "when" factor, "courts in this district repeatedly have concluded that allegations of fraud need not identify dates precisely."  *Polaris,* 364 F. Supp. 3d at 988. The FAC satisfies the "when" factor because, for the Rouses, it can be reasonably inferred that the representations about Power Grout occurred shortly before the purchase of Power Grout, between "October 21, 2021" (when they entered into an agreement with their

---

[10]    Defendants' reliance on *Bennett* indicates the paucity of case law in their favor.  In *Bennett*, a RICO case, the Eighth Circuit overruled a dismissal of a complaint for lack of specificity except for 11 specific paragraphs.  *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982) (concluding a pattern of racketeering was alleged, and that fraud was alleged with sufficient particularity except for the allegations identified in nn.14-15.).    The allegations in question created an ambiguity by including references to "other" unidentified defendants and false statements such that it was impossible for the half dozen or more defendants to determine "the claims against them and the acts relied upon as constituting the fraud charged."  *Id.*

contractor) and "early 2022" (when the tile work began).  (FAC ¶¶ 70-75).  Defendants'
representations about the Hardener were made between March and June 2022 when
Defendants sent the Hardener and their representatives to the Rouses.  (*Id.* ¶¶ 79-81).
Similarly, for the Drouins, it can be reasonably inferred that the representations about
Power Grout occurred shortly before the purchase of Power Grout in "October 2021"
(when they contacted a contractor to complete the bathroom work) and "March 2022"
(when the tile work completed).  (*Id.* ¶¶ 98, 106).

Courts in this district have found similar allegations sufficient to satisfy the "when"
factor of Rule 9(b).  *See Cleveland,* 550 F. Supp. 3d at 674  (Rule 9(b) satisfied where
complaint alleged "that Whirlpool made the material representations or omissions when
Cleveland and the putative class members researched and purchased the Dishwashers,
when Cleveland and the putative class members made their warranty claims, and
continuously through the applicable class periods."); *Bobcat Co.*, 175 F. Supp. 3d at 1145–
46 (rejecting Rule 9(b) challenge where court could "reasonably infer" the "when" factor
as "the several weeks or months immediately preceding his purchase"); *Solvay Pharm.,
Inc. v. Glob. Pharm.*, 298 F. Supp. 2d 880, 885-86 (D. Minn. 2004) (rejecting 9(b)
challenge where plaintiff alleged defendants had improperly marketed their products for
"[s]everal years").  Plaintiffs have satisfied the pleading standard for their fraud claims.

### 3.    *Plaintiffs plausibly allege scienter.*

Defendants also mistakenly contend that Plaintiffs have not plausibly alleged
scienter.  Plaintiffs allege that Defendants "are fully aware of the consistent failures that
Power Grout consumers experience;" created the Hardener, a separate but concealed

22

product, to address the defects; have a warranty department that handles Power Grout complaints; and personally send representatives to inspect the defects. (FAC ¶¶ 53-59). Plaintiffs further allege that, due to consumer complaints, Defendants know that the Hardener does not harden Power Grout, that it creates a shiny veneer and adversely affects the appearance, and that Defendants refer consumers to another product to solve issues created by the Hardener. (*Id.* ¶¶ 65-66). These allegations are more than enough to plausibly allege that Defendants knew that its representations about Power Grout and the Hardener were false.

In response, Defendants proffer "alternative" theories for why Defendants created the Hardener, named it a Hardener, and then concealed the Hardener until consumers complained of the defects in Power Grout. (ECF No. 31 at 13). These theories are irrelevant, because "the Court must take the well-pleaded allegations of a claim as true, and construe the pleading, and all reasonable inferences arising therefrom, most favorably to [Plaintiffs]." *ARP Wave, LLC v. Salpeter*, No. 18-CV-2046 (PJS/ECW), 2020 WL 881980, at *3 (D. Minn. Feb. 24, 2020).

The authority cited by Defendants does not support any other conclusion. Defendants cite *Wilson v. Ark Dep't of Human Servs.*, 850 F.3d 368 (8th Cir. 2017), for the proposition that a "fact has not been plausibly alleged if there are lawful, obvious alternative explanations for the alleged conduct," yet the case in fact stands for the more generalized proposition that lawful, obvious alternative explanations *may* be enough to defeat the plausibility of a vague allegation. *Id.* at 373. In fact, the Eighth Circuit expressly stated that "[n]ot every potential lawful explanation for the defendant's conduct renders

23

the plaintiff's theory implausible," and that "a defendant is not entitled to dismissal if the facts are merely consistent with lawful conduct." *Id.* (internal quotations omitted).  After all, "ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage" and "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges ... would impose the sort of probability requirement at the pleading stage which *Iqbal* and *Twombly* explicitly reject." *Id.* (internal quotations omitted).   In other words, the only binding authority Defendants cite *undermines* their position.  The other cases Defendants cite are equally unavailing as they involved decisions made *after* the pleading stage,[11] are factually inapposite,[12] or actually favor a finding that Plaintiffs adequately alleged fraud.[13]  Plaintiffs have plausibly alleged scienter.

