UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Lisa Rouse, Juston Rouse, Jenna Drouin, and Nicholas Drouin, *individually and on behalf of all others similarly situated,* | Case No. 22-cv-2173 (WMW/JFD) |
| Plaintiffs, | **ORDER** |
| v. | |
| H.B. Fuller Company and H.B. Fuller Construction Products, Inc., | |
| Defendants. | |

---

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint and Motion to Strike Class Action Language. For the reasons addressed below, the Motion to Dismiss is granted in part and denied in part, and the Motion to Strike is denied.

## BACKGROUND

Defendant H.B. Fuller Company ("HBF") is a corporation engaged in the manufacturing, processing, marketing, supplying and sale of industrial adhesives, industrial coatings, industrial sealants, and specialty materials. Defendant H.B. Fuller Construction Products, Inc. ("HBF-CP") is a subsidiary wholly owned by HBF. HBF-CP manages products used for tile setting, such as adhesives, grouts, mortars, sealers and levelers; the commercial roofing industry, such as pressure sensitive adhesives, tapes and sealants; and heating, ventilation, air conditioning and insulation applications, such as duct

sealants, weather barriers and fungicidal coatings and block fillers.  One brand offered by HBF is TEC, which is managed by HBF-CP.

Under the TEC brand, HBF and HBF-CP (collectively "Defendants") offer a full line of products for a variety of tile and flooring installation applications, including grout. Power Grout is a grout product under the TEC brand.  Defendants describe Power Grout as an "advanced performance grout" and claim that "Power Grout has a unique formulation that is stain proof and provides strong, color consistent joints free of efflorescence, that are resistant to shrinking and cracking."  Defendants further represent that "Power Grout provides excellent performance in environments such as high traffic and wet conditions, and in residential and commercial applications."

Plaintiff Lisa Rouse and Plaintiff Juston Rouse (collectively "the Rouses") are Washington residents who used Power Grout as part of their home remodel.  In or about October 2021, the Rouses entered into an agreement with a contractor to remodel their home.  Pursuant to the agreement, the Rouses were responsible for paying for the materials used in the project, including all grout products.  The Rouses selected Power Grout for the tile work.

In or about March 2022, a month after the Power Grout had been installed, the Rouses contacted their contractor and Defendants about issues with the grout.  In response, Defendants sent a representative to the home to evaluate the problem.  After the visit, Defendants provided the Rouses with the Hardener, which Defendants claimed would remedy the defects.  The Rouses' contractor removed and reinstalled the Power Grout with the Hardener. But the defects within the Power Grout persisted.  The Rouses allege that, to

date, Defendants have done nothing to correct the issues caused by the defective Power Grout and Hardener.  In bringing this action, the Rouses claim to have spent countless hours addressing the problems caused by the Power Grout and, upon information and belief, the defective product has damaged their real property and property value.

Plaintiff Jenna Drouin and Plaintiff Nicholas Drouin (collectively "the Drouins") are New Hampshire residents who, like the Rouses, used Power Grout as part of a remodel project.  In or about October 2021, the Drouins hired a contractor to renovate the master bathroom of their home.  As part of the project, the Drouins selected Power Grout for their shower tiles.  Pursuant to the contract, the Drouins were responsible for the costs of the Power Grout.

In March 2022, the contractor performed the renovation work and installed the Power Grout as part of the tile work for the showers.  The Drouins later learned that the Power Grout did not fully harden and was easily scratched away when wet.  In bringing this action, the Drouins claim that, upon information and belief, the Power Grout damaged their real property and property value.

The Rouses and the Drouins (collectively "Plaintiffs") bring this action on behalf of themselves, as a nationwide class action, and, in the alternative, as a class action of their respective states.  Plaintiffs allege 25 claims against Defendants.  Counts I-XI address the Nationwide Class claims, Counts XII-XVIII address the Washington Class claims and Counts XIX-XXV address the New Hampshire Class claims.

The Nationwide Class is defined as follows:

> All persons in the United States and its territories who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed. The proposed class includes all such persons or entities who contacted Defendants about their Power Grout, were provided the Hardener, and/or denied or partially denied warranty coverage.

