# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Lisa Rouse, Juston Rouse, Jenna Drouin, Nicholas Drouin, Kendra Graybeal, Nichole Edwards, Lucas Edwards, Robert Calamita, Gina Calamita, Nicole Robb, Dave Robb, Clay Whitenack, Andrea Lea Hill Whitenack, Brian Andree, Alexandra Andree, Kyle Witczak, Brittany Witczak, Mary Jane Gougar, Chris Lorbecki, and Kristina De Broux, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

v.

H.B. Fuller Company and H.B. Fuller Construction Products Inc.,

        Defendants.

File No. 22-CV-02173 (JMB/JFD)

**ORDER**

---

David W. Asp and Robert David Hahn, Lockridge Grindal Nauen PLLP, Minneapolis, MN, and Petra Bergman, *pro hac vice*, Michael Soder, *pro hac vice*, Eric W. Richardson, *pro hac vice*, Emily St. Cyr, *pro hac vice*, David Frederick Hine, *pro hac vice*, and Alexander X. Shadley, *pro hac vice*, Vorys Sater Seymour & Pease LLP, Cincinnati, OH, for Plaintiffs.

Todd A. Noteboom, Andrew Leiendecker, William Thomson, and Zach Wright, Stinson LLP, Minneapolis, MN, Jeremy A. Root, *pro hac vice*, Stinson LLP, Jefferson City, MO, for Defendants.

---

      This matter is before the Court on Defendants H.B. Fuller Company's and H.B. Fuller Construction Products Inc.'s (together, Defendants) motion for partial dismissal of Plaintiffs Lisa Rouse's, Juston Rouse's, Jenna Drouin's, Nicholas Drouin's, Kendra Graybeal's, Nichole Edwards's, Lucas Edwards's, Robert Calamita's, Gina Calamita's

Nicole Robb's, Dave Robb's, Clay Whitenack's, Andrea Lea Hill Whitenack's, Brian Andree's, Alexandra Andree's, Kyle Witczak's, Brittany Witczak's, Mary Jane Gougar's, Chris Lorbecki's, and Kristina De Broux's, (together, Plaintiffs) Third Amended Complaint (TAC). (Doc. No. 185.) For the reasons explained below, the Court grants the motion in part and denies it in part.

## GENERAL BACKGROUND

H.B. Fuller Company manufactures, markets, and sells industrial adhesives, coatings, sealants, and other specialty materials. (Doc. No. 167 [hereinafter, "TAC"] ¶ 36.) It owns a brand, TEC, which holds itself out as a leader in "technologically advanced products for the installation and surface preparation of tile," like, for example, grout. (*Id.* ¶¶ 45, 48, 50.) H.B. Fuller Construction Products Inc. manages the TEC brand. (*Id.* ¶ 46.)

### A.     Defendants Manufacture, Market, and Sell a Defective Grout Product

Starting in June 2011, Defendants, through their TEC brand, started manufacturing and selling a grout product called "Power Grout." (*Id.* ¶¶ 55, 63.) Defendants sold Power Grout in both retail stores and through distributors. (*Id.* ¶ 56.) Defendants tout their grout out as a premium grout product that has several desirable features, including that it is stain resistant; that it is free of efflorescence;[1] that it never needs to be sealed; that it is fast-setting and ready for use in four hours; that it is resistant to cracking and shrinking; and

---

[1] According to Plaintiffs, "[e]fflorescence is a white deposit (usually calcium carbonate) that develops on the surface of grout and/or tiles," which "occurs when soluble, naturally occurring mineral salts rise to the surface" and is aesthetically undesirable. (TAC ¶¶ 117–118.) Defendants marketed Power Grout as being free from efflorescence, although it has always contained ingredients that are known to produce efflorescence. (*Id.* ¶¶ 119–33.)

that it performs well in both wet and dry conditions. (*Id.* ¶¶ 57, 58.) Because of these purported features, Power Grout has a higher price point than other comparable grout products—for example, a twenty-five-pound bag of Power Grout sells for approximately $90, whereas a twenty-five-pound bag of peer product sells for about $30. (*Id.* ¶ 62.)

Shortly after launching Power Grout, Defendants received complaints. (*Id.* ¶ 64.) Specifically, consumers reported that the grout did not harden and that its pigment bled out. (*Id.*) Consequently, between January 2012 and January 2018, Defendants launched several new versions of Power Grout in an effort to address the complaints of soft grout, pigment bleeding, and efflorescence. (*Id.* ¶¶ 66–93.) Defendants purposefully did not disclose when they released new versions of Power Grout and, as a result, consumers did not know which version of the product they were buying or using. (*Id.* ¶¶ 180, 182, 196; *see also id.* ¶¶ 180–213.) Defendants released a sixth version in January 2018, which is still on the market today. (*Id.* ¶¶ 93, 94.) After releasing Version 6, however, Defendants became aware that it, too, had the same defects as previous versions. (*Id.* ¶¶ 95, 96–107.) Nevertheless, Defendants have not made any changes to the product. (*Id.* ¶¶ 100–02.)

### B.    Defendants' Warranty and Handling of Consumer Complaints

Each package of Power Grout boasts a "Lifetime Limited Warranty"; however, the terms of such warranty are not described on the packaging. (*Id.* ¶¶ 214–15.) H.B. Fuller Construction Products Inc.'s website provides that the lifetime Power Grout guaranty provides that the product will not have substantial defects and will not break down or deteriorate with use. (*Id.* ¶ 216.) Defendants receive thousands of warranty complaints every year about Power Grout's efficacy. (*Id.* ¶ 206.)

