## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lisa Rouse, Juston Rouse, Jenna Drouin, and Nicholas Drouin, individually and on behalf of all others similarly situated, | Case No. 22-CV-02173 (JMB/JFD) |
| Plaintiffs, | **ORDER** |
| v. | |
| H.B. Fuller Company and H.B. Fuller Construction Products Inc., | |
| Defendants. | |

This matter is before the Court on non-party TEC Specialty, LLC's ("TEC Specialty") Motion for Attorney Fees and Costs (Dkt. No. 564) made pursuant to Federal Rule of Civil Procedure 45(d)(1). The fees and costs TEC Specialty requests are connected to subpoenas served on it and its parent company, Pacific Avenue Capital Partners ("PACP"), seeking information regarding the sale of certain of Defendants' assets to TEC Specialty in late 2024. After conversations between counsel, Plaintiffs withdrew the subpoena served on PACP, but counsel could not reach agreement on the subpoena served on TEC Specialty. The Court heard oral argument on TEC Specialty's motion to quash on May 16, 2025. At that hearing, the Court found that the subpoena was "an impermissible end run around the Court's ruling on the scope of relevant and proportional discovery," (*id.* at 29:1–3), granted TEC Specialty's motion to quash, and stated that it would consider a motion for costs from TEC Specialty's counsel. (May 16, 2025 Hr'g Tr. 29:24–25, Dkt.

1

No. 554.) Because the Court found, in May, that the subpoena was meant to evade an earlier ruling on the scope of relevant and proportional discovery and because this impermissible subpoena was served in the context of unnecessarily litigious and unprofessional behavior on the part of Plaintiffs' and Defendants' counsel, TEC Specialty's motion is granted in part and denied in part.

## I.    Background

The dispute over the subpoena to TEC Specialty arose in the context of an unnecessarily litigious, unnecessarily unpleasant case involving a series of claims by Plaintiffs against Defendants H.B. Fuller Company and H.B. Fuller Construction Products Inc. ("H.B. Fuller" collectively) surrounding alleged breaches of warranty and misrepresentations of a product called Power Grout, which was previously manufactured by Defendants and has been manufactured by TEC Specialty since late 2024. The tenor of this litigation played a role in the Court's decision to award fees and costs to TEC Specialty but had no effect on the amount of fees and costs awarded.

This motion for fees arises out of TEC Specialty's motion to quash a subpoena served upon it by Plaintiffs after H.B. Fuller sold the portion of its business which produced and sold Power Grout to TEC Specialty and PACP. (Mot. to Quash, Dkt. No. 518.) The Court granted that motion from the bench during the May 16, 2025 Motion Hearing and Case Management Conference. (May 16 Hr'g Tr. 29:1–8, Dkt. No. 554.) In that hearing, the Court stated that TEC Specialty could request fees and costs associated with bringing the motion. (May 16 Hr'g Tr. 29:24–25, Dkt. No. 554.) Subsequently, TEC Specialty moved for attorneys' fees under Rule 45(d)(1) of the Federal Rules of Civil Procedure,

claiming that Plaintiffs' subpoenas were unnecessary and overly burdensome. (TEC Specialty's Mot. for Att'y Fees and Costs, Dkt. No. 564.)

### A.    Procedural History and Plaintiffs' Subpoenas

In November of 2024, more than two years after this case was initiated, H.B. Fuller sold its Power Grout business to TEC Specialty. (Pls.' Mem. in Opp. 3, Dkt. No. 577.)  In January 2025, Plaintiffs moved for a limited reopening of fact discovery to allow them to learn more about Defendants' sale of HB Fuller's flooring business to TEC Specialty.[1] (Plaintiffs' Mot. to Reopen Discovery, Dkt. No. 250.)  The Court reopened discovery surrounding the sale "to a very limited and judicially tightly controlled degree" at a Motion Hearing on January 16, 2025, which allowed Plaintiffs to serve discovery on Defendants seeking access to only a limited subset of documents relating to the sale. (Jan. 16, 2025 Hr'g. Tr. 28:9–21, Dkt. No. 394.)