### 4.    *Plaintiffs plausibly allege reliance.*

Plaintiffs allege that they relied on Defendants' representations about the features and function of Power Grout (FAC ¶¶ 73, 100); that the Rouses relied on the features and

---

[11]    *Valspar Refinish v. Gaylord's*, 764 N.W.2d 359, 368 (Minn. 2009) (summary judgment); *Stiley v. Block*, 130 Wash. 2d 486, 505, 925 P.2d 194, 204 (1996) (directed verdict); *Kelton v. Hollis Ranch, LLC*, 155 N.H. 666, 669, 927 A.2d 1243, 1246 (2007) (summary judgment).

[12]    *In re SuperValu, Inc*., 870 F.3d 763, 770 (8th Cir. 2017) (allegations of injury "on information and belief" insufficient for failure to plead an injury); *City Ctr. Realty Partner, LLC v. Macy's Retail Holdings, Inc.,* No. 17-CV-528 (SRN/TNL), 2017 WL 4081896, at *12 (D. Minn. Sept. 13, 2017) (contract case with no fraud claims); *Kaiser v. ABN AMRO Mortg. Grp., Inc.*, No. CIV. 13-2611 DSD/FLN, 2014 WL 1400724, at *1 (D. Minn. Apr. 10, 2014) (foreclosure case with no fraud claims); *Knudsen v. Sprint Communs. Co*., No. C13-04476 CRB, 2016 WL 4548924, at *1 (N.D. Cal. Sept. 1, 2016)) (FCA qui tam case).

[13]    *Snierson v. Scruton*, 145 N.H. 73, 77, 761 A.2d 1046, 1049 (2000) (knowledge of misrepresentation adequately alleged where plaintiffs alleged defendants had knowledge of the appliance as the previous homeowners).

function of the Hardener (*id.* ¶ 84); and that, but for Defendants' misrepresentations and failure to disclose the defects, Plaintiffs would not have purchased or installed Power Grout or Hardener.  (*Id.* ¶¶ 109, 247).  These allegations are more than sufficient to plead reliance. *See Chen,* 2022 WL 1597417, at *10 ("Plaintiffs adequately plead causation and reliance by alleging that despite knowing its security measures were inadequate, [defendant] failed to disclose any potential tampering to Plaintiffs and therefore contributed to Plaintiffs' mistaken belief that the Gift Cards were secure"); *Sadeghi-A v. Daimler Trucks N. Am. LLC*, No. 19-CV-2373 (MJD/ECW), 2021 WL 856919, at *18 (D. Minn. Mar. 8, 2021) (plaintiff pleaded reliance where he alleged "'he relied on statements and omissions suggesting the product was not defective at the time of purchase,' as well as at the times of the repair attempts."); *Podpeskar*, 247 F. Supp. 3d at 1012 (plaintiff adequately pleaded reliance where he alleged "he reasonably relied upon the statements made by [defendant] on the [b]atteries' packaging" and that 'he would not have purchased the [b]atteries . . . if he had 'known the [b]atteries were defective and would fail prematurely.'"); *Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 890 (D. Minn. 2011) (finding plaintiffs pleaded reliance where they alleged they would not have bought the product in question had defendants disclosed the known defects).  Plaintiffs have plausibly pleaded reliance.

**E.    Plaintiffs' Unjust Enrichment Claims Should Not Be Dismissed.**

Plaintiffs' unjust enrichment claims should not be dismissed because they were pleaded in the alternative, and because Defendants' limited warranty does not provide an adequate remedy.  "The Federal Rules of Civil Procedure expressly permit a party to plead alternative or inconsistent claims or defenses.  For this reason, courts routinely decline to

dismiss unjust-enrichment claims when pled in the alternative." *Mono Adver. v. Vera Bradley Designs*, 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018) (internal citation omitted). "This Court has repeatedly allowed plaintiffs to plead unjust enrichment claims in the alternative to contract claims." *Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*, 352 F. Supp. 3d 901, 907 (D. Minn. 2018); *see Chen*, 2022 WL 1597417 at *14 ("Plaintiffs are permitted to pursue alternative theories that would provide remedies at both law and equity at this stage in the proceedings.").