For the Nationwide Class, Counts I-IV allege violations of Minn. Stat. § 325D.44 of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325F.69 of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 of the Minnesota False Statement in Advertising Act, and Minn. Stat. § 325D.13 of the Minnesota Unlawful Trade Practices Act; Counts V and VI allege breach of implied warranties of fitness and merchantability, and express warranties; Count VII alleges a violation of 15 U.S.C. § 2308(a) of the Magnuson-Moss Warranty Act ("MMWA"); Counts VIII, IX, and XI allege various tort claims[1]; and Count X alleges unjust enrichment.

In the alternative to the Nationwide Class, the Rouses initiate this action on behalf of themselves and a Washington-statewide class.  The Washington Class is defined as follows:

> All persons in the state of Washington who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed. The proposed class includes all such persons or entities who contacted Defendants about their Power Grout, were provided the Hardener, and/or denied or partially denied warranty coverage.

---

[1] Count VIII alleges a claim for negligence, Count IX alleges a claim for strict product liability, and Count XI alleges a claim for fraud.

For the Washington Class, Count XII alleges a violation of Wash. Rev. Cod. § 19.86.020 of the Washington Consumer Protection Act; Counts XIII and XIV allege breach of implied warranties of fitness and merchantability, and express warranties; Counts XV, XVI, and XVIII allege various tort claims[2]; and Count XVII alleges unjust enrichment.

The Drouins also bring an alternative class on behalf of themselves and a New Hampshire-statewide class. The New Hampshire Class is defined as follows:

> All persons in the state of New Hampshire who, within the applicable statute of limitations, either (a) purchased Power Grout or (b) own a structure in which Power Grout was installed. The proposed class includes all such persons or entities who contacted Defendants about their Power Grout and/or were denied or partially denied warranty coverage.

For the New Hampshire Class, Count XIX alleges a violation of N.H. Rev. Stat. § 358-A:2 of the New Hampshire Consumer Protection Act; Counts XX and XXI allege breach of implied warranties of fitness and merchantability, and express warranties; Counts XXII, XXIII and XXV allege various tort claims[3]; and Count XXIV alleges unjust enrichment.

Defendants move to dismiss all claims except Count XIV (the Washington Class's breach of express warranty claim) and Count XXI (the New Hampshire Class's breach of express warranty claim). Additionally, Defendants moved to strike the class action claims that require a finding of reliance.

---

[2] Count XV alleges a claim for negligence, Count XVI alleges a claim for strict product liability, and Count XVIII alleges a claim for fraud.
[3] Count XXII alleges a claim for negligence, Count XXIII alleges a claim for strict product liability, and Count XXV alleges a claim for fraud.

## ANALYSIS

### I.       Motion to Dismiss

Under Rule 12(b)(6), a complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 678.

### A.       Standing to Bring National Class Claims

Defendants argue that Plaintiffs lack standing to bring claims as a national class because Plaintiffs lack standing to assert claims from states in which they do not reside. Plaintiffs contend that standing is more properly addressed at class certification and that the Court should defer consideration of the issue until that time.

When a defendant challenges the plaintiff's Article III standing under Rule 12(b)(1) based on a "deficiency in the pleadings," the Court applies the same standard of review applied to a motion to dismiss brought under Rule 12(b)(6). *Stalley v. Catholic Health*

*Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007).  Standing "is not dispensed in gross," and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek," *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2200 (2021).  Under certain circumstances, a court may defer the standing question for class actions to a later stage in the case.  *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1160 (D. Minn. 2014) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)).  For example, a delay is permitted when class certification is "logically antecedent" to standing.  *Roth v. LifeTime Fitness, Inc.*, 15-cv-3270, 2016 WL 3911875, at *4 (D. Minn. July 14, 2016); *see also Ortiz*, 527 U.S. at 831; *Alchem*, 521 U.S. at 612.

At this time, it is premature to determine whether Defendants have standing to assert claims on behalf of the national class.  The Court, therefore, exercises its discretion and defers the question of standing until class certification.  *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-cv-1220 (JRT/FLN), 2017 WL 1157098 at *2 (D. Minn. 2017).  Accordingly, Defendants' motion to dismiss Plaintiffs' national class claims is denied.

## B.      Standing to Assert Minnesota Statutory Claims

Defendants move to dismiss Plaintiffs' claims that allege violations of Minn. Stat. § 325D.44 of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325F.69 of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 of the Minnesota False Statement in Advertising Act, and Minn. Stat. § 325D.13 of the Minnesota Unlawful Trade Practices Act.  Defendants argue that Plaintiffs do not have standing to assert these claims

because these statutes do not apply extraterritorially.  Plaintiffs oppose dismissal of these claims.