Defendants' first step when responding to consumer warranty claims is to send consumers a bottle of "TEC Acrylic Grout Hardener" (Hardener).  (*Id.* ¶ 157.)  The Hardener is not available for purchase; it is available only to consumers who complain to Defendants.  (*Id.* ¶ 164.)  The Hardener is not actually a hardener; it is a grout sealer.  (*Id.* ¶¶ 156, 158–59 168–69.)  It was initially known as "TEC Acrylic Grout Sealer"; however, Defendants changed its name when consumers pointed out that Power Grout advertises itself as never needing sealing.  (*Id.* ¶¶ 156, 159, 160.)  The Hardener is laborious to apply and does not work.  (*Id.* ¶¶ 172–73.)  Further, the Hardener creates an aesthetically displeasing film that can be peeled or scrubbed away, which leaves soft grout exposed.  (*Id.* ¶¶ 174, 176.)

## C.   This Action

Plaintiffs commenced this action in September 2022.  (Doc. No. 1.)  In the TAC, Plaintiffs—in total, twenty-one individuals—bring seventeen consumer-protection, tort, and product-liability claims under numerous state laws against Defendants on behalf of themselves and eleven classes.  (*See* TAC.)

## DISCUSSION

Defendants now move to strike or dismiss Plaintiffs' allegations that the statutes of limitations on all seventeen claims are tolled due to Defendants' alleged fraudulent concealment.  Defendants also seek to dismiss several claims, some in whole, some in part, including: Count 3 (negligent misrepresentation) as to De Broux and the Calamitas; Count 4 (strict products liability) as to the Calamitas; Count 5 (fraudulent omission) as to De Broux; Count 8 (Graybeal's claim under the Idaho Consumer Protection Act); Count 9 (the

Edwards's claim under the Massachusetts Consumer Protection); Count 12 (the Whitenacks' claim under the Kentucky Consumer Protection Act); and Count 16 (Gougar's and the Lorbecki's claim under the Wisconsin Deceptive Trade Practices Act).

On a motion to dismiss under Rule 12(b)(6),[2] courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   In this analysis, courts construe the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).   However, courts will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).   All told, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

---

[2] Defendants do not specify the rule under which they move to dismiss. (*See* Doc. Nos. 185, 186.)  However, the Court has determined that, based on the nature of Defendants' arguments, their motion is brought under Federal Rule of Civil Procedure 12(b)(6).

## I.    FRAUDULENT CONCEALMENT ALLEGATIONS

Plaintiffs allege in the TAC that, because Defendants fraudulently concealed product defects, the running of all relevant statutes of limitations on Plaintiffs' sixteen claims were tolled from the date of first sale of Power Grout in 2011 until February 22, 2024, the date that Plaintiffs filed the TAC.  (*See* TAC ¶¶ 538, 550, 560, 577, 591, 606, 623, 641, 659, 680, 698, 716, 732, 755, 791, 808, 823.)  Defendants move to strike or dismiss Plaintiffs' fraudulent concealment allegations, arguing that the allegations fail to satisfy the elements of fraudulent concealment.  The Court denies Defendants' request.

Courts sitting in diversity must apply state equitable tolling laws.  *E.g.*, *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (applying Arkansas state law federal procedural law in diversity case to determine if the statute of limitations was equitably tolled); *Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (concluding that "[b]ecause this case arises under our diversity jurisdiction, we apply state tolling law" and applying Kansas law to determine if the allegations of fraudulent concealment equitably tolled the statute of limitations).  Defendants, however, have not analyzed whether the allegations of fraudulent concealment satisfy any of the applicable state tolling laws implicated by the claims raised in this case.  As a result, the Court will decline to dismiss Plaintiffs' statute of limitations defense because Defendants have not sufficiently developed this issue for the Court's consideration.[3]

---

[3] The Court also denies Defendants' companion request to strike the allegations of fraudulent concealment contained in the TAC.  Under Federal Rule of Civil Procedure 12(f), the Court may strike only "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter."  At most, Defendants briefly assert that the fraudulent

## II.   DE BROUX'S NEGLIGENT MISREPRESENTATION AND FRAUD CLAIMS

### A.   Relevant Background

De Broux resides in Ohio.  (TAC ¶ 29.)  At some point, she hired a general contractor to renovate a bathroom in her home.  (*Id.* ¶ 452.)  The contractor used Power Grout in their tile work.  (*Id.* ¶ 453.)  A few weeks later, De Broux reported to her contractor that the Power Grout dripped out between tiles when wet and could be rubbed out from the tilework with her finger.  (*Id.* ¶¶ 455–56.)  Her contractor contacted Defendants.  (*Id.* ¶ 456.)  Defendants provided the contractor with a bottle of Hardener; the contractor applied the Hardener, but it left an undesirable film on the tiles and ultimately did not work.  (*Id.* ¶¶ 457–59.)  Defendants sent an inspector to De Broux's home, who informed De Broux that they could not remedy the issue because she or her contractor had somehow voided the Power Grout warranty.  (*Id.* ¶ 460–61.)  De Broux generally alleges that she "relied upon Defendants' representations regarding Power Grout and has been damaged because those representations have proven to be false."  (*Id.* ¶ 464.)

### B.   Failure to Allege Detrimental Alliance

Defendants argue that Count 3 (negligent misrepresentation) and Count 5 (fraud) should be dismissed as to De Broux because she does not allege an essential element of the

---

concealment allegations are insufficiently pleaded under Federal Rule of Civil Procedure 9(b), but Defendants do not explain what deficiencies exist under Rule 9(b).  (*See* Doc. No. 186 at 18–20.)  A general assertion that a complaint falls short of the heightened pleading standard does not rise to the level of defective pleading contemplated by Rule 12(f).

claims. (Doc. No. 186 at 13–15.)  In Ohio,[4] claims of fraud and negligent misrepresentation both require, as an element of those claims, that a plaintiff relied, to their detriment, on a misrepresentation made by defendants.  *See Janiszewski v. Belmont Career Ctr.*, 86 N.E.3d 613, 634 (Ohio Ct. App. 2017) (fraud); *Fed. Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 863 (Ohio Ct. App. 2000) (negligent misrepresentation).  Allegations supporting both claims must also meet the heightened pleading standard for fraud under Federal Rule of Civil Procedure 9(b).  *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020) (fraud); *Untiedt's Vegetable Farm, Inc. v. S. Impact, LLC*, 493 F. Supp. 3d 764, 765 (D. Minn. 2020) (negligent misrepresentation).