On April 11, 2025, Plaintiffs served a subpoena on TEC Specialty seeking deposition testimony on more than 20 topics, most of which were not within the scope of the discovery the Court had allowed Plaintiffs to seek from Defendants. (Kirman Decl. Ex. D., Dkt. No. 567-4.) Because the deposition was noticed for an office located in northern Illinois, TEC Specialty filed a motion in the United States District Court for the Northern District of Illinois to transfer the matter to the District of Minnesota, or in the alternative to quash the subpoena.  (Kerman Decl., Ex. G, Dkt. No. 567-7). The motion to transfer was

---

[1] The flooring division of H.B. Fuller was responsible for Power Grout.

granted, and once the case was before this Court, TEC Specialty filed a motion to quash here in the District of Minnesota. (TEC Specialty's Mot. to Quash, Dkt. No. 518.)

In support of its motion, TEC Specialty argued that the topics of the subpoena were overly broad, that the information sought could be obtained from the Defendant,[2] that Plaintiffs lacked standing to seek the information from TEC Specialty, and that production of the information would have been overly burdensome for TEC Specialty. (*See* TEC Specialty's Mem. in Supp. 6–7, Dkt. No. 520.) The Court concluded that the topics listed in the subpoenas exceeded the scope of further discovery established in January, both in terms of subject matter and method of discovery. (May 16 Hr'g Tr. 28:12–25, Dkt. No. 554.) At the hearing on TEC Specialty's motion to quash, the Court stated that it would consider a motion for attorneys' fees and costs if TEC Specialty were to submit one. (*Id.* at 29:24–25) On June 9, 2025, TEC Specialty moved for an award of attorney fees and costs, which the Court took under advisement on the papers on June 18, 2025. (TEC Specialty's Mot. for Attorney Fees and Costs, Dkt. No. 564; Text Only Order of June 18, 2025, Dkt. No. 579.)

In its motion and accompanying briefing, TEC Specialty requests that the Court award it $107,803.95, which includes $17,395.65 for work performed on the PACP Subpoena, $52,914.60 for work performed on the TEC Subpoena while the issue was before the U.S. District Court for the Northern District of Illinois, and $37,493.70 for work

---

[2] Actually, the discovery sought could not for the most part be obtained from Defendants, the information sought by the subpoena having been ruled out of bounds for inter-party discovery by the Court.

performed on the TEC Subpoena after the motion to quash was transferred to this Court. (TEC Specialty's Mem. in Supp. 6–7.)

**B. History of Litigation Misconduct in this Case**

When the Court identified Plaintiffs' counsel's improper subpoena as "part of a pattern," (May 16, 2025 Hr'g Tr. 29:11–12, Dkt. No. 554), it was referring to a long history of regrettable behavior in this litigation that has fallen well short of what this Court expects, and has a right to expect, from the lawyers who appear before it. Previous orders have highlighted and collected this behavior in specific members of HB Fuller's legal team, (*See* June 25, 2025 Order, Dkt. No. 585), but Plaintiffs' counsel has violated norms to at least the same degree.

In October of 2024, due to the "parties' complete inability to agree on fundamental facts about their communications" and the fact that the case had "been marred since inception by incivility," mainly on the part of Mr. Hine and Defendants' counsel, Mr. Root, the Court ordered the parties to hire a court reporter to record their Meet and Confer sessions and to attend monthly case management conferences. (October 2, 2024 Order 1–2, Dkt. No. 271.) In November of 2024, the Court remarked to Mr. Hine that he had made a request for discovery that sought "exactly what [the Court] said [he] couldn't have," (Nov. 4, 2024 Hr'g Tr. 12:6–8), and in the order that followed that hearing, the Court stated that "[t]his is not the first time the Court has admonished the parties for seeking second and third bites at discovery cherries in this case." (Dec. 4, 2024 Order 4–5, Dkt. No. 315.) In February of 2025, the Court found that Mr. Hine "failed to provide the authority [he] claimed to have, and rather, pivoted to argue mootness, in contravention of the Court's