Despite this authority, Defendants incorrectly contend that a valid contract precludes pleading an unjust enrichment claim. Although some courts will not allow an unjust enrichment claim to proceed solely on the basis of alternative pleading in the face of a contract, even those courts permit unjust enrichment claims to proceed where the plaintiff alleges the contract does not provide an adequate remedy. *Compare Podpeskar*, 247 F. Supp. 3d at 1013 (denying motion to dismiss unjust enrichment claim because it was "impossible to know at this stage if [plaintiff] has an adequate remedy at law, and thus, his unjust enrichment claim [was] properly pleaded in the alternative.") *with Gisairo*, 516 F. Supp. 3d at 894 (dismissing unjust enrichment claim where plaintiff "d[id] not argue that the Limited Express Warranty fails to provide an adequate legal remedy.").

Plaintiffs properly pleaded their unjust enrichment claims in the alternative, and further allege that the warranty does not provide an adequate remedy. Plaintiffs allege that Defendants "limit the value of the warranty to only the cost of the product itself," and that due to the nature of tile installations, "the consequences for consumers of a product failure would be significantly more expensive than the cost of the grout itself."  (FAC ¶ 45).

26

Accordingly, eliminating Plaintiffs' unjust enrichment claim would leave consumers without an adequate remedy at law. Defendants' motion should be denied as to Counts X, XVII, and XIV.

### F.   Plaintiffs' Implied Warranty Claims Should Not Be Dismissed.

In addressing Plaintiffs' implied warranty claims, Defendants' offer several meritless, divergent arguments addressing purported legal deficiencies in Plaintiffs' claims and, again, ignoring the explicit allegations in the FAC. Indeed, Defendants' disclaimers of the implied warranties do *not* trigger dismissal, because Plaintiffs have properly alleged that such disclaimers were unconscionable; Plaintiffs *have* plausibly alleged a claim for breach of the implied warranty of fitness for a particular use; and the UCC absolutely does *not* preempt any of Plaintiffs' claims.

#### 1.   *Plaintiffs allege Defendants' disclaimers are unconscionable.*

In response to Plaintiffs' claims for breaches of implied warranties, Defendants contend in conclusory fashion that such warranties were disclaimed and, thus, that breaches of the same cannot be actionable. In doing so, Defendants completely ignore Plaintiffs' allegations that Defendants' disclaimers were unconscionable. (FAC ¶¶ 45, 199, 210, 295, 305, 375, 386).

When dismissal of an implied warranty claim turns on unconscionability, "a decision on that matter is premature until the parties have had an opportunity to submit evidence as to the disclaimer's commercial setting, purpose, and effect." *Gisairo,* 516 F. Supp. 3d at 893; *see also Bobcat Co.*, 175 F. Supp. 3d at 1144 ("Under Minnesota law,

when a plaintiff challenges a disclaimer as unconscionable, ***the Court must allow the plaintiff 'the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect*.'"** (emphasis added)).

Thus, courts in this district routinely reject application of a disclaimer at the pleading stage where the complaint alleges grounds for unconscionability—including that that the defendant knew of and failed to disclose a product defect. *See e.g. Cleveland,* 550 F. Supp. 3d at 669 (denying motion to dismiss plaintiff's express and implied warranty claims based on finding that plaintiff had sufficiently pleaded unconscionability due to defendant's knowledge of and failure to disclose defect); *Bobcat Co.*, 175 F. Supp. 3d at 1144  (denying motion to dismiss express and implied warranty claims where plaintiff pleaded that the disclaimer was unconscionable in light of defendant's knowledge of the defect); *Hagen v. McAlpine & Co.*, No. 14-1095, 2015 WL 321428, at *3–4 (D. Minn. Jan. 26, 2015) (denying a motion to dismiss based on a warranty limitation because the plaintiffs had pleaded facts—that the defendant knew that the product was manufactured with defective materials—that if true would have made the warranty limitation unconscionable).

Plaintiffs have plausibly alleged that Defendants' disclaimer of implied warranties is unconscionable.  In particular, Plaintiffs allege that Defendants "are fully aware of the consistent failures that Power Grout consumers experience;" created the Hardener, a separate but concealed product, to address the defects; have a warranty department that handles Power Grout complaints; and send representatives to inspect the defects.  (FAC ¶¶ 53-59).  Plaintiffs further allege that Defendants provide a Limited Lifetime Warranty but that the terms of the warranty, including the limitations and disclaimers, are not available

on the product itself; that Defendants "limit the value of the warranty to only the cost of the product itself;" and that due to the nature of tile installations, "the consequences for consumers of a product failure would be significantly more expensive than the cost of the grout itself."  (*Id.* ¶¶ 41, 45).  Finally, Plaintiffs allege that Defendants do not warn consumers about the defects in Power Grout despite having knowledge of the same.  (*Id.* ¶ 61).