"[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *Ferrari v. Best Buy Co.*,14-cv-2956 MJD/FLN, 2015 WL 2242128 at *9 (D. Minn. May 12, 2015) (quoting *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 13-cv-2644 (ADM/SER), 2014 WL 943224, *11 (D. Minn. Mar. 11, 2014)).  "In general, there is a presumption against the extraterritorial application of a state's statutes." *Johannessohn v.  Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 961-62 (D. Minn. 2020).  For these Minnesota statutes to apply extraterritorially, the Minnesota legislature must have intended for them to do so.  *See id.*

Plaintiffs lack any legal support to show that the Minnesota legislature intended for these statutes to apply extraterritorially.  Plaintiffs contend that the "Private Attorney General" statute applies to individuals outside of Minnesota because Minn. Stat. § 8.31, subd. 3a, grants statutory authority to "any person injured by a violation of any of the laws referred to in subdivision 1."

Here, Plaintiffs reside out of state.  The Rouses are residents of Washington, purchased the Power Grout through their contractor in Washington, and the alleged damages occurred only in the home in Washington.  Similarly, the Drouins are residents of New Hampshire, purchased the Power Grout through their contractor in New Hampshire, and the alleged damages occurred only in the home in New Hampshire.  In light of these facts, the Court concludes that Plaintiffs lack standing to assert claims under the Minnesota statutes.  *See Ferrari,* 2015 WL 2242128 at *9 (dismissing pursuant to

12(b)(1)).  For this reason, the Court dismisses Counts I, II, III and IV because Plaintiffs lack standing to assert claims under Minn. Stat. § 325D.44 of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325F.69 of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 of the Minnesota False Statement in Advertising Act, and Minn. Stat. § 325D.13 of the Minnesota Unlawful Trade Practices Act.

### C.     Heightened Pleading Required by Rule 9(b)

Defendants move to dismiss Plaintiffs' fraud claims, Counts XI, XVIII and XXV, arguing that Plaintiffs fail to meet the heightened pleading requirements.  Fed. R. Civ. P. 9(b).  Plaintiffs contend that the pleading requirement are satisfied.

When pleading fraud claims, both statutory and common law, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *see also E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012) (statutory); *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) (common law).  The degree of particularity required by Rule 9(b) depends on the nature of the case. *E-Shops Corp.*, 678 F.3d at 663.  But conclusory allegations that the defendant's conduct was fraudulent and deceptive do not satisfy Rule 9(b).  *Id.*

The complaint must set forth the who, what, when, where, and how the alleged fraud occurred.  *Id.*  The primary purpose of this particularity requirement is to enable a defendant to respond and to prepare a defense to the fraud claim.  *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).  Although Rule 9(b) does not require a plaintiff to allege the precise details of every instance of fraud, the complaint must include

details that notify the defendant of the core factual basis for the fraud claim.  *Ransom v. VFS, Inc.*, 918 F. Supp. 2d 888, 898 (D. Minn. 2013).

Plaintiffs have satisfied this heightened pleading requirement.  Here, the complaint identifies the "who," the Defendants.   It states the "what," that Defendants made misrepresentations about Power Grout and the Hardener.   The complaint alleges the "when."  For the Rouses, representations about Power Grout were made shortly before or in October 2021 and representations about the Hardener were made between March and June 2022.  And, for the Drouins, representations were made shortly before or in October 2021.  The complaint provides the "where."  Plaintiffs' homes in their respective states. And the complaint explains the "how."  For Power Grout, this information was passed through its products features on Defendants' websites, YouTube channel, in-store displays across the county and on social media.  This information was then passed on to Plaintiffs by their contractors.  For the Hardener, this information was passed through representations made through Defendants' representative and on the label of the bottle.   The amended complaint adequately provides the information required by Rule 9(b).   The Court, therefore, denies Defendants' motion to dismiss Plaintiffs' fraud claims, Counts XI, XVIII and XXV.

### D.   Contract Claims

Defendants argue that the Plaintiffs' breach of implied warranty claims, Counts V, XIII and XX, should be dismissed because the warranties were disclaimed.  In response, Plaintiffs contend that dismissal of the implied warranty claims is unwarranted because Plaintiffs also alleged unconscionability.