Here, even with all inferences drawn in her favor, De Broux does not appear to allege detrimental reliance.  She does not allege that she asked her contractor to use Power Grout because of representations made by Defendants about its efficacy or that she discussed or had any input in her contractor's use of Power Grout in the renovation.  (*See* TAC ¶¶ 452–64.)  Further, though De Broux does describe instances in which Defendants made representations about Power Grout, they did not make such representations to her; they made them to her contractor.  (*Id.* ¶¶ 456–57.)  She does not allege that her contractor told her about Defendants' assurances.  (*See id.*)  Because De Broux does not allege detrimental reliance, the Court will dismiss Counts 3 and 5 as to De Broux.

---

[4] Both Plaintiffs and Defendants agree to appear that Ohio law applies to De Broux's common-law claims.  (*See* Doc. No. 186 at 13–15; Doc. No. 198 at 37–38.)

### III.   GRAYBEAL'S IDAHO CONSUMER PROTECTION ACT (ICPA) CLAIM

#### A.   Relevant Background

Graybeal resides in Idaho and moved into a newly constructed home in October 2020.  (TAC ¶¶ 15, 271.)  Power Grout had been used in the bathroom tilework.  (*Id.* ¶¶ 272–73.)  After moving in, she discovered that the grout was soft and "came out in chunks."  (*Id.* ¶ 272.)  Graybeal, who had previous personal experience with laying tile, decided to remove the grout and reinstall it herself.  (*Id.* ¶ 274.)  She chose to use Power Grout for the job given her understanding of its desirable features, as advertised "on the bag of Power Grout the contractor had left at her home."  (*Id.* ¶ 275.)

Graybeal correctly mixed and installed the Power Grout.  (*Id.* ¶ 277.)  However, after letting it cure for over a week, she discovered that it was still soft.  (*Id.* ¶ 278.)  She discovered that, in every other location in her home in which Power Grout had been installed, it "could be easily scratched out of the joints with a scrub brush or fingernail," especially when wet.  (*Id.* ¶ 279.)  Graybeal sought to make a warranty claim with Defendants in June 2023.  (*Id.* ¶ 281.)  Ultimately, Defendants suggested that the defects in the grout were due to user error, and they told Graybeal to apply the Hardener to it.  (*Id.* ¶¶ 284–85.)  Graybeal informed Defendants that applying the Hardener was not a workable solution because she had researched and learned that the Hardener ruined tiles and did not work.  (*Id.* ¶¶ 287–88.)  Defendants offered no other remedy to Graybeal.  (*Id.* ¶¶ 290–91.)

**B.     Failure to Allege Contractual Relationship**

Defendants move to dismiss Graybeal's ICPA claim, arguing that Graybeal failed to allege facts sufficient to establish the first element of an ICPA claim.  The Court agrees.

To prevail on an ICPA, a plaintiff must prove three elements:

> (1) the consumer purchased goods or services from a seller;
> (2) the seller engaged in unfair or deceptive act(s) or practice(s) that are declared unlawful under the ICPA; and
> (3) the unfair act(s) or practice(s) caused the consumer to suffer an "ascertainable loss of money or property" (real or personal).

*Lister Frost Injury Lawyers, PLLC v. Idaho Injury Law Grp., PLLC*, 518 P.3d 1, 11 (Idaho 2022).  In *Taylor v. McNichols*, 243 P.3d 642 (Idaho 2010), the Idaho Supreme Court affirmed the dismissal of an ICPA claim on grounds that "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively," but plaintiff had not pleaded the existence of any such contractual relationship.  *Id.* at 662 (citing *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982) ("[A] claim under the ICPA must be based upon a contract.")).

Since *Taylor*, subsequent Idaho courts have concluded that an ICPA claim requires direct contractual privity between a plaintiff and defendant.  *See, e.g.*, *Duspiva v. Fillmore*, 293 P.3d 651, 660 (Idaho 2013) (quoting *Taylor* for principle that contractual privity is required between ICPA plaintiff and defendant); *Kerr v. ReconTrust Co. N.A.*, No. 41670, 2014 WL 6674273, at *3 (Idaho Ct. App. Nov. 25, 2014) (same).  Federal district courts in Idaho have done the same.  *E.g.*, *Dreyer v. Idaho Dep't of Health & Welfare*, 455 F. Supp. 3d 938, 952–53 (D. Idaho 2020) (dismissing ICPA claim where plaintiff did not allege

contractual relationship with defendant); *Hansen, et al. v. U.S. Bank, Nat'l Assoc.*, No. 4:15-CV-00085-BLW, 2015 WL 5190749, at *4 (D. Idaho Sept. 4, 2015) (dismissing ICPA claim because, in accordance with "well-established" principle from *Taylor*, no contractual privity existed between ICPA plaintiff and defendants); *Moto Tech, LLC v. KTM N. Am., Inc.*, No. 1:13-CV-00165 (BLW), 2013 WL 6446239, at *3 (D. Idaho Dec. 9, 2013) (dismissing ICPA claim not based on contractual relationship); *Mortensen v. Mortg. Elec. Registration Sys., Inc., et al.*, No. 1:10-CV-00234 (EJL/REB), 2012 WL 4482040, at *13 (D. Idaho Aug. 24, 2012) (same).  So, too, have federal courts in districts outside of Idaho. *E.g.*, *Bledsoe v. FCA US LLC*, 663 F. Supp. 3d 753, 794 (E.D. Mich. Mar. 23, 2023) (dismissing ICPA claim not premised on contractual relationship); *In re Duramax Diesel Litig.*, 2018 WL 3647047, at *8–9 (E.D. Mich. Aug. 1, 2018) (concluding "the Idaho Supreme Court has unambiguously interpreted the ICPA as requiring direct contractual privity" and dismissing ICPA claim in which such privity was not alleged).