order to limit their response to the provision of authority…" (Feb. 3, 2025 Order 2, Dkt. No. 401.) Later that month, the District Judge assigned to this case, Judge Jefffrey M. Bryan, observed that an objection to this Court's November 4, 2024 ruling was "an untimely end-run" around a previous ruling. (Feb. 21, 2025 Order 15, Dkt. No. 416.) Most recently, the Court yet again identified the behavior of Plaintiffs' lead counsel as inappropriate and wrote that he and a named member of HB Fuller's legal team "are the attorneys chiefly responsible for the manner in which this case has proceeded and have exhibited unprofessional and uncivil behavior to one another throughout." (June 25, 2025 Order 23, n. 6, Dkt. No. 585.)

## II.  <u>Legal Standards</u>

Federal Rule of Civil Procedure 45 is solicitous of non-parties who find themselves brought into other people's litigation. Rule 45(d)(1) requires "[a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." A court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1). Factors relevant to an assessment of undue burden include: "(1) relevance; (2) the need for the discovery; (3) how broadly the requests are framed; (4) the time period covered by the subpoena; (5) how particularly the subpoena describes the documents sought; (6) the burden imposed; and (7) that the recipient is a non-party to the litigation." *Cedar Rapids Lodge & Suites, LLC v. Seibert*, No. 14-CV-04839 (SRN/KMM), 2018 WL 3019899, at *3 (D. Minn. June 18, 2018) (citation omitted).

The Court also has the inherent authority to award attorneys' fees "against a party which has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *United States v. Gonzalez-Lopez*, 403 F.3d 558, 564 (8th Cir. 2005) (quotation and internal quotation marks omitted); *see Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1435 (8th Cir. 1997). "The amount of the fee, of course, must be determined on the facts of each case." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). Federal Rule of Civil Procedure 37 also provides that, where a court determines that a party or counsel has disobeyed an order of the court, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C).

## III.  <u>Discussion</u>

### A. PACP Subpoena

As a threshold matter, the Court will not grant fees and costs to TEC Specialty's counsel for work performed on the PACP subpoena. That subpoena was issued, objected to, and withdrawn without any judicial action, and for that reason, the Court finds that granting fees and costs for attorney work performed on that subpoena would be unreasonable. Negotiation of discovery disputes without court involvement should be encouraged. *See S. Farm Bureau Life Ins. Co. v. Burney*, 590 F. Supp. 1016, 1022 (E.D. Ark. 1984) ("It is basic that the policy of the law is to encourage settlement of litigation"); *Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 934 (D. Minn. 1982) (recognizing "policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation"); *Khoday v. Symantec Corp.*, No. 11-CV-180 (JRT/TNL), 2016 WL 1637039,

at *5 (D. Minn. Apr. 5, 2016) (same). Inherent in negotiating a resolution to a dispute is a recognition by the parties that the dispute is closed. Reopening closed disputes to award fees would inappropriately undermine the negotiation process and dissuade litigants from resolving their disputes outside of formal motion practice. Accordingly, TEC Specialty's motion for $17,395.65 for work performed on the PACP subpoena is denied.

## B.  Work in the Northern District of Illinois

Though a closer question, the Court also declines to award fees for work TEC Specialty's counsel did on this motion while it was before the U.S. District Court for the Northern District of Illinois. As described earlier in this order, TEC Specialty originally filed its Motion to Quash in N.D. Ill. pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure and requested that the motion be transferred to this District. (*See Rouse et al., v. H.B. Fuller Co., et al.*, Miscellaneous Case No. 25-mc-25 (JFD), Dkt. No. 1-1.) The District Judge assigned to that motion, the Honorable Edmond E. Chang, transferred that motion to this District. (Min. Entry, *Rouse et al., v. H.B. Fuller Co., et al.*, Miscellaneous Case No. 25-mc-25 (JFD), Dkt. No. 7.) Notably, in that Minute Entry, Judge Chang wrote, "For future reference, when the disputing parties and non−parties agree, it might be possible to avoid the Rule 45(f) transfer step by simply asking the presiding court to hear the dispute." (*Id.*)