Each of these allegations alone establishes unconscionability, and taken together they leave no doubt.  *See McQueen v. Yamaha Motor Corp.*, U.S.A., 488 F. Supp. 3d 848, 864 (D. Minn. 2020) (unconscionability plausibly alleged where plaintiff did not receive the warranty at time of purchase, disclaimer was not sufficiently conspicuous, plaintiff could not negotiate the warranty terms, and defendant had knowledge of the defect); *Gisairo,* 516 F. Supp. 3d at 893 (unconscionability plausibly pleaded where plaintiff alleged defendant "knowingly sold a defective product without informing consumers about the defect and that, because of this knowledge, [defendant]'s attempts to limit its implied warranties are unenforceable.").

Faced with these allegations, Defendants pivot and argue that "Plaintiffs do not plausibly show ***procedural*** unconscionability because they allege no facts suggesting that they lacked a 'meaningful choice' of which Grout to use."  (ECF No. 31 at 21 (emphasis added)).  As an initial matter, this Court recently rejected the very same argument when raised by another product manufacturer.  *See Cleveland,* 550 F. Supp. 3d at 670 ("Whirlpool cites no controlling caselaw holding that the presence of such options [to purchase a washing machine from another manufacturer] renders a warranty conscionable,

29

*per se*.").  In any event, Defendants' argument is predicated on a misleading recitation of the holding in *Far E. Aluminium Works*, where the court found that the disclaimer of consequential damages was not unconscionable because "both parties [were] sophisticated business entities with relatively equal bargaining power."  *Far E. Aluminium Works v. Viracon*, 520 F. Supp.3d 1106, 1113 (D. Minn. 2021).  That, of course, is not the case here.

Other cases Defendants rely upon are similarly inapposite because they concern agreements that the parties had an opportunity to review before purchase or execution. *Bourne v. Stewart Title Guar. Co.*, No. 09-CV-00270-PB, 2011 WL 635304, at *9 (D.N.H. Feb. 16, 2011) (lending agreement); *Stone v. Mid Am. Bank & Tr. Co.*, No. 2:18-CV-87-RMP, 2018 WL 4701843, at *1 (E.D. Wash. Aug. 31, 2018) (lending agreement with arbitration clause); *Kiefer v. Simonton Bldg. Prod., LLC*, No. CV 16-3540 (RHK/SER), 2017 WL 1380497, at *1 (D. Minn. Apr. 17, 2017) (warranty for windows).

Further, Defendants misstate Washington law when they contend that "to avoid a warranty's terms, a plaintiff must demonstrate both substantive and procedural unconscionability."  (ECF No. 31 at 21).  Under Washington law, and per the very case Defendants cite, "*either* substantive *or* procedural unconscionability is sufficient to void a contract."  *Stone*, 2018 WL 4701843 at *3 (determining whether arbitration agreement in lending agreement was unconscionable) (emphasis added).[14]

---

[14]    In fact, under Washington law, "[d]isclaimers that are not negotiated and that are made after the sale are "invalid under the Washington 'negotiation' rule."  *Rottinghaus v. Howell*, 35 Wash. App. 99, 104, 666 P.2d 899, 903 (1983); *see also Hartwig Farms v. Pac. Gamble Robinson Co.*, 28 Wash. App. 539, 545, 625 P.2d 171, 175 (1981) ("Without negotiation and agreement, no disclaimer, including the present one, can be effective.").

Plaintiffs have alleged **multiple** reasons why Defendants' attempts to disclaim their implied warranties were unconscionable, and Defendants' motion does nothing to credibly undermine those allegations.  Defendants' motion to dismiss should be denied as to Counts V-VII, XIII, and XX.

> ### 2.   *Plaintiffs allege Defendants breached the implied warranty of fitness for a particular purpose.*

The implied warranty of fitness for a particular purpose requires only that the Defendants have "reason to know any particular purpose."  Minn. Stat. § 336.2-315; NH Rev Stat § 382-A:2-315; Wash. Rev. Code § 62A.2315.  Thus, contrary to Defendants' contention, the UCC does not require that Plaintiffs "communicated" or had "negotiations" with Defendants.  (ECF No. 31 at 24).

Here, Plaintiffs allege that Defendants have reason to know the particular purpose for purchasing Power Grout because Defendants sell Power Grout for use as grout and represent that Power Grout is "advanced performance grout" that provides "excellent performance in environments such as high traffic and wet conditions, and in residential and commercial applications."   (FAC ¶ 34).  This is sufficient to plausibly allege that Defendants had reason to know of Plaintiffs' particular purpose.  *See Libke v. Craig*, 35 Wash. 2d 870, 876–77, 216 P.2d 189, 192–93 (1950) ("'Knowledge of the buyer's particular purpose may be shown from the sale alone."); NH Rev Stat § 382-A:2-315 ("Under this section the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose

intended or that the reliance exists."). Defendants' motion to dismiss should be denied as to Counts V, VII, XIII, and XX.