A manufacturer may disclaim an implied warranty of merchantability or fitness. Minn. Stat. § 336.2-316(2).  An implied warranty of merchantability is disclaimed when the express language of the disclosure is conspicuous and mentions merchantability.  *Id.*; *see Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1321-22 (D. Minn. 2018). Similarly, an implied warranty of fitness may be disclaimed when the disclaimer is in "writing and conspicuous."  Minn. Stat. § 336.2-316(2) (explaining that "[l]anguage to exclude all implied warranties of fitness is sufficient if it states, for example, that '[t]here are no warranties which extend beyond the description on the face hereof'"); *see also* Minn. Stat. § 336.1-201(b)(10) (defining "conspicuous" to include text "in capitals" and "in contrasting type, font, or color to the surrounding text").  Whether disclaimer language is conspicuous is a question of law.  *See Am. Comput. Tr. Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1488 (D. Minn. 1991).

Under Minnesota law, when a plaintiff alleges that a disclaimer is unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."  Minn. Stat. § 336.2-302(2).  When interpreting Minn. Stat. § 336.2-302(2), Courts consider whether a plaintiff sufficiently alleged unconscionability.  *See McQueen v. Yamaha Motor Corp., U.S.A.*, 488 F. Supp. 3d 848, 862 (D. Minn. 2020); *Podpeskar v. Makita U.S.A. Inc.*, 247 F. Supp. 3d 1001, 1009 (D. Minn. 2017) (authorizing plaintiff's express-warranty claim to proceed beyond the motion-to-dismiss stage based on finding that plaintiff had sufficiently pled unconscionability); *see also Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1144 (D. Minn. 2016) (same).

Under Washington law, implied warranties may also be disclaimed. Wash. Rev. Code § 62A.2-314-315. If, however, the Court finds "any clause of the contract to have been unconscionable at the time it was made, the court . . . may so limit the application of any unconscionable clause as to avoid any unconscionable result." Wash. Rev. Code § 62A.2-302.

Under New Hampshire law, implied warranty for fitness for merchantability and fitness for a particular purpose may be disclaimed. N.H. Rev. Stat. Ann. § 382-A:2-314-315. If the court determines "any clause of the contract to have been unconscionable at the time it was made, the court . . . may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.H. Rev. Stat. § 382-A:2-302.

Regardless of whether the warranties were properly disclaimed, Plaintiffs allege that the disclaimer is unconscionable. The amended complaint alleges that Defendants knowingly sold Power Grout and the Hardener with latent defects and, because of this knowledge, Defendants' attempts to disclaim the implied warranties are unconscionable. Similar allegations have been found sufficient to survive a motion to dismiss. *See McQueen*, 488 F. Supp. 3d at 862 (observing that, when a plaintiff alleges unconscionability, the plaintiff must be afforded a reasonable opportunity to present evidence thereof). At this stage in the proceedings, the Court declines to dismiss Plaintiffs' implied warranty claims, Counts V, XIII and XX.

### E.   Magnuson-Moss Warranty Act

Defendants contend that this Court lacks jurisdiction to hear the MMWA claim as it pertains to the class action. Plaintiffs oppose this argument.

Defendants maintain that "[n]o claim shall be cognizable" if "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3). According to Defendants, this 100-plaintiff requirement is jurisdictional, and, because there are only four named plaintiffs, this Court lacks jurisdiction to hear this claim. Plaintiffs argues that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), provides the Court jurisdiction over this case and that the MMWA jurisdictional requirement need not be met because CAFA provides and independent claim for jurisdiction.

The MMWA authorizes jurisdiction "in any court of competent jurisdiction in any State or the District of Columbia" or "in an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1). The 100-plaintiff requirement applies to the second category. *See* 15 U.S.C. § 2310(d)(3). By the statute's plain text, however, federal district courts fall under both categories.[4] After the passage of CAFA, federal courts across the country are split on the question of whether a plaintiff asserting CAFA jurisdiction must also meet the second portion of the MMWA jurisdictional requirements. *Compare Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) *and Burzlaff v. Thoroughbred Motorsports,*

---

[4] As addressed in *Barclay v. ICON Health & Fitness, Inc.*, "[federal district courts] fall in the first category because federal courts are 'in'—*i.e.*, within the boundaries of—states and the District of Columbia. Had a different preposition been used in describing the first category—'of,' for example—then the statute's text would not be susceptible to this interpretation. A federal court is not a court 'of' any state. In other words, if a federal court has some other source of subject-matter jurisdiction, then it may be a 'court of competent jurisdiction' under the MMWA." No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020).