Because the Idaho Supreme Court is the "ultimate arbiter of Idaho law" that "has the last word on construing statutory language," *Moto Tech*, 2013 WL 6446239, at *4 (citing *J.R. Simplot Co. v. Idaho State Tax Comm'n*, 820 P.2d 1206, 1210 (Idaho 1991)), the Court will follow *Taylor*.[5]  *Accord Wilson v. Colonial Penn Life Ins. Co.*, 454 F. Supp.

---

[5] Plaintiffs point out that some federal district courts outside of Idaho question whether *Taylor* requires both a contractual relationship and direct privity between the litigants. *E.g.*, *MSP Recovery Claims v. Abbott Labs.*, No. 19-21607 (FLW), 2021 WL 2177548, at *19 (D.N.J. May 28, 2021) (stating that "courts have permitted claims under the ICPA to proceed where plaintiffs had contracts with other parties that resulted in their purchase of the defendant manufacturers' products"); *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 837, 857 (N.D. Ill. Jan. 8, 2021) ("The [*Taylor*] court concluded the action only need be based on a contract, but there need not be privity."); *In re Chrysler-Dodge-Jeep Ecodiesel*

1208, 1211 n.4 (D. Minn. 1978) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938))

(observing that, when sitting in diversity, federal court "is obligated to apply state law as

declared by statute or by opinion of the state's highest court").   Here, the TAC includes

allegations that a contractor used Power Grout in Graybeal's home.   (TAC ¶¶ 271–73.)

The allegations do not include any statement that Graybeal ever purchased Power Grout

herself; instead, Graybeal used Power Grout that the contractor left behind at her home.

(*See id.* ¶¶ 271–92.)   There is no alleged direct contractual relationship between Graybeal

and Defendants and the TAC fails to state an ICPA claim.[6]

## III.   THE EDWARDS'S MASSACHUSETTS CONSUMER PROTECTION ACT CLAIM

### A.   Relevant Background

The Edwardses reside in Massachusetts.   (TAC ¶¶ 16, 17.)   In 2019, as part of a

home renovation, the Edwardses sought out "the best grouts available" from a local tile

store.   (*Id.* ¶¶ 293–95.)   Based on Defendants' representations on Power Grout's packaging,

and notwithstanding the high price point, the Edwardses selected Power Grout for their

contractor's use.   (*Id.* ¶¶ 296–97, 299.)   Ultimately, the grout "ran out of the joints when it

---

*Mktg., Sales Pracs., and Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1021 (N.D. Cal. 2018) (noting that the *Taylor* decision did not specify "what kind of contractual relationship the court was contemplating"); *Johnson v. Ford Motor Co.*, No. 3:13-CV-6529, 2015 WL 7571841, at *10 (S.D. W. Va. Nov. 24, 2015) (determining plaintiff had standing to pursue ICPA claim against car dealer, who had contractual relationship with manufacturer).   The distinction has little bearing on the consideration of Defendants' motion in this case, however, because the TAC does not allege either a contractual relationship or direct privity.

[6] Plaintiffs assert that " the express warranties governing Power Grout and the Hardener" provide privity (Doc. No. 198 at 27), but Plaintiffs provide no legal authority to support this assertion.   Absent such authority, the Court declines to accept this proposition.

was wet, and it cracked and crumbled when it was dry." (*Id.* ¶ 300.) Even after commissioning re-tiling work with a new contractor (who also used Power Grout), and after applying Hardener to the second application of defective Power Grout, the Edwardses continued to experience issues with defective soft grout. (*Id.* ¶¶ 301–10.)

**B.     Failure to Provide Pre-Suit Notice**

Defendants argue that Count 9—the Edwards's claim under the Massachusetts Consumer Protection Act (MCPA), Mass. Gen. Laws ch. 93A—should be dismissed because the Edwardses failed to provide Defendants with required pre-suit notice. (Doc. No. 186 at 15–18.) For the reasons below, the Court agrees.

The MCPA requires that a plaintiff provide a defendant with notice before filing a claim, as follows: "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." Mass. Stat. 93A § 9(3). The failure to provide this notice is a "bar to suit." *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975). Further, the pre-suit notice requirement is considered "a special element" of an MCPA claim and, as such, it must be alleged in the complaint. *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (affirming dismissal of MCPA claim where plaintiff did not mention pre-suit notice in complaint or attachments).

Plaintiffs make two arguments in response to Defendants' motion. First, Plaintiffs argue this case meets an exception to the pre-suit notice requirement. (Doc. No. 198 at 40.) There is no pre-suit notice requirement if "the prospective respondent does not

maintain a place of business or does not keep assets within the commonwealth." Mass. Stat. 93A § 9(3). Here, the TAC does not allege that Defendants maintain a place of business or assets in Massachusetts. (*See generally* TAC.) The absence of such allegations, however, does not compel the Court to deny Defendants' motion because Massachusetts law requires that a plaintiff affirmatively plead the existence of an exception to the pre-suit notice provision. *See Sumner v. Mortg. Elec. Registration Sys., Inc.*, No. 11-CV-11910-DJC, 2012 WL 3059429, at *6 (D. Mass. Jul. 26, 2012) (dismissing MCPA claim where plaintiffs did not affirmatively allege an exception to MCPA's pre-suit notice requirement). Thus, Plaintiff's first argument is unconvincing.