This Court seconds Judge Chang's astute observation. Although the Rules allow a motion to quash a subpoena to be filed in the district where compliance is sought, that is not always the most "just, speedy, and inexpensive" way to resolve such a motion. *See* Fed. R. Civ. P. 1. This is especially true here where TEC Specialty was both the party seeking

to quash the subpoena and seeking to transfer the motion to this District. This excess of process likely resulted in unnecessarily duplicative billable work by TEC Specialty's counsel. In light of that observation and in an effort to keep the total fee award in this order within the bounds imposed by Rule 45, TEC Specialty's motion for $52,914.60 for work performed on the TEC Specialty subpoena in the Northern District of Illinois is denied.

### C. Work in District of Minnesota

The Court granted TEC Specialty's Motion to Quash on the record at the May 16, 2025 Case Management Conference. There, the Court stated

> In sum, this deposition subpoena is ***an impermissible end run around the Court's ruling*** on the scope of relevant and proportional discovery concerning the sale of the Power Grout business from H.B. Fuller to Pacific Avenue Partners, which I understand then set up TEC, and TEC is now the corporate vehicle which owns the grout business. Accordingly, TEC's motion to quash is granted in full. … [W]***hat I'm seeing here today is part of a pattern…*** Rule 45 of the Federal Rules of Civil Procedure is solicitous, let us say, of third-parties who are the subject of discovery requests [] from a lawsuit in which they are not involved. One of the provisions of Rule 45 is that the Court must at least consider cost shifting when a Rule 45 subpoena is found to be impermissible. I am not making any decision on that today, but… if [Mr. Kirman] puts forth a motion for costs I will consider it.

(May 16, 2025 Hr'g Tr. 29:1–25, Dkt. No. 554 (emphasis added).) The Court further noted that "[t]his latest controversy doesn't occur in a vacuum," identifying much of the history of misconduct discussed above. The Court will not address the merits of that motion further here beyond what is necessary to assess TEC Specialty's Motion for Attorneys' Fees.

Sanctions under Rule 45(d)(1) are appropriate here because it is clear that Plaintiffs' counsel did not "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In fact, they took no steps to

avoid a burden and instead, in the wake of a ruling from this Court allowing limited *written* discovery from *Defendants*, issued a subpoena seeking to *depose a third party*. The Court likened this behavior to "being turned down for a $5 loan and then asking for a $100 loan on the grounds that I'd only turned down the $5 loan." (May 16, 2025 Hr'g Tr. 28:23–25, Dkt. No. 554.) More than that, after the Court found that document discovery from third parties would be disproportionately burdensome (*see* Jan. 16, 2025 Hr'g Tr. 76:17–77:1), Plaintiffs served deposition subpoenas on third parties. There is no colorable argument that this behavior could constitute "reasonable steps to avoid imposing undue burden or expense" on TEC Specialty, requiring the Court to award fees and costs under Fed. R. Civ. P. 45(d)(1).

The Court then must establish the amount it will order Plaintiffs' counsel to pay to TEC Specialty. TEC Specialty's lead counsel seeks fees at its billing rate in this case: $1,489.50 per hour of partner time and $954 per hour of associate time. (Kirman Decl. ¶ 5, Dkt. No. 567.) Plaintiffs also challenge TEC Specialty's request for fees on the grounds that the rates TEC Specialty's counsel claims are unreasonable. (Pls.' Mem in Opp. 3, Dkt. No. 577 ("[T]he hours and rates that TEC Specialty presents are, on their face, decidedly unreasonable; … they charged hundreds of dollars more per hour than what is accepted as reasonable in this jurisdiction.").) Plaintiffs claim that the unreasonableness of the fees and the lack of a record to determine their reasonableness should cause the Court to deny the Motion in its entirety. (*Id.*)