### 3.   The MMWA does not destroy Plaintiffs' state law claims for breach of implied warranty.

Defendants argue that the MMWA eliminates Plaintiffs' state law remedies for breach of implied warranty by providing minimum requirements for warranties and prohibiting disclaimers of warranties in certain circumstances. By Defendants' own admission, however, no courts have adopted this position. (ECF No. 31 at 23 n.12). And for good reason; Defendants' argument manufactures a non-existent conflict between the statutory schemes, violates the text and purpose of the MMWA, and misconstrues the pertinent UCC provisions.

### i.   The MMWA and UCC do not conflict.

The MMWA "was promulgated to increase consumer rights and protections by imposing minimum standards for manufacturers' warranties." *Walsh v. Ford Motor Co*., 627 F. Supp. 1519, 1522 (D.D.C. 1986). By providing minimum federal standards, the MMWA "serves to *supplement state-law* implied warranties only by prohibiting their disclaimer in certain circumstances." *Ducharme v. A & S RV Ctr., Inc*., 321 F. Supp. 2d 843, 854 (E.D. Mich. 2004) (citation omitted) (emphasis original). The MMWA permits express warranties, but "they must meet federal standards in terms of disclosure and remedies provided to an aggrieved consumer. Under the [MMWA], no seller is forced to give an express written warranty, but if one is offered, it must comply with the standards set forth in the law." *Id*. (quoting 59 A.L.R. Fed. 461 (1982)).

32

The MMWA does not prohibit all warranty disclaimers. 15 U.S.C. § 2308(a) provides a limited prohibition on implied warranties where the "supplier makes any written warranty to the consumer with respect to such consumer product." This provision became applicable in this case only because Defendants chose to provide an express warranty, thereby waiving the ability to disclaim implied warranties. Thus, the entire premise of Defendants' argument—namely, that the MMWA prohibits disclaimers of implied warranties—is false. The MMWA does not generally prohibit such disclaimers, but rather provides minimum federal standards that determine *how* a supplier can disclaim implied warranties. The Defendants have manufactured a conflict where none exists.

This commonsense conclusion is reinforced by the straightforward application of the UCC provision at issue. The UCC provision quoted by Defendants states that an implied warranty exists "unless excluded or modified." (*See* ECF No. 31 at 19). To apply this provision, the Court must simply determine whether the warranties have been excluded. If a purported exclusion is ineffective—regardless of the reason—then the implied warranty binds the supplier. Simply put, even where the MMWA nullifies a purported disclaimer, the UCC provision can still be applied exactly as written.

> ## ii.   *Defendants' position would impermissibly abrogate state remedies, in violation of the MMWA.*

Defendants state that "[w]hat the UCC giveth, it can taketh away." (ECF No. 31 at 22). Properly understood, their argument is actually what the UCC giveth, the *MMWA* can take away. Under Defendants' view, the MMWA's minimum standards for warranties

would operate to eliminate an otherwise valid cause of action for breach of implied warranty, thereby abrogating a state remedy.

Such an interpretation would violate the MMWA itself, which expressly prohibits any interpretation that invalidates or restricts a state remedy: "Nothing in this title [15 USCS §§ 2301 et seq.] shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law." 15 U.S.C. § 2311(b)(1). This provision of the MMWA "preserves for consumers any rights or remedies created by state law." *Chrysler Corp. v. Texas Motor Vehicle Com.*, 755 F.2d 1192, 1206 (5th Cir. 1985) (citing 15 U.S.C. § 2311(b)(1)). After all, "the MMWA was intended to provide federal *minimum* standards for warranties and was not intended to preempt state rights and remedies." *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C 2005) (emphasis original). By providing minimum standards for warranties, the MMWA functions in addition to, and consistent with, state law remedies—in other words, "the MMWA operates as a gloss on [a plaintiff's] state law breach of warranty claims." *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011). But under Defendants' view, the MMWA operates not as a gloss, but as a wrecking ball—effectively destroying state law causes of action.

Not only does Defendants' interpretation violate the MMWA, it effectively renders the statute a nullity. By setting federal minimum standards for warranty disclaimers, the MMWA protects consumers by allowing their warranty claims to survive otherwise valid disclaimers. Under Defendants' view, both the disclaimer and the warranty itself would be extinguished, thereby rendering the MMWA impotent. That is not the statutory scheme Congress created. *See* 15 U.S.C. § 2311(b)(1); *Walsh v. Ford Motor Co.*, 807 F.2d 1000,

34

1014 (D.C. Cir. 1986) ("There is nothing obscure about the interplay Congress ordered: state law creates the warranty and also governs its dimensions, except as otherwise prescribed with particularity in Magnuson-Moss itself.  The Federal prescriptions apply as written; where the Act states no prescription, state law continues in force.").