*Inc.*, 758 F.3d 841, 844-46 (7th Cir. 2014), *with Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1031–35 (9th Cir. 2020).

The United States Court of Appeals for the Eighth Circuit Court has not yet addressed this question.  Courts that have held that CAFA provides an independent basis for jurisdiction and that the MMWA jurisdictional requirements need not be met reason that "CAFA—the more recent of the two statutes—'can render a district court a court of competent jurisdiction and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not.'" *Kuns*, 543 F. App'x at 574.  In the United States District Court for the District of Minnesota, at least one district court judge has agreed with this position.  *Barclay v. ICON Health & Fitness, Inc.*, No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *7 (D. Minn. Oct. 15, 2020).

Courts that have held that both CAFA and MMWA jurisdictional requirements must be met have reasoned that nothing in CAFA explicitly repealed the MMWA's jurisdictional requirements.  *Floyd*, 966 F.3d at 1033.  Moreover, those courts provide "repeals by implication are disfavored," and when two statutes are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."  *Id.*  (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017–18 (1984)).

The legislature's intent to repeal the MMWA's jurisdiction requirement was not "clear and manifest."  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662 (2007).  To construe CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs

would effectively override a part of the MMWA.  This would not be within the "clear and manifest" intent of the legislature.  *Id.*  Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' MMWA claim to the extent the MMWA claim applies to the class action.

### F.  Economic-Loss Doctrine

Defendants seek to dismiss Plaintiffs' tort claims, arguing that the economic-loss doctrine bars these claims because Plaintiffs do not allege any tort-based damages and only allege damages to the Power Grout and Hardener.

Minnesota's economic-loss doctrine "prohibits a plaintiff from recovering purely economic losses in tort." *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1144 (D. Minn. 2016).  The economic-loss doctrine, codified at Minn. Stat. § 604.101 (2016),  expressly abrogates the common law version of the doctrine.  *Id.* at 1144–45; *see also Ptacek v. Earthsoils, Inc.*, 844 N.W.2d 535, 538–39 (Minn. Ct. App. 2014).

The economic-loss doctrine applies to two types of claims, product defect tort claims and common law misrepresentation claims.  *See* Minn. Stat. § 604.101, subdiv. 2.  Under the statute, "a buyer may not bring a product defect tort claim for compensatory damages unless the defect 'caused harm to the buyer's tangible personal property other than the goods or the buyer's real property.'"  *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 829 (D. Minn. 2010) (quoting Minn. Stat. § 604.101, subdiv. 3).  A "product defect tort claim" is defined as "a common law tort claim for damages caused by a defect in the goods but does not include statutory claims."  Minn. Stat § 604.101, subd. 1.

In Washington, "[t]he economic loss rule applies to hold parties to their contract remedies when a loss potentially implicates both tort and contract relief." *Alejandre v. Bull*, 153 P.3d 864, 867-68 (Wash. 2007). The Washington economic-loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract because tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." *Id.* (internal citation and quotation marks omitted). Where economic losses occur, recovery is confined to contracts "to ensure that the allocation of risk and the determination of potential future liability is based on what the parties bargained for in the contract." *Id.* at 868.

In New Hampshire, the general rule is that "persons must refrain from causing personal injury and property damage to third parties, but no corresponding tort duty exists with respect to economic loss." *Plourde Sand & Gravel v. JGI E., Inc.*, 917 A.2d 1250, 1254 (N.H. 2007). The economic-loss doctrine "is a judicially-created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship." *Id.* (quotation omitted). One exception to New Hampshire's economic-loss doctrine is a misrepresentation of present fact that serves as an inducement to enter into a contract, so long as the misrepresentation does not concern the quality or characteristics of the subject matter of the contract. *Wyle v. Lees*, 33 A.3d 1187, 1191 (N.H. 2011).