Second, Plaintiffs suggest that the non-Massachusetts Plaintiffs' provision of pre-suit demand letters to Defendants satisfies the MCPA's pre-suit notice requirement. (Doc. No. 198 at 40–41 (citing TAC ¶¶ 522–27).) To satisfy the MCPA, a pre-suit notice letter need at least "identify[] the claimant," Mass. Stat. 93A § 9(3), and reference alleged Massachusetts conduct. *Cassano v. Gogos*, 480 N.E.2d 649, 650 (Mass. Ct. App. 1985) (determining pre-suit notice requirement not satisfied because "[n]othing . . . characterizes the claim as one under the consumer protection statute); *see also Chavez v. Wal-Mart Stores, Inc.*, No. 13-429, 2014 WL 12591252, at *3 (C.D. Cal. June 2, 2014) (rejecting plaintiff's contention that pre-suit notice letter that invoked California law satisfied MCPA and dismissing MCPA claim for noncompliance with pre-suit notice requirement). Here,

the Edwards's co-plaintiffs' pre-suit notice letter (*See* Doc. No. 70-25)[7] does not satisfy the MPCA because it fails to identify the Edwardses and fails to state that some alleged wrongful conduct occurred in Massachusetts.  Thus, the Court dismisses Count 9.

## IV.   THE CALAMITAS' NEGLIGENT MISREPRESENTATION AND STRICT PRODUCT LIABILITY CLAIMS

### A.   Relevant Background

The Calamitas reside in Pennsylvania.  (TAC ¶¶ 18, 19.)  They remodeled a bathroom in their home in 2021.  (*Id.* ¶ 319.)  Based on Defendants' representations about Power Grout's efficacy, and despite its higher price point, the Calamitas selected Power Grout for the tile installation in the bathroom.  (*Id.* ¶¶ 320–23.)

Upon their first use of the remodeled shower, the grout "started pouring out of the grout joints."  (*Id.*  ¶¶ 324–27.)  They complained to Defendants.  (*Id.* ¶¶ 328–30.) Defendants ultimately recommended that the Calamitas apply the Hardener, which, after applied, left an unappealing film on the grout and did not fix the issue.  (*Id.* ¶¶ 331–34.) The Calamitas have stopped using their remodeled shower because the grout "continues to wash out of the joints," and they wish "to prevent exposing the home to more water penetration and resulting water damage."  (*Id.* ¶ 335.)  They allege that the Power Grout has damaged their property and has adversely affected its value.  (*Id.* ¶ 336.)

---

[7] The Court considers the August 12, 2022 pre-suit notice letter—which Plaintiffs' counsel previously filed in connection with a discovery motion in June 2023—without converting this motion into one for summary judgment because the letter is embraced by the pleadings.

**B.      Inapplicability of the Economic Loss Doctrine**

Defendants argue that the Calamitas' negligence and strict products-liability claims

(Counts 3 and 4) are barred by the Pennsylvania economic loss doctrine.  (Doc. No. 186 at

5–6.)  The Court concludes that the economic loss doctrine does not preclude this claim.

In Pennsylvania, the economic loss doctrine "provides that no cause of action exists

for negligence that results solely in economic damages unaccompanied by physical or

property damage." *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 595

(W.D. Pa. 2019) (quotation omitted) (applying Pennsylvania law).  It is meant to

"maintain[] the separate spheres of the law of contract and tort." *N.Y. State Elec. & Gas

Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925 (Pa. Super. Ct. 1989).  Moreover,

under this doctrine, "negligence and strict liability theories do not apply in an action

between commercial enterprises involving a product that malfunctions where the only

resulting damage is to the product itself." *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d

128, 134 (Pa. Super. Ct. 1989).  This rule exists to "place a check on limitless liability for

manufacturers and establish clear boundaries between tort and contract law." *Werwinski

v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002), *overruled on other grounds by Earl

v. NVR, Inc.*, 990 F.3d 310, 312–14 (3d Cir. 2021).

Defendants contend that, under Pennsylvania's economic-loss rule, the Calamitas'

tort claims are barred because the only damages described are damages to "the product

itself." (Doc. No. 203 at 8.)  Defendants contend that the "product itself" is not limited to

just Power Grout; it includes the house into which the Power-Grouted shower is integrated

because Pennsylvania courts regard homes to be a complete interconnected unit.  (*Id.* at 6–

16

7.)  Thus, according to Defendants, to the extent the Calamitas allege that their bathroom

has been damaged, their claims are still barred.  Defendants rely on *Repasky v. Jeld-Wen*

*Inc.*, 81 Pa. D. & C. 4th 495 (Pa. Ct. Comm. Pl. 2006), in which the plaintiff asserted a

negligence claim against the manufacturer of window units that were installed in an

addition to their home, which ultimately cracked, resulting in rot around the windows and

doors.  *Id.* at 496.  The Pennsylvania Court of Common Pleas considered whether, under

the Pennsylvania economic-loss doctrine, the window units were the "product itself," or

whether the entire new addition was the "product itself."  *Id.* at 498–503.  The court

observed that,

> [i]n determining whether a product has injured only itself in an
> action in which a component part manufactured by a defendant
> causes injury to the product of which it is a part, a court should
> look not to the product manufactured by the defendant, but to
> the product purchased by the plaintiff . . . .  Therefore, to the
> extent products used in construction prove defective and result
> in harm to a building itself, those damages should not be
> considered damage to "other property."

*Id.* at 502–03 (quoting *Longport Ocean Plaza Condo. Inc. v. Robert Cato & Assocs. Inc.*,

2002 WL 436742, at *5 (E.D. Pa. Mar. 18, 2002)).  Ultimately, the court concluded that

because the windows were part of a new addition to the home, the windows were

"components that are part of a product when it is initially sold."  *Id.* at 501 (quoting

*Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997).  The addition was

"the 'finished" product,'" and, as a result, the economic loss doctrine barred plaintiff's

negligence claim.  *Id.* at 503; *see also Longport Ocean Plaza Condo Inc.*, 2002 WL

436742, at *5 (concluding that plaintiff's tort claim was barred by the economic loss

doctrine because "the product purchased by the plaintiff in these cases—the subject of the bargain—is the successfully completed building, not simply its component parts"); *Johnson v. Toll Bros., Inc.*, 303 A.3d 471, 475 (Pa. Super. Ct. 2023) (concluding that plaintiff's tort claims were barred by the economic loss doctrine because "the home at issue[] is akin to a single product that is the sum of its component parts").