The Court agrees that the rates sought by O'Melveny & Myers are unreasonable but disagrees that a reasonable rate cannot be established. "When determining a reasonable

hourly rate, the relevant legal community is the forum in which the district court sits." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 711 F. Supp. 2d 991, 1009 (D. Minn. 2010), aff'd, 650 F.3d 1139 (8th Cir. 2011) (citing *Fish v. St. Cloud State Univ.,* 295 F.3d 849, 851 (8th Cir. 2002)). Further, in determining a reasonable hourly rate, the Court may rely on its own knowledge of prevailing market rates. *Id*. (citing *Warnock v. Archer,* 397 F.3d 1024, 1027 (8th Cir. 2005)). The Court need not conduct independent analysis regarding a reasonable rate here, as TEC Specialty also hired local counsel from the Fredrikson & Byron firm, whose partner billed at $710 per hour and whose associate billed at $484 per hour. (Kirman Decl. ¶ 5, Dkt. No. 567.)

The Court will apply the Fredrikson & Byron attorney billing rates as reasonable for the purposes of TEC Specialty's Motion and apply them to the work for which O'Melveny & Myers attorneys billed TEC Specialty. However, TEC's documentation does not attribute specific numbers of hours to specific attorneys, so the Court will establish a lodestar amount based on overall per hour billing. In total, O'Melveny & Myers billed TEC Specialty $30,949.20 for 28.4 hours of work, and Fredrikson & Byron billed $6,544.50 for 12.8 hours of work. (TEC Specialty's Mem. in Supp. 7, Dkt. No. 566.) This reflects an overall O'Melveny & Myers hourly rate of $1,089.76 and an overall Fredrikson & Byron hourly rate of $511, which show that the lion's share of work by both firms was conducted by associates. The Court will apply this $511 per hour rate to the whole of TEC Specialty's fee request. For the 41.2 hours of attorney time billed for work in the District of Minnesota, the Court finds that the reasonable fee for which Plaintiffs' counsel is liable to TEC Specialty is $21,053.20.

### D. Discretionary Sanctions

The history of discovery misconduct identified above provides significant support for the Court's conclusion that Plaintiffs "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" in issuing the subpoenas at issue in this motion. *United States v. Gonzalez-Lopez*, 403 F.3d 558, 564 (8th Cir. 2005). Throughout this case, the Court has warned the litigants that their inappropriate litigation behavior must improve, or the parties will face escalating consequences. At this point in the litigation, as the parties begin to discuss the prospects of settlement in earnest, the Court must make good on that promise. Accordingly, and in addition to the sanctions awarded to TEC Specialty, the Court also orders Plaintiffs' counsel to pay $8,946.80 to Defendants for fees and costs associated with this motion, which the Court deems reasonable under the circumstances discussed throughout this litigation.

### IV.    <u>Conclusion</u>

Accordingly, based on the foregoing and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** TEC Specialty's Motion for Attorney Fees and Costs (Dkt. No. 564) is **GRANTED in part and DENIED in part**, as follows:

1) Plaintiffs' counsel will pay to TEC Specialty the sum of $21,053.20 for work performed on the TEC Specialty subpoena in this District;

2) Plaintiffs' counsel will pay to HB Fuller Defendants the sum of $8,946.80 as a reasonable award of expenses connected to the Motion to Quash and related litigation; and

3) The expenses awarded in this order are payable by Plaintiffs' lead counsel and his law firm, Vorys, Sater, Seymour and Pease. These expenses are not to be passed to Plaintiffs themselves or factored into a settlement in a way that deprives any plaintiff of the relief to which they may be entitled for their alleged harms.

Date:  October 10, 2025                                    _s/  John F. Docherty_
                                                          JOHN F. DOCHERTY
                                                          United States Magistrate Judge