### iii.   *The UCC's disclaimer provision is severable.*

Even if this Court were to find the foregoing arguments unpersuasive, the UCC's disclaimer provision is severable.  Defendants twist themselves in knots trying to explain away the UCC's severability provision, but they cannot change the statute's text:  where a statutory provision, clause, or application is invalid, "the invalidity does not affect other provisions ***or applications*** of this title which can be given effect without the invalid provision or application."  Wash. Rev. Code § 62A.1-105 (emphasis added); *see also* U.C.C. § 1-105.  Thus, the question is whether the UCC can be applied without the allegedly invalid language.  Here, excising the purportedly invalid language would not prevent application of the UCC provision.

The UCC provision quoted by Defendants states that an implied warranty exists "unless excluded or modified."  (ECF No. 31 at 19).  If this language is excised, the provision would simply provide for an implied warranty.  Notwithstanding Defendants' citations to two unpersuasive California cases,[15] there is nothing impossible or inconsistent

---

[15]    Putting aside Defendants' questionable reliance on California state law, the cited cases do not govern the severability of UCC provisions, nor do they appear to be sound authority within their jurisdiction; the first was ordered not to be published, *Cole v. Sea Ray Boats, Inc.*, 32 Cal. Rptr. 2d 431, 432 (Ct. App. 1994), as modified (June 27, 1994), as modified on denial of reh'g (July 21, 1994) and the second is over 85 years old.  *Daigh v. Shaffer*, 23 Cal. App. 2d 449, 461 (Cal. Ct. App. 1937).

about this application; thus, pursuant to the UCC's severability provision, the implied warranty must be applied.

### G.   The Court Has Jurisdiction To Hear Plaintiffs' MMWA Claim.

Defendants also contend that the Court lacks jurisdiction to hear Plaintiff's MMWA claim.  Like Defendants' other arguments, this contention is predicated on a misstatement of the FAC and misunderstanding of the law.

Pursuant to 15 U.S.C. § 2310(d)(1), a consumer may bring suit under the MMWA "for damages and other legal and equitable relief … in any court of competent jurisdiction in any State or the District of Columbia."   As set forth in the FAC, this Court has jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), and is therefore a "court of competent jurisdiction."  (FAC ¶ 12; *see also id.* ¶ 219 (specifically alleging that "15 USC § 2310(d) is satisfied because Plaintiff[s] properly invoke[] the jurisdiction of this Court under CAFA.")).

Defendants nevertheless contend that the MMWA claim must be dismissed for lack of jurisdiction, citing the MMWA's requirement that a claim on behalf of a class is not cognizable under the MMWA unless there are at least 100 named Plaintiffs.  15 U.S.C. § 2310(d)(3)(C).  Yet Federal Courts ***all over the country*** have rejected this precise argument and have declined to dismiss MMWA claims that are not brought by at least 100 named plaintiffs.  For example, the Third, Sixth, and Seventh Circuits have specifically held that CAFA, or other alternative mechanisms for establishing jurisdiction, "can render a district court a 'court of competent jurisdiction' and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not."  *Kuns v. Ford Motor Co.*, 543 Fed.

Appx. 572, 574 (6th Cir. 2013); *see Burzlaff v. Thoroughbred Motorsports, Inc.*, 758 F.3d

841, 844-46 (7th Cir. 2014) (holding that where district court had original diversity

jurisdiction, court could exercise supplemental jurisdiction over MMWA claim that did not

satisfy MMWA's jurisdictional thresholds); *Suber v. Chrysler Corp.*, 104 F.3d 578, 588 n.

12 (3d Cir. 1997) (same).

The Eighth Circuit has not yet addressed this question,[16] but several district courts

within the Eighth Circuit have—and each of them has rejected the argument Defendants

present. *See Barclay v. ICON Health & Fitness, Inc.*, No. 19-CV-2970 (ECT/DTS), 2020

WL 6083704, at *7 (D. Minn. Oct. 15, 2020) ("[O]nce plaintiffs have satisfied CAFA, the

MMWA's additional requirements do not apply.") (Tostrud, J*); see also LeFlar v. HP, Inc.*,

No. 4:22-CV-00690-BRW, 2022 WL 5028362, at *3 (E.D. Ark. Oct. 4, 2022)

("Satisfaction of the MMWA's jurisdictional requirements is not necessary in light of my

jurisdiction under CAFA."); *Dack v. Volkswagen Group of Am.*, 565 F. Supp. 3d 1135,

1143 (W.D.Mo. 2021) ("Plaintiffs are not required to satisfy the MMWA's requirements

in light of this Court's jurisdiction under CAFA.").