To determine whether the economic-loss doctrine bars Plaintiffs' tort claims, the Court must determine whether Plaintiffs' amended complaint alleges sufficient facts to establish a plausible claim for property damage outside of the product itself. *Glick v. W.*

*Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).   The allegations in the amended complaint provide conclusory statements that damage occurred to Plaintiffs' homes but offer no support to these allegations.   For example, Plaintiffs do not allege that water damage occurred in their homes because of the defective grout and hardener, nor do Plaintiffs allege that they experienced property damage from removing the grout.   Rather, the complaint alleges only "upon information and belief" that damage occurred to Plaintiffs' home and property value.   This allegation is insufficient where Plaintiffs had sole access to their respective homes and could determine if any actual damage or loss in property value occurred.   *See Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023) (stating that "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible"); *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009) (plaintiffs' pleading on "information and belief" was inappropriate because plaintiffs possessed the products at issue).   Because no actual damage to the home or property value was alleged nor can the Court reasonably infer that damage occurred from the facts provided, Plaintiffs' damages attributable to the homes are merely speculative and conclusory.   *Twombly*, 550 U.S. at 570; *Glick*, 944 F.3d at 717.   The economic-loss doctrine, therefore, applies.   Accordingly, Defendants' motion to dismiss Counts VIII, IX, XV, XVI, XXII, and XXIII is granted.

Defendants also argue that Plaintiffs' fraud claims are barred by the economic-loss doctrine.   These claims, however, are not precluded by the economic loss doctrine.   *See,*

*e.g.*, *Carlile v. Harbour Homes, Inc.*, 194 P.3d 280, 289 (Wash. 2008); *Beer v. Bennett*, 993 A.2d 765, 770 (N.H. 2010). As such, the Court denies Defendants' motion to dismiss these claims.

### G.   Scienter

Defendants next seek dismissal of Plaintiffs' fraud claims, Counts XI, XVIII and XXV, for failure to allege scienter as required for such claims. Defendants contend that a fraud claim requires Defendants' knowledge that the alleged misrepresentation or omission was false or Defendants failure to know whether the alleged misrepresentation or omission was true or false. Plaintiffs maintain that they have sufficiently alleged scienter.

For a fraud claim, a plaintiff must establish that:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffered pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (internal citation omitted).

Here, the amended complaint alleges that Defendants are "fully aware of the consistent failure" of Power Grout, and that Defendants established a department to handle these complaints. Additionally, the amended complaint alleges that, because Defendants knew of the defects, Defendants gave customers the Hardener to address these defects. In response to these claims, Defendants maintain that there are "reasonable explanations" for

establishing a complaints department and for providing the Hardener to customers. At this stage in the proceedings, however, the Court must accept all facts alleged in the complaint as true and view them in the light most favorable to Defendants. *Blankenship*, 601 F.3d at 853. In doing so, the Court concludes that Plaintiffs' allegations of scienter are sufficient to sustain their fraud claims. Defendants' motion to dismiss Plaintiffs' fraud claims for failure to allege scienter is denied.

### H.    Reliance

Defendants also contend that, because Plaintiffs failed to plausibly allege that they relied upon Defendants' misrepresentations or omissions, Plaintiffs' fraud claims, Counts XI, XVIII and XXV, should be dismissed. Plaintiffs respond by addressing the portions of the amended complaint in which reliance is alleged.

To state a fraud claim, Plaintiffs must allege that they relied on the representations made by Defendants. *Hoyt Props., Inc.*, 736 N.W.2d at 318. Similarly, to establish a claim for negligent misrepresentation, Plaintiffs must show, among other things, that they "justifiably relied on information" provided by Defendants. *Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012).

In their amended complaint, Plaintiffs allege that they relied on Defendants' advertisements regarding Power Grout. Defendants dispute the sufficiency of the allegations because Plaintiffs relied on their contractors' statements about the project. Whether Plaintiffs relied on statements made by the contractors or the features advertised by Defendants, however, is a question of fact that cannot be resolved at this stage of the

proceedings.  Consequently, the Court denies Defendants' motion to dismiss Plaintiffs' fraud claims, Counts XI, XVIII and XXV, for failure to allege reliance.

## I.      Unjust Enrichment

Defendants seek dismissal of Plaintiffs' unjust-enrichment claims, Counts X, XVII and XXIV, arguing that the parties have a valid contract.  Plaintiffs contend, however, that the unjust-enrichment claims are alternative stand-alone claims that should proceed.