Plaintiffs disagree that these cases preclude their Pennsylvania tort claims, arguing that when a product is applied to and causes damage to an existing structure, the recoverable damage is not only to the product itself. (Doc. No. 198 at 26.) In support, they cite to *Stonhard v. Advanced Glassfiber Yarns, Inc.*, No. CONTROL 100380, 2001 WL 1807359 (Pa. Comm. Pl. Nov. 21, 2001), where plaintiff installed defendant's floor product to an already existing structure. 2001 WL 1807359, at *2. Plaintiff alleged that defendant's product damaged the original flooring. *Id.* The court determined that the damaged original flooring "qualifies as 'other property,' as it was hardly placed in the stream of commerce by [defendant]." *Id.* In other words, "the product itself" did not include the building but instead comprised only the defendant's floor product. *See id.* Consequently, the court ruled that the economic loss doctrine did not bar the tort claim. *Id.*; *see also 2-J Corp. v. Tice*, 126 F.3d 539 (3d Cir. 1997) (applying Pennsylvania law and concluding, in case involving defendant's defective roof-support structure, the failure of which caused damage to plaintiff's inventory in building, "product itself" comprised only the roof-support structure, and plaintiff could recover for damage to "other property"—i.e., damaged inventory in building); *Hartford Fire Ins. Co. v. Assoc. Constr. & Mgmt. Co.*, No. Civ. A 98-45, 2000 WL 424273, at *3–7 (E.D. Pa. Apr. 19, 2000) (applying Pennsylvania law and

concluding that plaintiff, whose warehouse roof collapsed, could not recover against parties involved in construction of collapsed structure under economic-loss doctrine, but could recover for damaged inventory, which was "other property"). *Cf. Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 648 F. Supp. 2d 707, 716–17 (E.D. Pa. 2009) (applying Pennsylvania law and concluding economic-loss doctrine barred plaintiff's claims against parties involved in construction of structure that experienced damage due to faulty foundation because plaintiff had not alleged damages other than cost of repairing those walls—the "product itself").

The lines of cases cited by both Plaintiffs and Defendants identify the "product itself" (i.e., for which plaintiff cannot recover economic loss in tort when damaged) is "the product purchased by the plaintiff," *Longport Ocean Plaza Condo Inc.*, 2002 WL 436742, at *5, or the item "placed in the stream of commerce by the manufacturer." *Saratoga Fishing Co.*, 520 U.S. at 879 (1997); *see also Stonhard*, 2001 WL 1807359 at *2 (concluding that the original flooring "qualifies as 'other property,' as it was hardly placed in the stream of commerce by [defendant]"). Here, the Calamitas seek to recover for damages to an existing bathroom structure, which is not something that Defendants placed in the stream of commerce or that the Calamitas purchased from Defendants. Moreover, the Calamitas themselves—not their contractor—purchased the Power Grout which was applied to the exiting bathroom. (*Id.* ¶¶ 320–22.) Thus, like the damages in *Stonhard* and the cases cited by Plaintiffs, the "product itself" includes only the Power Grout, not the underlying structure.

Therefore, the Court concludes that Plaintiffs plausibly alleges, with all reasonable inferences drawn in their favor, that the failure of the Power Grout has caused water damage to their property and, as a result, diminution in the value of the property.  (TAC ¶¶ 335, 336; *see also id.* ¶¶ 139, 179.)  The economic loss doctrine does not bar the claims in Counts 3 and 4.

## V.   THE WHITENACKS' KENTUCKY CONSUMER PROTECTION ACT CLAIM

### A.   Relevant Background

The Whitenacks built a new home, which was finished in 2017.  (TAC ¶ 364.)  They selected the grout to be used by their contractor during construction.  (*Id.* ¶ 365.)  They selected Power Grout based on Defendants' representations about its efficacy.  (*Id.* ¶¶ 366, 367.)  However, the Whitenacks discovered defects with the Power Grout "[w]ithin a couple of months of . . . moving in."  (*Id.* ¶¶ 370, 371.)  They then submitted a claim to Defendants, who sent them Hardener to use over the Power Grout and encouraged them to use leftover Power Grout to patch problem spots.  (*Id.* ¶ 373.)  Then, "in 2021," after the Hardener and patched Power Grout also proved to be defective, the Whitenacks contacted the distributor from which they purchased the Power Grout.  (*Id.* ¶¶ 375, 376.)  The tile distributor "provided them with a new bag of Power Grout," which they represented was a newer version formulated to fix earlier problems.  (*Id.* ¶ 377.)  This installation of Power Grout also failed.  (*Id.* ¶ 383.)

Plaintiffs filed this action on September 7, 2022.  (Doc. No. 1.)  Plaintiffs filed their motion for leave to file the Second Amended Complaint on December 11, 2023.  (Doc. No.

110.)   The Whitenacks joined this lawsuit when Plaintiffs filed the Second Amended Complaint on January 17, 2024.   (*See* Doc. No. 149.)

### B.    Tolling of the Statute of Limitations

Defendants assert that the Whitenacks' claim brought under the Kentucky Consumer Protection Act (KCPA) should be dismissed because their claim was brought outside of the two-year statute of limitations.   (Doc. No. 186 at 11–12.)   For the reasons below, the Court denies Defendants' motion as it relates to this claim.

The KCPA provides a cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss . . . as a result of the use or employment by another person of a method, act or practice declared unlawful by KRS 367.170."  Ky. Rev. Stat. § 367.220(1). Section 367.170 makes it illegal to engage in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  *Id.* § 367.170(1).  The KCPA has a two-year statute of limitations.  *Id.* § 367.220(5).