These recent decisions from district courts within the Eighth Circuit join the

"'general rule' adopted by most district courts that [have] confronted the subject-matter

jurisdiction question under the MMWA." *In re Gen. Motors Air Conditioning Mktg. &*

---

[16]     In a decision issued earlier this week, the Eighth Circuit acknowledged the district court's conclusion that it possessed subject matter jurisdiction to hear MMWA claims when CAFA's requirements were met and the MMWA's were not. *LeFlar v. Target Corp.*, No. 22-3468, 2023 WL 127501, at *1 (8th Cir. Jan. 9, 2023).  Although the court declined to analyze the same or weigh in on the question, it remanded the case to the district court to consider issues unrelated to its jurisdiction under the MMWA.  *Id.*

*Sales Pracs. Litig.*, 568 F. Supp. 3d 837, 841 (E.D. Mich. 2021) (finding jurisdiction to hear MMWA claims pursuant to CAFA despite there being fewer than 100 named plaintiffs); *see, e.g., Taylor v. Walter Kidde Portable Equip., Inc.*, No. 1:21CV839, 2022 WL 4450271, at *15 (M.D.N.C. Sept. 23, 2022) (plaintiff may establish jurisdiction for MMWA claim pursuant to CAFA even when MMWA's requirements are not satisfied); *Van Zeeland v. McNally*, 532 F. Supp. 3d 557, 565 (N.D. Ill. 2021) (same); *Bechtel v. Fitness Equip. Servs., LLC*, 339 F.R.D. 462, 478 n. 5 (S.D. Ohio 2021) (same); *Kessler v. Samsung Elec. Am. Inc.*, No. 17-C-0082, 2018 WL 7502913, at *7 (E.D. Wis. Feb. 16, 2018) (same); *Dayan v. Swiss-American Prods.*, No. 15CIV6895DLIVMS, 2017 WL 9485702, at *10 (E.D.N.Y. Jan. 3, 2017), report and recommendation adopted, No. 15CV6895DLIVMS, 2017 WL 1214485 (E.D.N.Y. Mar. 31, 2017) (same); *Keegan v. Am. Honda Motor Co.*, 888 F. Supp. 2d 929, 954-55 (C.D. Cal. 2012) (same); *McCalley v. Samsung Elecs. Am., Inc.,* No. CIV.A. 07-2141 (JAG), 2008 WL 878402, at *5 (D.N.J. Mar. 31, 2008) (same); *Chavis v. Fidelity Warranty Services, Inc.*, 415 F. Supp. 2d 620, 624-626 (D.S.C. 2006) (same); *Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 739 (E.D. Va. 2003) (same).

In a weak attempt to grapple with the weight of this consistent precedent, Defendants belittle the *Barclay* decision from the District of Minnesota as "neither binding nor persuasive," and then ironically hang their hat on a non-binding decision from the Ninth Circuit—*Floyd v. Am. Honda Motors*, 966 F.3d 1027 (9th Cir. 2020)—and three non-binding, out-of-district decisions counted among *Floyd's* progeny.  Defendants' reliance on *Floyd* is misplaced.  In the short time since the Ninth Circuit issued its decision, its

analysis has been considered and rejected by numerous district courts across the country—including by the District of Minnesota and every other district court within the Eighth Circuit to address the question.  *See Barclay*, 2020 WL 6083704 at *7 (considering and rejecting *Floyd*) (Tostrud, J); *see also LeFlar*, 2022 WL 5028362 at *3 (same); *Dack*, 565 F. Supp. 3d at 1143 (same); *Chapman v. General Motors, LLC*, 531 F. Supp. 3d 1257, 1305 (E.D. Mich. 2021) (same).  Indeed, the Ninth Circuit itself has acknowledged that its MMWA analysis is at odds with the weight of federal authority.  *See Shoner v. Carrier Corp.*, 30 F.4th 1144, 1147-48 (9th Cir. 2022) (noting that to reach its determination on MMWA claims it had to "part ways with [its] sister circuits" on questions of statutory interpretation).  Put simply, *Floyd* is an outlier that was wrongly-decided and has been rejected by this Court and others.  Accordingly, this Court should decline Defendants' invitation to deviate from the accepted "general rule."

### H.    Defendants' Motion To Strike Is Premature.

Rule 12(f) provides that the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  But while "[a] district court enjoys 'liberal discretion' under this rule," *Chen*, 2022 WL 1597417 at *3 (citation omitted), "[a]ny doubt as to the striking of matters in a pleading should be resolved in favor of the pleading." *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1, 5 (D. Minn. 1975).