To state a claim for unjust enrichment, a plaintiff must allege "that another party knowingly received something of value to which [that party] was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Cobb v. PayLease LLC*, 34 F. Supp. 3d 976, 989 (D. Minn. 2014) (internal quotation marks omitted).  Because Rule 8(d)(2),(3) of the Federal Rules of Civil Procedure expressly permits a party to plead alternative or inconsistent claims or defenses, courts routinely decline to dismiss unjust-enrichment claims when pled in the alternative. *See, e.g.*, *United States v. R.J. Zavoral & Sons, Inc.*, 894 F. Supp. 2d 1118, 1127 (D. Minn. 2012) (concluding that plaintiff "may maintain this [unjust-enrichment] claim as [an] alternative claim for relief under Rule 8 of the Federal Rules of Civil Procedure"); *Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (observing that courts "routinely permit the assertion of contract and quasi-contract claims together").

Claims for unjust enrichment fail when there is "no dispute that a written contract governs the at-issue conduct." *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 370 F. Supp. 3d 1020, 1029–30 (D. Minn. 2019).  Indeed, because the existence of an adequate

legal remedy bars unjust enrichment recovery, such claims will be dismissed even if the claims giving rise to the legal remedy were inadequately pled. *Drobnak*, 561 F.3d at 786–87 (explaining that no claim for unjust enrichment lies when an adequate legal remedy exists); *see also United States v. Bame*, 721 F.3d 1025, 1031 (8th Cir. 2013) (recognizing that "it is the existence of an adequate legal remedy that precludes unjust enrichment recovery" even if "plaintiff failed to pursue adequate legal remedies").

Here, Plaintiffs sufficiently plead their unjust-enrichment claims. Plaintiffs allege that Defendants knowingly received payment in exchange for allegedly defective grout and Defendants' retention of that payment is unjust because the benefit was received by way of false, deceptive and misleading marketing. Plaintiffs' unjust-enrichment claims are barred, however, because a contract exists, and the warranty governs the parties' rights in this instance. *See Gisairo v. Lenovo (United States) Inc.*, 516 F. Supp. 3d 880, 894 (D. Minn. 2021). There is no basis to conclude that this warranty is an inadequate legal remedy simply because the warranty does not cover the damages other than the grout itself. Moreover, damages other than the grout and the Hardener have not been properly alleged. For these reasons, Plaintiffs cannot proceed with their unjust-enrichment claims. Defendants' motion to dismiss Plaintiff's unjust-enrichment claims, Counts X, XVII, and XXIV, therefore, is granted.

## VI.    Motion to Strike

Defendants argue that, because the class certification for common-law fraud and negligent misrepresentation are clearly impossible, Plaintiffs' claims for common-law

fraud and negligent misrepresentation should be stricken. Plaintiffs maintain that the motion to strike is premature.

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). However, because this remedy is "drastic" and at times sought simply as a "dilatory or harassing tactic," 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.), granting a motion to strike is an "extreme and disfavored measure," *BJC Health*, 478 F.3d at 917.

It is sometimes appropriate to strike a pleading, such as when a portion of the complaint lacks a legal basis. *See, e.g.*, *BJC Health*, 478 F.3d at 916-18 (affirming a district court's grant of a motion to strike the plaintiff's prayer for punitive damages on the basis that fraud had not been pled with the particularity required by Rule 9(b)). A district court may grant a motion to strike prior to class action certification when "it is apparent from the pleadings that the class cannot be certified under Rule 23(b)(2)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1094 (8th Cir. 2021).

Here, Defendants' argument that the Court should strike portions of the complaint because class certification for common-law fraud and negligent misrepresentation are clearly impossible is unavailing. Whether class certification is impossible has not been established at this stage in the proceedings. Accordingly, Defendants' Motion to Strike is denied.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**

1.      Defendants' Motion to Dismiss is **GRANTED IN PART and DENIED IN PART:**

A.      Plaintiffs' Minnesota statutory claims, Counts I, II, III and IV, are **DISMISSED WITHOUT PREJUDICE;**

B.      Plaintiffs' MMWA claim, Count VII, is **DISMISSED WITHOUT PREJUDICE;**

C.      Plaintiffs' negligence/negligent misrepresentation and strict product liability claims, Counts VIII, IX, XV, XVI, XXII and XXIII are **DISMISSED WITHOUT PREJUDICE;**

D.      Plaintiffs' unjust enrichment claims, Counts X, XVII and XXIV are **DISMISSED WITHOUT PREJUDICE;**.

E.      Defendants' motion to dismiss is **DENIED** in all other respects.

2.      Defendants' motion to strike is **DENIED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: September 26, 2023                    s/ Wilhelmina M. Wright
                                             _____
                                             Wilhelmina M. Wright
                                             United States District Judge