Generally, "[a] defendant does not render a complaint defective by pleading an affirmative defense," such as a statute of limitations defense.  *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (citation omitted).  As a result, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."  *Id.* (citation omitted); *see also Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011) (same).

Plaintiffs assert that the original September 2022 Complaint tolled the statute of limitations on the Whitenacks' KCPA claim, even though that pleading did not name the

Whitenacks as plaintiffs and did not include any other Kentucky plaintiffs or claims under Kentucky law. (Doc. No. 198 at 33–34.) It is true that, under what is known as *American Pipe* tolling, "[t]he filing of a class action tolls the statute of limitations as to all asserted members of the class." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)). However, Plaintiffs cite no authority for the proposition that the filing of a class action tolls the statute of limitations for any and all claims that later-joined plaintiffs may bring. The original Complaint (which Plaintiffs assert tolled the statute of limitations for the Kentucky-based Whitenacks) identified the common questions of law and fact in the putative class-action as whether Defendants violated the common law and consumer-protection and trade-secret statutes in three states: Minnesota, Washington, and New Hampshire. (Doc. No. 1 at 21–23.) The original Complaint cannot fairly be read as tolling the statute of limitations under a Kentucky consumer-protection statute for a then-non-existent Kentucky class. *Zarecor v. Morgan Keegan & Co.*, 801 F.3d 882, 887–88 (8th Cir. 2015) ("*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action."). Thus, the running of the statute of limitations on the Whitenacks' KCPA claim was not tolled as of the date of the filing of the initial Complaint.

Plaintiffs alternatively contend that, even if *American Pipe* tolling does not apply, the Whitenacks' KCPA claim should be considered "filed" as of the date Plaintiffs filed their motion for leave to amend the initial complaint on December 11, 2023, not the date that the Second Amended Complaint was subsequently filed in January 2024. (Doc. No. 198 at 34 n.8.) The Court agrees. Because the court sits in diversity, it "appl[ies] state

tolling law but also appl[ies] federal procedural law." *Great Plains Tr. Co.*, 492 F.3d at 995. Pursuant to the procedural law of this Circuit, filing a motion to amend a complaint tolls the running of the statute of limitations, not the date the Second Amended Complaint was actually filed. *E.g.*, *Mayes v. AT&T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989) ("[In] the situation where the petition for leave to amend the complaint has been filed prior to expiration of the statute of limitations, . . . the amended complaint is deemed filed within the limitations period."); *see also, e.g.*, *Beech v. San Joaquin Cnty.*, No. 2:15-CV-0268 (TLN/CKD), 2017 WL 5177654, at *1–2 (E.D. Cal. Nov. 8, 2017) (explaining that rules governing the commencement of an action or claim through amendment of pleading are not the type of tolling rules borrowed from state law). That being the case, the Court considers the Whitenacks' KCPA claim as filed on December 11, 2023. The allegations in the TAC, on their face, do not bar the Whitenacks' KCPA claim because violative conduct[8] is alleged to have occurred "in 2021." Discovery may reveal the alleged wrongful conduct that would form the basis for a KCPA claim occurred prior to December 11, 2021, in which case, it may ultimately be barred.

---

[8] The Court rejects Defendants' argument that a purchase of Power Grout is a perquisite to a KCPA claim and that, because the Whitenacks do not allege that they purchased Power Grout, the TAC fails to state a claim. The plain language of the KCPA provides that covered unlawful conduct includes engaging in "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Ky. Rev. Stat. § 367.220(1). Here, Plaintiffs allege that they submitted a claim to Defendants (at which point it can be reasonably inferred that Defendants made representations to them about the efficacy of Power Grout). (*See* TAC ¶¶ 373–376.)

## VI.   GOUGAR'S AND LORBECKI'S WISCONSIN DECEPTIVE TRADE PRACTICES ACT CLAIM

### A.   Relevant Background

Gougar and Lorbecki reside in Wisconsin.  (TAC ¶¶ 30, 31.)  When they built a new home in 2018, they asked their contractor to use Power Grout on tile installations because of "representations Defendants make about the grout."  (*Id.* ¶¶ 465–66.)  After moving in, Gougar and Lorbecki discovered that the Power Grout rubbed out between tile joints when cleaned and eroded when wet.  (*Id.* ¶¶ 469–70.)  After complaining to Defendants, Defendants sent them the Hardener.  (*Id.* ¶¶ 470–72.)  Gougar and Lorbecki applied it; however, it altered the color of the grout and created an undesirable film.  (*Id.* ¶ 473.) Defendants ultimately paid Gougar and Lorbecki $3,800 at some point "in 2022" to re-grout their shower.  (*Id.* ¶ 474.)  The second application of Power Grout also failed because it comes out of the tile joints when wet.  (*Id.* ¶¶ 475–79.)  Gougar and Lorbecki were added to this action through the Second Amended Complaint, which Plaintiffs moved for leave to file on December 11, 2023.  (Doc. No. 113-2.)

### B.   Failure to Allege Conduct Occurring within the Statute of Limitations

Defendants argue that Gougar's and Lorbecki's claim under the Wisconsin Deceptive Trade Practices Act (WDTPA) fails because it has not accrued and because it is

24

time-barred.[9]  Because Gougar and Lorbecki have not alleged that Defendants engaged in

conduct within the statute-of-limitations period, the Court agrees with Defendants.