Indeed, striking a party's pleadings, "is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citation omitted)).  As such, Rule 12(f) motions are "rarely granted." *Jim Lupient Co. v. Nissan N. Am., Inc.*,

No. 18-CV-3474 (MJD/TNL), 2019 WL 3465135, at *1 (D. Minn. June 28, 2019), report and recommendation adopted, No. 18-CV-3474 (MJD/TNL), 2019 WL 3457837 (D. Minn. July 31, 2019). And "most district courts to encounter motions to strike class allegations before discovery decline to do so." *Legacy Gymnastics, LLC v. Arch Ins. Co.*, No. 2:20-CV-04214-NKL, 2021 WL 2371503, at *3 (W.D. Mo. June 9, 2021) (cleaned up); *see Chen*, 2022 WL 1597417 at *19 (denying motion to strike as premature because a decision as to whether individualized issues, including determinations as to actual damages, causation, and reliance, predominate "can be made only after allowing Plaintiffs to conduct discovery"); *Mitchell v. Franklin Bank, S.S.B.*, No. 05-1320 (PAM/REL), 2006 WL 1132408, at *1 (D. Minn. Mar. 15, 2006) (same).

Defendants offer no compelling reason why this Court should deviate from this practice. Their contention that class certification for fraud and misrepresentation claims is "a clear impossibility" is contrary to the Federal Rules of Civil Procedure. "The Advisory Committee's notes on Fed. R. Civ. P. 23 state that 'a fraud case *may* be unsuited for treatment as a class action if there was *material* variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.'" *Barker v. FSC Sec. Corp.*, 133 F.R.D. 548, 552 (W.D. Ark. 1989). Plaintiffs, however, have alleged a common set of misrepresentations repeatedly made by Defendants about Power Grout and the Hardener such that a fraud class may be properly suited for class treatment. (FAC ¶¶ 2, 35, 36, 37, 57).

Similar allegations have served as the bases for class claims in other cases. *See, e.g.*, *City of Farmington Hills Employees Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D.

347, 356 (D. Minn. 2012) (where each class member saw the same misrepresentation, plaintiff "[could] rely upon direct and circumstantial evidence to prove reliance on a class-wide basis"); *In re Dollar Gen. Corp.*, No. 16-02709-MD-W-GAF, 2019 WL 1418292, at *26 (W.D. Mo. Mar. 21, 2019) ("individualized reliance inquiries are not necessary to establish class members' state consumer protection claims" where plaintiffs "presented evidence that the alleged misrepresentations could be accepted as nearly uniform.").

Defendants' reliance on *Wilcox v. State Farm Fire & Cas.,* No. 14-cv-2798, 2016 WL 6908111, at *4 (D. Minn. Sept. 7, 2016) is also misplaced.  In *Wilcox*, the court struck class allegations from the pleadings because the Minnesota Supreme Court had "made clear" that in specific disputes about homeowner insurance policy language "a trier of fact must conduct an individualized inquiry into each allegation that a particular claimant was underpaid under the claimant's respective policy." *Id.*  As such, at least one court in this Circuit has distinguished *Wilcox* and the unique factual basis leading to its holding in order to deny a motion to strike.  *See Legacy Gymnastics,* 2021 WL 2371503 at *3.  Defendants' motion to strike should likewise be denied.

## IV.   CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court deny Defendants' combined motion to dismiss and motion to strike in its entirety.

Dated: January 11, 2023                    Respectfully submitted,

                                           */s/ David F. Hine*
                                           Eric W. Richardson (admitted pro hac vice)
                                           David F. Hine (admitted pro hac vice)
                                           Emily E. St. Cyr (admitted pro hac vice)
                                           Petra G. Bergman (admitted pro hac vice)
                                           **Vorys, Sater, Seymour and Pease LLP**
                                           The Great American Tower
                                           301 East Fourth Street, Suite 3500
                                           Cincinnati, Ohio 45202
                                           Phone: (513) 723-4019
                                           Fax: (513) 852-7885
                                           Email: ewrichardson@vorys.com
                                                    dfhine@vorys.com
                                                    eestcyr@vorys.com
                                                    pgbergman@vorys.com

                                           David W. Asp (MN #344850)
                                           R. David Hahn (MN #401262)
                                           **Lockridge Grindal Nauen P.L.L.P.**
                                           100 Washington Avenue South, Suite 2200
                                           Minneapolis, MN 55401
                                           Telephone: (612) 339-6900
                                           Email: dwasp@locklaw.com
                                                    rdhahn@locklaw.com

                                           *Attorneys for Plaintiffs*