The WDTPA prohibits the making of false statements in connection with the sale

of goods and services.  Wis. Stat. § 100.18.  It provides as follows:

> No person, . . . with intent to sell, distribute, increase the
> consumption of or in any wise [sic] dispose of
> any . . . merchandise . . . or anything offered by such person,
> firm, corporation, or association, . . . directly or indirectly, to
> the public[10] for sale, hire, use or other distribution, or with
> intent to induce the public in any manner to enter into any
> contract or obligation relating to the purchase, sale, hire, use or
> lease of any . . . merchandise . . . , shall make, publish,
> disseminate, circulate, or place before the public, or cause,
> directly or indirectly, to be made, published, disseminated,
> circulated, or placed before the public . . . an
> advertisement, . . . representation of any kind to the public
> relating to such purchase, sale, hire, use or lease of such . . .
> merchandise, . . . or to the terms or conditions thereof, which
> advertisement . . . or representation contains any assertion,
> representation or statement of fact which is untrue, deceptive
> or misleading.

*Id.* § 100.18(1).  Any action under section 100.18 must be brought no more than "3 years

after the occurrence of the unlawful act or practice which is the subject of the action."  *Id.*

§ 100.18(11)(3).

---

[9] Gougar and Lorbecki initially brought claims under two sections of the WDTPA—section
100.18 and section 100.20.  However, Plaintiffs concede that their claim under section
100.20 should be dismissed.  (*See* Doc. No. 198 at 36 n.9.)

[10] Under the WDTPA, all representations made by a defendant to any party with whom
they have no contractual relation are deemed representations to the "public."  *See Hackel
v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 979–80 (W.D. Wis. 2013).

For purposes of determining when the statute of limitations runs, the focus of the inquiry is not when a plaintiff discovers the harm; rather, it is when a defendant engages in the conduct prohibited by section 100.18. *See Selzer v. Brunsell Bros., Ltd.*, 652 N.W.2d 806, 830 (Wis. Ct. App. 2002) (providing that three-year statute of limitations applies "regardless of whether [a plaintiff] knew of his injury" by the time the three years expires); *Kain v. Bluemound E. Indus. Park, Inc.*, 635 N.W.2d 640, 645 (Wis. Ct. App. 2001) (same). In the event where a plaintiff seeks to hold a defendant accountable for a continuing course of alleged misconduct that started before the three-year statute of limitations period, the plaintiff must be able to show that "one of [defendant's] acts fell inside the three years prior to filing of th[e] lawsuit," which is done by "demonstrat[ing] that they received one of defendants' allegedly misleading statements" within that time, or on or after December 11, 2020. *Werner v. Pittway Corp.*, 90 F. Supp. 2d 1018, 1033–34 (W.D. Wis. 2000).

Here, the TAC includes allegations that some time on or before 2018, Gougar and Lorbecki selected Power Grout for use in their new home due to representations made by Defendants about the efficacy of the product. (TAC ¶¶ 465–66.) In addition, the TAC includes allegations that, after discovering that the Power Grout installation failed "[i]mmediately after moving in," Gougar and Lorbecki complained to Defendants, who sent them Hardener. (*Id.* ¶¶ 468–72.) They further allege that, at some point, Defendants paid them a certain sum to re-grout a shower. (*Id.* ¶ 474.) Plaintiffs allege that "[t]his process was done in 2022." (*Id.* ¶¶ 475–76.) Construing these allegations in Plaintiffs' favor, the Court cannot reasonably infer at what point, except for "[i]mmediately after moving in" after purchasing their home in 2018, that Defendants made any representations

about Power Grout's efficacy.  Though Plaintiffs allege that they replaced the tilework in their bathroom "in 2022" using funds previously provided (at some unknown time) by Defendants, they do not allege any details that would allow the Court to reasonably infer that Defendants made representations to them about Power Grout within the limitations period.  Thus, Count 16 is time-barred.

Plaintiffs contend, however, that under *American Pipe*, the three-year time bar on Gougar's and Lorbecki's WDTPA claim was tolled as of the filing of the initial complaint in September 2022.  (Doc. No. 198 at 29–31, 36.)  In response, Defendants explain that *American Pipe* tolling does not apply to statutes of repose, such as the WDTPA.  (Doc. No. 203 at 15–16.)  Defendants are correct.  The WDTPA is a statute of repose.  *Accord Kain v. Bluemound E. Indus. Park, Inc.*, 653 N.W.2d 640, 645 (Wis. Ct. App. 2001) (concluding that Wis. Stat. § 100.18. is statute of repose).  Statutes of repose are meant to "give more explicit and certain protection to defendants" and are a "legislative judgment that a defendant should be free from liability after the legislatively determined period of time." *Cal. Pub. Emps. Retirement Sys. v. ANZ Secs., Inc.*, 582 U.S. 497, 505 (2017).  The U.S. Supreme Court acknowledged that the tolling principle in *American Pipe* is a creature of "the judicial power to promote equity, rather than to interpret and enforce statutory provisions," which does not supersede the application of a statute of repose.  *Cal. Pub. Emps. Retirement Sys.*, 582 U.S. at 509–510.  Thus, *American Pipe* tolling does not apply.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss the Third Amended Complaint (Doc. No. 185) is GRANTED IN PART and DENIED IN PART as follows:

   a. Defendants' requests to dismiss Counts 3 and 4 as to the Calamitas and Count 12 is DENIED.

   b. Defendants' requests to dismiss Counts 3 and 5 as to De Broux, Count 8, and Count 16 are GRANTED, and those claims will be dismissed WITHOUT PREJUDICE.

   c. Defendants' request to dismiss Count 9 is GRANTED, and that claim will be dismissed WITH PREJUDICE.

2. Defendants' motion to strike allegations of fraudulent concealment from the Third Amended Complaint (Doc. No. 185) is DENIED.

3. Plaintiffs' request to dismiss the portion of Count 16 brought under Wis. Stat. § 100.20 under Federal Rule of Civil Procedure 41(a)(2) is GRANTED, and that claim will be dismissed WITHOUT PREJUDICE.


Dated:  October 18, 2024                    /s/ *Jeffrey M. Bryan*
                                            Judge Jeffrey M. Bryan
                                            United States District Court